FILED

1  Michael A. Angel (Bar No. 59085)
   MAngel@mmhllp.com
2  Zachary J. Brown (Bar No. 241837)
   ZBrown@mmhllp.com
3  MESERVE, MUMPER & HUGHES LLP
   300 South Grand Avenue, 24th Floor
4  Los Angeles, California 90071-3185
   Telephone: (213) 620-0300
5  Facsimile: (213) 625-1930

6  Attorneys for Defendant
   FEDERAL DEPOSIT INSURANCE
7  CORPORATION AS RECEIVER FOR
   INDYMAC BANK, F.S.B.

10 OCT 26  PM 4: 04

CLERK U.S. DISTRICT COURT
CENTRAL DIST. OF CALIF.
LOS ANGELES

BY:_____

8
                 UNITED STATES DISTRICT COURT
9
                CENTRAL DISTRICT OF CALIFORNIA
10
   EMILIO BAEZ, an individual,              )  Case No. EDCV 10-1643 VAP
11                                          )
              Plaintiff,                    )  THE FEDERAL DEPOSIT
12                                          )  INSURANCE CORPORATION'S
         vs.                                )  NOTICE OF REMOVAL OF
13                                          )  ACTION TO THE UNITED STATES
   INDYMAC BANK, a federally chartered      )  DISTRICT COURT
14 savings bank; CHICAGO TITLE              )
   INSURANCE CO., an entity whose form is   )  [Riverside County Superior Court Case
15 unknown; AZTEC FORECLOSURE               )  No. RIC 528863]
   CORPORATION, an entity whose form is     )
16 unknown.; MORTGAGE ELECTRONIC            )
   REGISTRATION SYSTEMS, INC., a            )
17 Delaware Corporation, and DOES 1 Through )
   50, inclusive,                           )
18                                          )
              Defendants.                   )
19 _____ )
20    TO THE US DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA AND

21 TO PLAINTIFF EMILIO BAEZ AND HIS COUNSEL OF RECORD:

22    PLEASE TAKE NOTICE THAT Defendant FEDERAL DEPOSIT INSURANCE

23 CORPORATION as Receiver for INDYMAC BANK, F.S.B., (hereinafter "FDIC-

24 Receiver"), contemporaneously with the filing of this Notice, is effecting the Removal of

25 the above-referenced action from the Superior Court of the State of California for the

26 County of Riverside to the District Court of the United States, Central District of

27 California. The Removal is based upon the following grounds:

28    1.    This action has been removed to this Court pursuant to 12 U.S.C.

LAW OFFICES
MESERVE,
MUMPER &
HUGHES LLP

1

THE FDIC NOTICE OF REMVOAL OF
ACTION TO THE U.S. DISTRICT COURT

1 § 1819(b).  The FDIC, in its capacity as receiver for a federally insured depository

2 institution, is an agency of the United States pursuant to 12 U.S.C. § 1819(b)(1).

3 This suit is one of a civil nature, over which the United States District Court has

4 original jurisdiction, in that all civil suits of a civil nature to which the FDIC, in any

5 capacity is a party, shall be deemed to arise under the laws of the United States. *See*

6 12 U.S.C. § 1819(b)(2)(A).

7      2.      On October 12, 2010 the Riverside County Superior Court granted the

8 FDIC-Receiver's Motion to Substitute the FDIC-Receiver as Real Party in Interest

9 in Place of INDYMAC BANK, F.S.B., in Riverside Country Superior Court, Case

10 Number RIC 528863.[1]

11      3.      On July 11, 2008, the OFFICE OF THRIFT SUPERVISION ("OTS"),

12 an agency of the federal government that regulates banks, determined that

13 INDYMAC BANK, F.S.B., was insolvent, closed the bank, and appointed the FDIC

14 as Receiver.  Attached hereto as Exhibit "A" is a true and correct copy of the OTS

15 Order appointing the FDIC as Receiver.

16      4.      Upon its appointment as Receiver for a failed depository institution, the

17 FDIC Receiver succeeds to all of the rights, titles, powers, and privileges of that

18 institution by operation of law. *See* 12 U.S.C. § 1821(d)(2)(A).

19      5.      Removal of this action is authorized by 12 U.S.C. § 1819(b)(2)(B),

20 which provides that the FDIC shall be entitled to remove within ninety (90) days of

21

22

23 [1] It is not necessary for the FDIC to wait for Court approval of a motion for substitution, prior to filing a Notice of Removal.  The FDIC becomes a "party" for purposes of 12 U.S.C. 1819(b)(2)(A) as soon as it <u>files</u> its motion.  *FDIC v. Loyd*, 955 F.2d 316 (5th Cir. 1992), *Heaton v. Monogram v. Credit Card Bank of Georgia*, 297 F.3d 416 (5th Cir. 2002).  In this matter the FDIC waited for the Superior Court to rule on its Motion to Substitute, because the FDIC's Motion to Set Aside Default was heard, and granted, at the same hearing.  The Motion to Set Aside Default necessarily required the FDIC's substitution as the real party in interest, as a predicate to the granting of said default motion.  The FDIC's Motion to Substitute and Set Aside Default was filed on September 1, 2010 (*See*, Notice of removal, Exhibit "B"), and the FDIC is well within the 90 day removal period in 12 U.S.C. 1819(b)(2)(B), using the "filing" date as the guideline for calculating the time to remove.

1 the filing of a Complaint in state court, or within 90 days of the substitution of the

2 FDIC as a party.  The FDIC-Receiver became a party when the Riverside Superior

3 Court granted its Motion to Substitute as real party in interest on October 12, 2010,

4 and the FDIC's Notice of Removal is therefore filed well within the 90-day removal

5 period.

6        6.    All of the process, pleadings and orders obtained by the FDIC in this

7 action are attached hereto as Exhibit "B".

8

9 Dated:   10/26/10                                MESERVE, MUMPER & HUGHES LLP
                                                   Michael A. Angel
10                                                 Zachary J. Brown

11                                                 By:

12                                                      Michael A. Angel
                                                        Attorneys for Defendant
13                                                      FEDERAL DEPOSIT INSURANCE
                                                        CORPORATION AS RECEIVER
14                                                      FOR INDYMAC BANK, F.S.B.

15

16

17

18

19

20

21

22

23

24

25

26

27

28

LAW OFFICES
MESERVE,
MUMPER &
HUGHES LLP

114499.1                                           3

THE FDIC NOTICE OF REMVOAL OF
ACTION TO THE U.S. DISTRICT COURT

# EXHIBIT "A"

# OFFICE OF THRIFT SUPERVISION
# ORDER NUMBER 2008-24
# AND
# THE FEDERAL REGISTER
# VOL. 73, NO. 140, AND VOL. 74, NO. 63

EXHIBIT "A"

<u>OFFICE OF THRIFT SUPERVISION</u>

<u>Pass-Through Receivership Of A Federal Savings Association</u>
<u>Into A De Novo Federal Savings Association</u>
<u>That is Placed Into Conservatorship</u>
<u>With the FDIC</u>

Date: July //, 2008

Order No.: 2008-24

The Director of the Office of Thrift Supervision ("OTS"), or his designee, in cooperation with the Federal Deposit Insurance Corporation ("FDIC"), has determined: (1) to appoint the FDIC as receiver for the savings association specified below ("OLD THRIFT"); (2) to approve the FDIC's request for the issuance of a new federal mutual savings association charter ("NEW THRIFT") as a successor to OLD THRIFT; (3) to approve the transfer of such assets and liabilities of OLD THRIFT to its successor NEW THRIFT, as the FDIC has determined to be appropriate; and (4) to appoint the FDIC as conservator of NEW THRIFT. Collectively, numbers 2 through 4 of the foregoing are referred to herein as the "APPLICATIONS."

"OLD THRIFT," refers to:

| Name | Location | OTS No. |
|------|----------|---------|
| IndyMac Bank, F.S.B. | Pasadena, California. 03970 | |

I. GROUNDS FOR ACTIONS TAKEN IN THIS ORDER:

RECEIVERSHIP:
GROUNDS FOR APPOINTMENT OF FDIC AS
RECEIVER FOR OLD THRIFT

The Director, or his designee, based upon the administrative record finds and determines that:

OLD THRIFT has insufficient cash and liquid assets convertible to cash necessary to pay the expected withdrawal demands of its depositors. OLD THRIFT has suffered significant deposit outflows, exceeding $1 billion since June 26, 2008, in part because of adverse publicity. Further, because OLD THRIFT is not well capitalized, it cannot renew its large volume of brokered deposits, which will create an additional deposit outflow. In addition, OLD THRIFT has limited and diminishing liquidity sources available to it. There has been significant disruption in the markets for the types of assets, mortgage backed securities and mortgage servicing rights, held by OLD THRIFT. Therefore, those

5

assets that are not already subject to liens may not be marketable or only can be sold at prices that would result in OLD THRIFT failing to meet its capital requirements. Moreover, OLD THRIFT's mortgage servicing rights are the major source of OLD THRIFT's current earnings. In addition, the consequences of OLD THRIFT's top-tier holding company's July 7, 2008 public disclosure of adverse information, and the curtailment of forward mortgage lending and resulting downsizing, place OLD THRIFT in a precarious position and OLD THRIFT has been unable to find anyone who is willing and able to invest sufficient capital to alleviate its problems.

OLD THRIFT has suffered losses amounting to approximately $842 million from the third quarter of 2007 to the first quarter of 2008 and projects to report another $354 million loss for the second quarter of 2008. OLD THRIFT is in an unsafe and unsound condition as a result of its severe liquidity strain, deteriorating asset quality, continuing significant negative operating earnings, and declining capital with no realistic prospects for raising capital to ensure that it can repay all of its liabilities, including deposits.

OLD THRIFT has been unsuccessful in its attempts to find investors who are willing and able to recapitalize OLD THRIFT, given OLD THRIFT's current financial condition, ongoing deposit outflows, lack of liquidity, and continued asset quality deterioration. Further, OLD THRIFT projected that it would be undercapitalized as of June 30, 2008. In addition to other asset write-down's which OLD Thrift should be taking, OLD THRIFT is likely to be unable to meet its depositors' demands and other obligations in the normal course of business, and therefore, OLD THRIFT should immediately recognize additional losses on assets held for sale. The losses OLD THRIFT should recognize will result in OLD THRIFT being classified as undercapitalized. Moreover, because efforts to raise capital have proven unsuccessful, there is no reasonable prospect of OLD THRIFT becoming adequately capitalized without Federal assistance.

Therefore, the Director, or his designee, has concluded that:

(a) OLD THRIFT is likely to be unable to pay its obligations or meet its depositors' demands in the normal course of business because it does not have sufficient liquid assets to fund expected withdrawals;

(b) OLD THRIFT is in an unsafe and unsound condition to transact business due to its lack of capital and its illiquid condition;

(c) OLD THRIFT is undercapitalized as defined in section 38(b) of the FDIA, and has no reasonable prospect of becoming adequately capitalized as defined in section 38(b) of the FDIA.

The Director, or his designee, therefore, has determined that grounds for the appointment of a receiver for OLD THRIFT exist under section 5(d)(2) of the Home Owners' Loan Act ("HOLA"), 12 U.S.C. § 1464(d)(2) and section 11(c)(5) of the FDIA, 12 U.S.C. § 1821(c)(5).

<u>TRANSFER INTO A NEW FEDERAL CHARTER:</u>
<u>GROUNDS FOR ISSUANCE OF NEW FEDERAL CHARTER AND</u>
<u>APPROVAL OF TRANSFER OF ASSETS AND LIABILITIES OF</u>
<u>OLD THRIFT TO NEW THRIFT</u>

The FDIC, as receiver of OLD THRIFT, has applied for authority to organize a new Federal mutual savings association, NEW THRIFT, that is to take over such assets and such liabilities of OLD THRIFT as the FDIC has determined to be appropriate, pursuant to section 11(d)(2)(F)(i) of the FDIA, 12 U.S.C. §1821(d)(2)(F)(i). The FDIC would insure the accounts of NEW THRIFT.

The Director, or his designee: (i) has considered the factors set forth in section 5(e) of HOLA, 12 U.S.C. § 1464(e), with regard to granting a new federal savings association charter, has determined that the charter should be issued, that NEW THRIFT is authorized to transact business as a savings association, and that the charter and bylaws to be issued for NEW THRIFT are in a form consistent with the material provisions of the applicable regulations; and (ii) has considered the factors set forth in section 18(c) of the FDIA, 12 U.S.C. § 1828(c), and 12 C.F.R. § 563.22 with respect to the acquisition of certain assets and assumption of certain liabilities of OLD THRIFT by NEW THRIFT. Immediate action is necessary given the seriously adverse financial condition of OLD THRIFT and in order to permit NEW THRIFT to acquire certain assets and assume certain liabilities of OLD THRIFT and continue to serve OLD THRIFT's community and customers.

For the foregoing reasons, the Director, or his designee, has determined that, pursuant to 12 C.F.R. §§ 563.22 (e) and 543.7-1, public notice of the APPLICATIONS shall not be required. In addition, the Director, or his designee, finds that OTS must act immediately in order to prevent the probable default of OLD THRIFT. Therefore, the publication of notice required by section 18(c)(3) of the FDIA, the reports on the competitive factors of the acquisition required by section 18(c)(4) of the FDIA, and the delayed consummation required by section 18(c)(6) of the FDIA, shall be dispensed with. Accordingly, NEW THRIFT may immediately acquire the assets and assume the liabilities determined to be appropriate by the FDIC.

<u>CONSERVATORSHIP:</u>

<u>GROUNDS FOR APPOINTMENT OF FDIC AS</u>
<u>CONSERVATOR FOR NEW THRIFT</u>

The FDIC has indicated that, immediately upon the completion of the organization of NEW THRIFT (which will be federally chartered) and completion of the transfer of the aforesaid assets and liabilities of OLD THRIFT to NEW THRIFT, it will, in the exercise of its authority to act as the board of directors of NEW THRIFT pursuant to section 11(d)(2)(B) of the FDIA, 12 U.S.C. § 1821(d)(2)(B), consent to the OTS

appointing the FDIC as conservator for NEW THRIFT. Moreover, NEW THRIFT will have virtually the same capital and liquidity as OLD THRIFT had immediately prior to the appointment of a receiver for OLD THRIFT and, therefore, the grounds set forth in Section I above for appointment of the receiver for OLD THRIFT, are also applicable as grounds for the appointment of a conservator for NEW THRIFT.

## II. ACTIONS ORDERED OR APPROVED:

### APPOINTMENT OF A RECEIVER

The Director, or his designee, hereby appoints the FDIC as receiver for OLD THRIFT, for the purpose of liquidation, pursuant to section 5(d)(2) of HOLA, 12 U.S.C. §1464(d)(2), and section 11(c)(6)(B) of the FDIA, 12 U.S.C. § 1821(c)(6)(B).

### ISSUANCE OF A FEDERAL CHARTER AND
### APPROVAL OF THE PASS-THROUGH OF ASSETS AND LIABILITIES

The Director, or his designee, hereby approves: (1) the application of the FDIC to organize NEW THRIFT as a federal mutual savings association (and hereby authorizes the issuance of an appropriate charter and bylaws for NEW THRIFT in form and content approved by the Chief Counsel's Office); (2) the transfer of such assets and liabilities of OLD THRIFT to its successor, NEW THRIFT, as the FDIC has determined to be appropriate; and (3) the retention of the home and branch offices of OLD THRIFT by its successor, NEW THRIFT. Prior to the appointment or election of a board of directors for NEW THRIFT, the FDIC may, in addition to any other powers granted by applicable law, exercise the powers of the board of directors pursuant to section 11(d)(2)(B) of the FDIA, 12 U.S.C. § 1821(d)(2)(B).

### APPOINTMENT OF A CONSERVATOR
### FOR NEW THRIFT

The Director, or his designee, hereby appoints the FDIC as conservator for NEW THRIFT pursuant to sections 5(d)(2)(A) and (E) of the HOLA, 12 U.S.C. §§ 1464(d)(2)(A), 1464(d)(2)(E), effective upon receipt of the consent of NEW THRIFT to such appointment. That consent must be contained in a resolution of its board of directors issued by the FDIC in exercise of its power, as the organizer of NEW THRIFT, to act as its interim board of directors pursuant to section 11(d)(2)(B) of the FDIA, 12 U.S.C. § 1821(d)(2)(B).

## DELEGATION OF AUTHORITY TO ACT FOR OTS

The Director, or his designee, hereby authorizes the OTS West Region Director, or his designee, and the Deputy Chief Counsel for the Business Transactions Division of the Chief Counsel's office, or his designee, to: (1) certify orders; (2) sign, execute, attest or certify other documents of OTS issued or authorized by this Order; (3) designate the person or entity that will give notice of the appointment of a receiver for OLD THRIFT and serve OLD THRIFT with a copy of this Order pursuant to 12 C.F.R. § 558.2; (4) designate the person or entity that will give notice of the appointment of a conservator for NEW THRIFT and serve NEW THRIFT with a copy of this Order pursuant to 12 C.F.R. § 558.2; and (5) perform such other functions of OTS necessary or appropriate for implementation of this Order. All documents to be issued under the authority of this Order must be first approved, in form and content, by the Chief Counsel's Office. In addition, the Director, or his designee, hereby authorizes the Deputy Chief Counsel for the Business Transactions Division of the Chief Counsel's office, or his designee, to make any subsequent technical corrections, that might be necessary, to this Order or any documents issued under the authority of this Order.

By Order of the Director of OTS, effective July _11_, 2008.

John M. Reich
Director

Federal Register / Vol. 73, No. 140 / Monday, July 21, 2008 / Notices

42411

requirements of the Department of the Treasury.

**RETENTION AND DISPOSAL:**

Records in this system will be updated periodically to reflect changes, and will be maintained in electronic form as long as needed for the purposes for which the information was collected. Records will be disposed of in accordance with applicable law.

**SYSTEM MANAGER(S) AND ADDRESS:**

General Policy: Deputy Director, Financial Crimes Enforcement Network, P.O. Box 39, Vienna, Virginia 22183–0039. Computer Systems Maintenance and Administration: Director, IRS Enterprise Computing Center Detroit, 985 Michigan Avenue, Detroit, Michigan 48226–1120 and Director, Office of Information Technology, U.S. Customs and Border Protection, Newington, 7681 Boston Boulevard, Springfield, Virginia 22153–3140.

**NOTIFICATION PROCEDURE:**

This system is exempt from notification requirements, record access requirements, and requirements that an individual be permitted to contest its contents, pursuant to the provisions of 5 U.S.C. 552a(j)(2) and (k)(2).

**RECORD ACCESS PROCEDURES:**

See "Notification procedure" above.

**CONTESTING RECORD PROCEDURES:**

See "Notification procedure" above.

**RECORD SOURCE CATEGORIES:**

Pursuant to the provisions of 5 U.S.C. 552a(j)(2) and (k)(2), this system is exempt from the requirement that the Record source categories be disclosed.

**EXEMPTIONS CLAIMED FOR THE SYSTEM:**

This system is exempt from 5 U.S.C. 552a(c)(3), (c)(4), (d)(1), (d)(2), (d)(3), (d)(4), (e)(1), (e)(2), (e)(3), (e)(4)(G), (e)(4)(H), (e)(4)(I), (e)(5), (e)(8), (f), and (g) of the Privacy Act pursuant to 5 U.S.C. 552a(j)(2) and (k)(2). See 31 CFR 1.36.

[FR Doc. E8–16610 Filed 7–18–08; 8:45 am]

BILLING CODE 4810–02–P

**DEPARTMENT OF THE TREASURY**

**Office of Thrift Supervision**

**IndyMac Bank, F.S.B., Pasadena, CA; Notice of Appointment of Receiver**

Notice is hereby given that, pursuant to the authority contained in section 5(d)(2) of the Home Owners' Loan Act, the Office of Thrift Supervision has duly appointed the Federal Deposit Insurance Corporation as sole Receiver for

IndyMac Bank, F.S.B., Pasadena, California (OTS No. 03970) and as Conservator for IndyMac Federal Bank, FSB, Pasadena, California (OTS No. 10116) on July 11, 2008.

Dated: July 15, 2008.

By the Office of Thrift Supervision.

Sandra E. Evans,

*Federal Register Liaison Officer.*

[FR Doc. E8–16592 Filed 7–18–08; 8:45 am]

BILLING CODE 6720–01–M

**DEPARTMENT OF THE TREASURY**

**United States Mint**

**Notification of 2008 American Eagle Platinum Uncirculated Coin Pricing**

*Summary:* The United States Mint is setting prices for its 2008 American Eagle Platinum Uncirculated Coins.

Pursuant to the authority that 31 U.S.C. 5111(a) and 5112(k) grant the Secretary of the Treasury to mint and issue platinum coins, and to prepare and distribute numismatic items, the United States Mint mints and issues 2008 American Eagle Platinum Uncirculated Coins in four denominations with the following weights: one ounce, one-half ounce, one-quarter ounce, one-tenth ounce. The United States Mint also produces American Eagle Platinum Uncirculated four-coin sets that contain one coin of each denomination. In accordance with 31 U.S.C. 9701(b)(2)(B), the United States Mint is setting the price of these coins to reflect recent increases in the market price of platinum.

The United States Mint will make available the following 2008 American Eagle Uncirculated Platinum Coins according to the following price schedule:

| Description | Price |
|---|---|
| American Eagle Platinum Un-circulated Coins: | |
| One ounce platinum coin .. | $2,349.95 |
| One-half ounce platinum coin ..................... | 1,199.95 |
| One-quarter ounce plat-inum coin ................. | 619.95 |
| One-tenth ounce platinum coin ..................... | 259.95 |
| Four-coin platinum set ...... | 4,289.95 |

*For Further Information Contact:* Gloria C. Eskridge, Associate Director for Sales and Marketing, United States Mint, 801 Ninth Street, NW., Washington, DC 20220; or call 202–354–7500.

Authority: 31 U.S.C. 5111, 5112 & 9701.

Dated: July 14, 2008.

Edmund C. Moy,

*Director, United States Mint.*

[FR Doc. E8–16527 Filed 7–18–08; 8:45 am]

BILLING CODE 4510–02–P

**DEPARTMENT OF VETERANS AFFAIRS**

**Determination of Presumption of Service Connection Concerning Illnesses Discussed in National Academy of Sciences Report on Gulf War and Health: Updated Literature Review of Sarin**

**AGENCY:** Department of Veterans Affairs.

**ACTION:** Notice.

**SUMMARY:** As required by law, the Department of Veterans Affairs (VA) hereby gives notice that the Secretary of Veterans Affairs, under the authority granted by the Persian Gulf War Veterans Act of 1998, Public Law 105–277, title XVI, 112 Stat. 2681–742 through 2681–749 (codified in part at 38 U.S.C. 1118), has determined that there is no basis to establish a presumption of service connection for any of the diseases, illnesses, or health effects discussed in the August 2004 report of the National Academy of Sciences, titled "Gulf War and Health: Updated Literature Review of Sarin," based on exposure to sarin during service in the Persian Gulf during the Persian Gulf War.

**FOR FURTHER INFORMATION CONTACT:** Maya Ferrandino, Regulations Staff (211D), Compensation and Pension Service, Veterans Benefits Administration, Department of Veterans Affairs, 810 Vermont Avenue, NW., Washington, DC 20420, (727) 319–5847.

**SUPPLEMENTARY INFORMATION:**

I. Statutory Requirements

The Persian Gulf War Veterans Act of 1998, Public Law 105–277, title XVI, 112 Stat. 2681–742 through 2681–749 (codified in part at 38 U.S.C. 1118), and the Veterans Programs Enhancement Act of 1998, Public Law 105–368, 112 Stat. 3315, directed the Secretary to seek to enter into an agreement with the National Academy of Sciences (NAS) to review and evaluate the available scientific evidence regarding associations between illnesses and exposure to toxic agents, environmental or wartime hazards, or preventive medicines or vaccines to which service members may have been exposed during service in the Persian Gulf during the Persian Gulf War. Congress directed NAS to identify agents, hazards,

10

# EXHIBIT "B"

# LIST OF PLEADINGS AND ORDERS

EXHIBIT "B"

**BAEZ v. INDYMAC BANK – RIC 528863**

**RIVERSIDE SUPERIOR COURT**

**INDEX**

| NO. | DESCRIPTION | FILED BY | DATE |
|---|---|---|---|
| 1. | COURT DOCKET SHEET | COURT | 10-26-10 |
| 2. | COMPLAINT FOR BREACH OF WRITTEN CONTRACT; BREACH OF COVENANT OF GOOD AND FAIR DEALING; STATUTORY VIOLATION OF CIVIL CODE SECTION 2923.6; INJUNCTIVE RELIEF; DECLARATORY RELIEF | PLAINTIFF | 6-15-09 |
| 3. | ORIGINAL SUMMONS | PLAINTIFF | 6-15-09 |
| 4. | CERTIFICATE OF COUNSEL | COURT | 6-15-09 |
| 5. | PROOF OF SERVICE OF SUMMONS-CHICAGO TITLE INSURANCE COMPANY | PLAINTIFF | 7-17-09 |
| 6. | PROOF OF SERVICE OF SUMMONS-INDYMAC | PLAINTIFF | 7-17-09 |
| 7. | NOTICE OF DEMURRER AND DEMURRER OF DEFENDANT CHICAGO TITLE INSURANCE COMPANY | DEFENDANT CHICAGO TITLE INSURANCE COMPANY | 7-21-09 |
| 8. | NOTICE OF LODGMENT OF NON CALIFORNIA AUTHORITIES IN SUPPORT OF DEMURRER BY CHICAGO TITLE INSURANCE COMPANY | DEFENDANT CHICAGO TITLE INSURANCE COMPANY | 7-21-09 |
| 9. | MEMO OF POINTS AND AUTHORITIES ISO DEFENDANT CHICAGO TITLE INSURANCE COMPANY'S DEMURRER TO COMPLAINT | DEFENDANT CHICAGO TITLE INSURANCE COMPANY | 7-21-09 |

109974

| NO. | DESCRIPTION | FILED BY | DATE |
|---|---|---|---|
| 10. | PROOF OF SERVICE | DEFENDANT CHICAGO TITLE INSURANCE COMPANY | 7-22-09 |
| 11. | PROOF OF SERVICE OF SUMMONS | PLAINTIFF | 7-24-09 |
| 12. | MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.'S NOTICE OF DEMURRER AND DEMURRER TO COMPLAINT | DEFENDANT/MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. | 7-24-09 |
| 13. | APPENDIX OF NON-CALIFORNIA AUTHORITY IN SUPPORT OF MORTGAGE ELECTRONIC REGISTRATION SYSTEMS INC DEMURRER TO COMPLAINT | DEFENDANT/MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. | 7-24-09 |
| 14. | REQUEST FOR DISMISSAL WITHOUT PREJUDICE ON THE COMPLAINT | PLAINTIFF | 08-17-09 |
| 15. | PROOF OF SERVICE OF REQUEST FOR DISMISSAL SERVED ON JULIE KARAPETYAN | PLAINTIFF | 08-17-09 |
| 16. | NOTICE OF NON-OPPOSITION TO DEMURRER TO COMPLAINT | DEFENDANT/CHICAGO TITLE INSURANCE COMPANY | 08-19-09 |
| 17. | NOTICE OF RULING REGARDING DEMURRER ON COMPLAINT | DEFENDANT/CHICAGO TITLE INSURANCE COMPANY | 09-02-09 |
| 18. | FIRST AMENDED COMPLAINT | PLAINTIFF | 09-18-09 |
| 19. | SUMMONS ISSUED ON 1ST AMENDED COMPLAINT OF EMILIO BAEZ AND FILED | PLAINTIFF | 09-18-09 |
| 20. | PROOF OF SERVICE OF SUMMONS | PLAINTIFF | 09-30-09 |
| 21. | DECLARATION RE: NON-MONETARY STATUS OF DEFENDANT AZTEC FORECLOSURE CORP | DEFENDANT/AZTEC | 10-14-09 |

109974

| NO. | DESCRIPTION | FILED BY | DATE |
|---|---|---|---|
| 22. | CASE MANAGEMENT STATEMENT FILED BY EMILIO BAEZ | PLAINTIFF | 12-17-09 |
| 23. | REQUEST FOR ENTRY OF DEFAULT COURT JUDGMENT | PLAINTIFF | 01-12-10 |
| 24. | DECLARATION OF EMILIO BAEZ IN SUPPORT OF DEFAULT COURT JUDGMENT | PLAINTIFF | 03-11-10 |
| 25. | REQUEST FOR ENTRY OF COURT JUDGMENT | PLAINTIFF | 03-30-10 |
| 26. | BRIEF IN SUPPORT OF DEFAULT COURT JUDGMENT | PLAINTIFF | 03-30-10 |
| 27. | DEFAULT COURT JUDGMENT | PLAINTIFF | 07-22-10 |
| 28. | MOTION TO SUBSTITUTE FDIC-RECEIVER AND TO VACATE DEFAULT | DEF/FDIC | 09-02-10 |
| 29. | PROPOSED ORDER RE: MOTION TO SUBSTITUTE FDIC-RECEIVER AND TO VACATE DEFAULT | DEF/FDIC | 09-02-10 |
| 30. | NOTICE OF SETTING OF HEARING DATE ON FDIC-RECEIVER'S MOTION TO SUBSTITUTE AND TO VACATE DEFAULT | DEF/FDIC | 09-02-10 |
| 31. | PLAINTIFF'S OPPOSITION TO MOTION TO SUBSTITUTE FDIC-RECEIVER AND MOTION TO VACATE DEFAULT | PLAINTIFF | 09-29-10 |
| 32. | REPLY MEMO IN SUPPORT OF MOTION TO SUB FDIC-RECEIVER AND TO VACATE DEFAULT | DEF/FDIC | 10-04-10 |
| 33. | ORDER ON MOTION TO SUB FDIC-RECEIVER AND TO VACATE DEFAULT | COURT | 10-12-10 |
| 34. | NOTICE OF RULING ON MOTION TO SUB FDIC | DEF/FDIC | 10-12-10 |

# R IVERSIDE SUPERIOR COURT

## P U B L I C   A C C E S S

## Civil Case Report

**Camera indicates that a document may be purchased**
**View Document Fee Schedule**

---

| Print This Report |
|---|
| Close This Window |

### Case RIC528863 - BAEZ VS INDYMAC BANK

### Case RIC528863 - Complaints/Parties

**Complaint Number:** 1
**Complaint Type:** Complaint
**Filing Date:** 06/15/2009
**Complaint Status:** Judgment 07/22/2010

| Party Number | Party Type | Party Name | Attorney | Party Status |
|---|---|---|---|---|
| 1 | Plaintiff | EMILIO BAEZ | LAW OFFICE OF MOSES S HALL | Judgment 07/22/2010 |
| 6 | Real Party in Interest | FEDERAL DEPOSIT INSURANCE CORPORATION | MESERVE MUMPER & HUGHES LLP | First Paper Fee Paid |
| 2 | Defendant | INDYMAC BANK | Unrepresented | Served 09/23/2009 |
| 3 | Defendant | CHICAGO TITLE INSURANCE COM | LUCE FORWARD HAMILTON & SCRIPPS LLP | Dismissed 09/18/2009 |
| 4 | Defendant | MORTGAGE ELECTRONIC REGISTRATION SYSTEMS IN | LLP | Dismissed 08/17/2009 |
| 5 | Defendant | AZTEC FORECLOSURE CORPORATION | Unrepresented | Disclaimer 10/14/2009 |
| 7 | Defendant | FEDERAL DEPOSIT INSURANCE CORPORATION | MESERVE MUMPER & HUGHES LLP | Serve Required (WaitS) |

### Case RIC528863 - Actions/Minutes

| Viewed | Date | Action Text | Disposition | Image |
|---|---|---|---|---|
|  | 07/20/2020 8:30 AM DEPT. RIDST | DATE TO SET OSC RE DESTRUCTION OF FILE (JUDGMENT) |  |  |
|  | 01/11/2011 8:30 AM DEPT. | CASE MANAGEMENT CONFERENCE HEARING |  |  |

RIC528863 Case Report - Riverside Civil & Small Claims                     Page 2 of 7

| | 10 | | | |
|---|---|---|---|---|
| N | 10/12/2010 | NOTICE OF RULING RE: MTN TO SUBSTITUTE FDIC FOR DEFT INDYMAC FILED | Not Applicable | |
| N | 10/12/2010 | ORDER ON MOTION TO VACATE DEFAULT JUDGMENT BY FDIC; HONORABLE SHARON J. WATERS. | Not Applicable | |
| | 10/12/2010 8:30 AM DEPT. 10 | HEARING RE: MOTION TO/FOR SUBSTITUTE FDIC-RECEIVER FOR DEFT,VACATE DEFAULT ENTERED 1/12/10 & DEFAULT JUDGMENT 7/22/10 BY FEDERAL DEPOSIT INSURANCE CORPORATION | Granted | |

**Minutes**    [ Print Minute Order ]

HONORABLE SHARON J. WATERS, PRESIDING
CLERK: C. ZUNIGA
COURT REPORTER: K. BURKS
EMILIO BAEZ REPRESENTED BY LAW OFFICE OF MOSESS HALL - GARRET SMITH SPECIALLY APPEARING PRESENT.
MOTION GRANTED
FORMAL ORDER SIGNED IN COURT.
CASE MANAGEMENT CONFERENCE SET ON 01/11/11, AT 08:30 IN DEPARTMENT 10.
SET ASIDE DEFAULT ENTERED ON THE COMPLAINT FILED 06/15/2009 OF EMILIO BAEZ AS TO INDYMAC BANK
COURT FINDS SERVICE ON INDYMAC BANK VOID.
NOTICE TO BE GIVEN BY PLAINTIFF
AFTER MATTER WAS CALLED:
FEDERAL DEPOSIT INSURANCE CORPORATION REPRESENTED BY MESERVE MUMPER & HUGHES LLP - ZACHARY BROWN PRESENT.
COUNSEL NOTIFIED OF RULING.

| | 10/06/2010 | REJECTED DOCUMENT REPLY MEMO.IN SUPPORT OF MOTION SUBSTITUTE INDYMAC SUBMITTED BY FEDERAL DEPOSIT INSURANCE CORPORATION | Not Applicable | |
|---|---|---|---|---|

**Minutes**    [ Print Minute Order ]

THE COURT IS UNABLE TO PROCESS THE ENCLOSED DOCUMENT(S) FOR THE REASON(S) INDICATED BELOW:
ALREADY FILED ON 10-4-10, NO NEED TO REFILE (PLEASE SEE ATTACHED DOCUMENT FILED).
REJECT NOTICE PRINTED

| N | 10/04/2010 | REPLY TO MEMORANDUM IN SUPPORT OF MOTION TO SUBSTITUTE FDIC BY FEDERAL DEPOSIT INSURANCE CORPORATION FILED | Not Applicable | |
|---|---|---|---|---|
| N | 09/29/2010 | OPPOSITION TO MTN TO SUBSTITUTE FDIC-RECEIVER FOR DEFT INDMAC BY EMILIO BAEZ FILED UNTIMELY PER 1005CCP/317(A)CRC/437C(B)CCP | Not Applicable | |
| N | 09/02/2010 | NOTICE OF SETTING OF HEARING DATE ON MTN TO SUBSTITUTE, TO VACATE DEFAULT BY FEDERAL DEPOSIT INSURANCE CORPORATION FILED. | Not Applicable | |
| | 09/02/2010 | MOTION FEE POSTED BY FEDERAL DEPOSIT INSURANCE CORPORATION | Not Applicable | |

**Minutes**    [ Print Minute Order ]

RIC528863 Case Report - Riverside Civil & Small Claims                    Page 3 of 7

Receipt: 100902-0080       $40.00

| | 09/02/2010 | HEARING SET 10/12/10 AT 8:30 IN DEPARTMENT 10 | | |
|---|---|---|---|---|
| N | 09/02/2010 | MOTION TO/FOR SUBSTITUTE FDIC-RECEIVER FOR DEFT,VACATE DEFAULT ENTERED 1/12/10 & DEFAULT JUDGMENT 7/22/10 BY FEDERAL DEPOSIT INSURANCE CORPORATION FILED | | 🗃 |
| | 08/03/2010 8:30 AM DEPT. 10 | ORDER TO SHOW CAUSE HEARING WHY DISMISSAL ON THE 1ST AMENDED COMPLAINT OF EMILIO BAEZ AS TO INDYMAC BANK SHOULD NOT BE ORDERED UNLESS AN ANSWER OR DEFAULT IS FILED PRIOR TO 04/05/10 | Vacated | |
| N | 07/22/2010 | JUDGMENT BY DEFAULT BY COURT FILED 07/22/10 | Not Applicable | 🗃 |
| | 04/05/2010 8:30 AM DEPT. 10 | CASE MANAGEMENT CONFERENCE HEARING | Off-Calendar | |

**Minutes**  ⎡ Print Minute Order ⎤

HONORABLE SHARON J. WATERS, PRESIDING
CLERK: C. ZUNIGA
COURT REPORTER: A. THRASHER
EMILIO BAEZ REPRESENTED BY LAW OFFICE OF MOSESS HALL - GARRET SMITH PRESENT.
HEARING OFF CALENDAR
DEFAULT PACKET SUBMITTED

| | 04/05/2010 8:30 AM DEPT. 10 | ORDER TO SHOW CAUSE HEARING WHY DISMISSAL ON THE 1ST AMENDED COMPLAINT OF EMILIO BAEZ AS TO INDYMAC BANK SHOULD NOT BE ORDERED UNLESS AN ANSWER OR DEFAULT IS FILED PRIOR TO 04/05/10 | Continued | |
|---|---|---|---|---|

**Minutes**  ⎡ Print Minute Order ⎤

HONORABLE SHARON J. WATERS, PRESIDING
CLERK: C. ZUNIGA
COURT REPORTER: A. THRASHER
EMILIO BAEZ REPRESENTED BY LAW OFFICE OF MOSESS HALL - GARRET SMITH PRESENT.
HEARING (SAME) CONTINUED TO 08/03/10 AT 08:30 IN DEPT 10.
NOTICE WAIVED.

| N | 03/30/2010 | REQUEST FOR ENTRY OF COURT DEFAULT JUDGMENT (DEFAULT ONLY PREVIOUSLY ENTERED) | Not Applicable | 🗃 |
|---|---|---|---|---|
| N | 03/30/2010 | BRIEF IN SUPPORT OF DEFAULT COURT JUDGMENT | Not Applicable | 🗃 |
| | 03/25/2010 | REJECTED DOCUMENT REQUEST FOR ENTRY OF DEFAULT COURT JUDGMENT SUBMITTED BY EMILIO BAEZ | Not Applicable | |

**Minutes**  ⎡ Print Minute Order ⎤

THE COURT IS UNABLE TO PROCESS THE ENCLOSED DOCUMENT(S) FOR THE REASON(S) INDICATED BELOW:
THIS TYPE OF CASE DOES NOT REQUIRE A PROVE UP HEARING. PLEASE SUBMIT ALL DOCUMENTS REQUIRED
FOR THE DEFAULT COURT JUDGMENT.

RIC528863 Case Report - Riverside Civil & Small Claims                              Page 4 of 7

| | REJECT NOTICE PRINTED | | | |
|---|---|---|---|---|
| | 03/18/2010 | REJECTED DOCUMENT BRIEF IN SUPPORT OF PROVE UP HEARING DECLARATION SUBMITTED BY EMILIO BAEZ | Not Applicable | |

**Minutes** [ Print Minute Order ]

THE COURT IS UNABLE TO PROCESS THE ENCLOSED DOCUMENT(S) FOR THE REASON(S) INDICATED BELOW:
A PROVE UP HEARING DECLARATION CAN ONLY BE DONE ON A QUIET TITLE CASE. YOU MUST RE SUBMIT
THE COURT JUDGMENT PACKET
REJECT NOTICE PRINTED

| | | | | |
|---|---|---|---|---|
| N | 01/12/2010 | REQUEST FOR ENTRY OF DEFAULT ONLY ON THE 1ST AMENDED COMPLAINT OF EMILIO BAEZ AS TO INDYMAC BANK | Not Applicable | ⊡ |
| | 01/04/2010 8:30 AM DEPT. 10 | CASE MANAGEMENT CONFERENCE HEARING | Continued | |

**Minutes** [ Print Minute Order ]

HONORABLE SHARON J. WATERS, PRESIDING
CLERK: C. ZUNIGA
COURT REPORTER: K. BURKS
EMILIO BAEZ REPRESENTED BY LAW OFFICE OF MOSESS HALL - GARRET SMITH PRESENT.
HEARING (SAME) CONTINUED TO 04/05/10 AT 08:30 IN DEPT 10.
ORDER TO SHOW CAUSE RE: DISMISSAL ON THE 1ST AMENDED COMPLAINT OF EMILIO BAEZ AS TO INDYMAC BANK UNLESS AN ANSWER OR DEFAULT IS ENTERED PRIOR TO THE OSC HEARING SET 04/05/10, @ 08:30 IN DEPT. 10
ORDER TO SHOW CAUSE ISSUED
NOTICE TO BE GIVEN BY PLAINTIFF IF DEFENDANT APPEARS

| | | | | |
|---|---|---|---|---|
| N | 12/17/2009 | CASE MANAGEMENT STATEMENT FILED BY EMILIO BAEZ | Not Applicable | ⊡ |
| | 10/19/2009 8:00 AM DEPT. CLERK | NON-PROOF OF SERVICE HRG ON 1ST AMENDED COMPLAINT OF EMILIO BAEZ | Vacated | |
| N | 10/14/2009 | DECLARATION OF NON-MONETARY STATUS ON 1ST AMENDED COMPLAINT OF EMILIO BAEZ BY AZTEC FORECLOSURE CORPORATION REPRESENTED BY WRIGHT FINLAY & ZAKLLP. | Not Applicable | ⊡ |
| N | 09/30/2009 | PROOF OF SERVICE ON THE 1ST AMENDED COMPLAINT OF EMILIO BAEZ SERVED ON INDYMAC BANK WITH SERVICE DATE OF 09/23/09 FILED.(PERSONAL SERVICE) | Not Applicable | ⊡ |
| | 09/29/2009 | REJECTED DOCUMENT PROOF OF SERVICE SUBMITTED BY EMILIO BAEZ | Not Applicable | |

**Minutes** [ Print Minute Order ]

THE COURT IS UNABLE TO PROCESS THE ENCLOSED DOCUMENT(S) FOR THE REASON(S) INDICATED BELOW:
OTHER: INCOMPLETE FORM. PLEASE COMPLETE SECTION 5A. BY INDICATING DATE & TIME OF SERVICE.

| | | | | |
|---|---|---|---|---|
| | | REQUEST FOR DISMISSAL WITHOUT PREJUDICE ON THE | Not | ⊡ |

RIC528863 Case Report - Riverside Civil & Small Claims                    Page 5 of 7

| | | | | |
|---|---|---|---|---|
| N | 09/18/2009 | COMPLAINT FILED 06/15/2009 OF EMILIO BAEZ AS TO CHICAGO TITLE INSURANCE COM | Applicable | |
| N | 09/18/2009 | 1ST AMENDED COMPLAINT OF EMILIO BAEZ FILED. (AMENDED COMPLAINT - SUPERIOR COURT) | Not Applicable | 🖾 |
| | 09/18/2009 | NON PROOF OF SERVICE HEARING SET ON 10/19/09 @ 8:00 IN DEPARTMENT CLERK | | |
| N | 09/18/2009 | SUMMONS ISSUED ON 1ST AMENDED COMPLAINT OF EMILIO BAEZ AND FILED. | Not Applicable | 🖾 |
| | 09/14/2009 8:00 AM DEPT. CLERK | NON-PROOF OF SERVICE (NON-APPEARANCE) HEARING | Vacated | |
| N | 09/02/2009 | NOTICE OF RULING RE: DEMURRER ON COMPLAINT FILED | Not Applicable | 🖾 |
| | 08/28/2009 8:30 AM DEPT. 10 | HEARING RE: DEMURRER TO COMPLAINT FILED 06/15/2009 OF EMILIO BAEZ BY CHICAGO TITLE INSURANCE COM | Sustained | |

**Minutes**   [ Print Minute Order ]

HONORABLE SHARON J. WATERS, PRESIDING
CLERK: C. ZUNIGA
COURT REPORTER: M. JENNER
CHICAGO TITLE INSURANCE COM REPRESENTED BY LUCE FORWARD HAMILTON & SCRIPPSLLP - DEANNA SPELBER PRESENT.
DEMURRER ON COMPLAINT FILED 06/15/2009 OF EMILIO BAEZ AS TO CHICAGO TITLE INSURANCE COM SUSTAINED.
20 DAYS LEAVE TO AMEND.
NOTICE TO BE GIVEN BY CHICAGO TITLE INSURANCE

| | | | | |
|---|---|---|---|---|
| | 08/27/2009 8:30 AM DEPT. 10 | HEARING RE: DEMURRER TO COMPLAINT FILED 06/15/2009 OF EMILIO BAEZ BY MORTGAGE ELECTRONICREGISTRATION SYSTEMS IN | Vacated | |

**Minutes**   [ Print Minute Order ]

HEARING VACATED - DISMISSAL FILED 08/17/09

| | | | | |
|---|---|---|---|---|
| N | 08/19/2009 | NOTICE OF NON-OPPOSITION TO DEMURRER TO COMPLAINT BY CHICAGO TITLE INSURANCE COM FILED. | Not Applicable | 🖾 |
| N | 08/17/2009 | PROOF OF SERVICE OF REQ FOR DISMISSAL SERVED ON JULIE KARAPETYAN SERVED 08/14/09 FILED (NON-COMPLAINT) | Not Applicable | 🖾 |
| N | 08/17/2009 | REQUEST FOR DISMISSAL WITHOUT PREJUDICE ON THE COMPLAINT FILED 06/15/2009 OF EMILIO BAEZ AS TO MORTGAGE ELECTRONICREGISTRATION SYSTEMS IN | Not Applicable | 🖾 |
| N | 07/24/2009 | PROOF OF SERVICE ON THE COMPLAINT FILED 06/15/2009 OF EMILIO BAEZ SERVED ON MORTGAGE ELECTRONICREGISTRATION SYSTEMS IN WITH SERVICE DATE OF 06/25/09 FILED.(PERSONAL SERVICE) | Not Applicable | 🖾 |
| N | 07/24/2009 | APPENDIX OF NON-CALIFORNIA AUTHORITY IN SUPPORT OF MORTGAGE ELECTRONIC REGISTRATION SYSTEMS INC DEMU | Not Applicable | 🖾 |

RIC528863 Case Report - Riverside Civil & Small Claims                    Page 6 of 7

| | 07/24/2009 | HEARING RE: DEMURRER SET 8/27/09 AT 8:30 IN DEPT. 10 | | |
|---|---|---|---|---|
| N | 07/24/2009 | DEMURRER TO COMPLAINT FILED 06/15/2009 OF EMILIO BAEZ BY MORTGAGE ELECTRONICREGISTRATION SYSTEMS IN REPRESENTED BY LLP FILED. | Not Applicable | |

**Minutes**   Print Minute Order
Receipt: 090724-0333        $365.00

| | 07/22/2009 | PROOF OF SERVICE BY MAIL OF DEMURRER TO COMPLAINT ON MOSES S HALL WITH A MAILING DATE OF 07/21/09 FILED. (NON-COMPLAINT) | Not Applicable | |
|---|---|---|---|---|
| N | 07/21/2009 | NOTICE OF LODGMENT OF NON CALIFORNIA AUTHORITIES IN SUPPORT OF DEMURRER BY CHICAGO TITLE INSURANCE COM FILED. | Not Applicable | |
| | 07/21/2009 | HEARING RE: DEMURRER SET 8/28/09 AT 8:30 IN DEPT. 10 | | |
| N | 07/21/2009 | MEMO OF POINTS & AUTHORITIES IN SUPPORT OF/TO DEMURRER BY CHICAGO TITLE INSURANCE COM FILED. | Not Applicable | |
| N | 07/21/2009 | DEMURRER TO COMPLAINT FILED 06/15/2009 OF EMILIO BAEZ BY CHICAGO TITLE INSURANCE COM REPRESENTED BY LUCE FORWARD HAMILTON & SCRIPPSLLP FILED. | Not Applicable | |

**Minutes**   Print Minute Order
Receipt: 090721-0443        $365.00

| | 07/17/2009 | PROOF OF SERVICE ON THE COMPLAINT FILED 06/15/2009 OF EMILIO BAEZ SERVED ON CHICAGO TITLE INSURANCE COM WITH SERVICE DATE OF 06/22/09 FILED.(PERSONAL SERVICE) | Not Applicable | |
|---|---|---|---|---|
| N | 07/17/2009 | PROOF OF SERVICE ON THE COMPLAINT FILED 06/15/2009 OF EMILIO BAEZ SERVED ON INDYMAC BANK WITH SERVICE DATE OF 06/26/09 FILED.(PERSONAL SERVICE) | Not Applicable | |
| N | 06/15/2009 | CERTIFICATE OF COUNSEL FILED. | Not Applicable | |
| N | 06/15/2009 | ORIGINAL SUMMONS FILED | Not Applicable | |
| | 06/15/2009 | NON PROOF OF SERVICE HEARING SET FOR 9/14/09 AT 8:00 IN DEPT CLERK | | |
| | 06/15/2009 | DIRECTLY ASSIGNED TO DEPARTMENT 10 FOR CASE MANAGEMENT PURPOSES. | | |
| N | 06/15/2009 | COMPLAINT FILED FAST TRACK - SUMMONS ISSUED. | Not Applicable | |

**Minutes**   Print Minute Order
Receipt: 090615-0238        $365.00

## Case RIC528863 - Pending Hearings

RIC528863 Case Report - Riverside Civil & Small Claims                    Page 7 of 7

| Date | Action Text | Disposition | Image |
|------|-------------|-------------|-------|
| 01/11/2011 8:30 AM DEPT. 10 | CASE MANAGEMENT CONFERENCE HEARING | | |
| 07/20/2020 8:30 AM DEPT. RIDST | DATE TO SET OSC RE DESTRUCTION OF FILE (JUDGMENT) | | |

Print This Report

Close This Window

Riverside Public Access 5.6.20 © 2010 ISD Corporation. All Rights Reserved. www.isd-corp.com
Contact Us

Moses S. Hall, Esq., (SBN 153759)
**LAW OFFICE OF MOSES S. HALL**
2651 E. Chapman Avenue, Suite 110
Fullerton, California 92831
Telephone: (714) 738-4830
Fax: (714) 992-7916

Attorney for Plaintiff,
EMILIO BAEZ

FILED

JUN 15 2009

SUPERIOR COURT OF THE STATE OF CALIFORNIA

FOR THE COUNTY OF COUNTY OF RIVERSIDE

CENTRAL COURTHOUSE

**RIC  528863**

| | |
|---|---|
| EMILIO BAEZ, an individual,<br><br>    Plaintiff,<br><br>vs.<br><br>INDYMAC BANK, a federally chartered savings bank; CHICAGO TITLE INSURANCE CO., an entity whose form is unknown,; MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., a Delaware Corporation, and DOES 1 through 50, inclusive,<br><br>    Defendants. | Case No.:<br><br>UNLIMITED CIVIL CASE<br><br>COMPLAINT FOR:<br><br>1. BREACH OF WRITTEN CONTRACT;<br>2. BREACH OF COVENANT OF GOOD<br>   AND FAIR DEALING;<br>3. STATUTORY VIOLATION OF CIVIL CODE<br>   SECTION 2923.6<br>4. INJUNCTIVE RELIEF;<br>5. DECLARATORY RELIEF |

Plaintiff  EMILIO BAEZ (hereinafter, "Plaintiff") complains of Defendants, and each of

them, as follows:

**COMMON ALLEGATIONS**

**I. Identity of the Parties**

    1.  At all relevant times herein, Plaintiff was an individual residing in the County of

Riverside, State of California.

    2.  Defendant INDYMAC BANK (hereinafter "INDYMAC") is a federally chartered

Complaint                                    1

1  savings bank existing and operating pursuant to federal and California law, and at all relevant

2  times doing business as a real estate financial lender.

3      3. Defendant CHICAGO TITLE INSURANCE CO. (hereinafter, "CHICAGO TITLE") is

4  an entity whose form is unknown to Plaintiff, but which at all times relevant was the trustee of

5  the mortgage and home equity loan agreement between Plaintiff and Defendant INDYMAC.

6      4. Defendant MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., is a

7  Delaware corporation doing business in California and which was at all relevant times a

8  beneficiary under the mortgage between Plaintiff and Defendant INDYMAC.

9      5. Within this judicial district, the written contract, upon which this action is based, was

10  formed and performance was thereon due within this judicial district.

11      6. The true names or capacities, whether individual, corporate, associate or otherwise of

12  Defendants named herein as DOES 1 through 50, inclusive, are unknown to Plaintiff who

13  therefore sue said Defendants by such fictitious names, and Plaintiff will amend this complaint to

14  show their true names and capacities when the same have been ascertained.

15      7.  At all times relevant herein, each of the Doe Defendants was the agent, servant,

16  representative and/or employee of each of the remaining Defendants and was at all times acting

17  within the course and scope of such agency and/or employment, or was in some way the cause of

18  Plaintiff's damage.

19      8. As a direct and proximate result of the conduct of Defendants, and each of them, as

20  alleged herein, Plaintiff has been damaged through the demand for payment of excessive

21  mortgage payments, in an amount substantially in excess of minimum requirements for Superior

22  Court jurisdiction.  In addition, Plaintiff seeks injunctive relief, which also brings the action

23  within the exclusive jurisdiction of the Superior Court.

24      9. The complained of actions occurred during 2009, well within all applicable statutes of

25  limitation.

26  **II.      Summary Description and History of Civil Code Sections 2923.5 and 2923.6**

27      10.  Facing record residential foreclosures throughout the state and the devastating

28  economic impact of such foreclosures, the legislature passed, and on July 8, 2008, Governor

**Complaint**                                2

1   Schwarzenegger signed into law Senate Bill 1137.  This Act, also known as the Perata Mortgage
2   Relief Bill, was subsequently codified as Civil Code sections 2923.5 and 2923.6.  It governs any
3   residential mortgage executed between January 1, 2003 and December 31, 2007.

4       11.  Among the protections which the statute contains for borrowers in foreclosure is a
5   mandatory notification, meeting, and consultation process that must be made available to the
6   borrower by the foreclosing lender prior to filing a notice of default under Civil Code section
7   2924.  In its expression of legislative intention, the statute states that it is "modifying the
8   foreclosure process to require mortgagees, beneficiaries, or authorized agents to contact
9   borrowers and explore options that could *avoid* foreclosure."

10       12.  The Act also contains Civil Code section 2923.6, which provides a provision
11  affecting "loan pools and servicers" which directly compels all lenders on real property to offer
12  specific forbearances, payment reductions, postponements, interest rate reductions or other work-
13  out terms to the borrowers before initiating foreclosure.  The statute provides that "it is the intent
14  of the Legislature that the mortgagee, beneficiary or authorized agent offer the borrower a loan
15  modification or work-out plan if such a modification or plan is consistent with its contractual or
16  other authority."

17       13. It is the Plaintiff's contention that section 2923.6 mandates that if the terms of the
18  servicing agent's authority under its servicing agreement are broad enough to give that agent the
19  power to offer loan modifications or work-out plans, then the lender or servicing agent is
20  required to offer such a modification or work-out plan to the borrower if necessary to avoid
21  foreclosure

22

23  **III.    Plaintiffs' Contentions of Wrongful Conduct by Defendants**

24       14. On November 2, 2007, Plaintiff obtained  a thirty-year mortgage from INDYMAC
25  for his primary residence in the amount of $375,000.00.   A true and correct copy of said
26  mortgage is attached as Exhibit "1" to this complaint and is incorporated by this reference as
27  though set out in its entirety.  INDYMAC obtained an appraisal and assured both itself and
28  Plaintiff that the value of the property supported such a loan values.  INDYMAC was the

**Complaint**                                3

1 servicing agent on Plaintiff's mortgage and the home equity loan.

2     15. Paragraph 22 of the mortgage agreement contained a provision awarding reasonable

3 attorneys' fees related to any action to foreclose on the property.

4     16. In February and March of 2009, Plaintiff began to experience difficulty in paying the

5 previously described mortgage and home equity loan from INDYMAC.  Plaintiff obtained an

6 appraisal of the subject property at that time and learned that the property now had an appraised

7 value of only $256,545.00.

8     17. On or about April 8, 2009, Plaintiff, through his attorney, contacted INDYMAC in

9 writing and formally requested a loan modification pursuant to Civil Code section 2923.6.   In

10 this request, Plaintiff suggested both a modification of the interest rate on the loan and the

11 outstanding balance of the loan.  A true and correct copy of this request is attached as Exhibit "2"

12 to this complaint and is incorporated by this reference as though set out in its entirety.

13     18.  Within the time allotted to respond, INDYMAC denied the Plaintiff's request to

14 modify Plaintiff's mortgage and/or had failed to adequately respond to Plaintiff's request to

15 modify his mortgage, and/or indicated that it intended to commence foreclosure actions against

16 Plaintiff's residence.

17     19. Plaintiff alleges that in so doing INDYMAC did not make good-faith attempts to

18 modify send loan so that foreclosure on Plaintiff's property could be avoided.

19

20                 **PLAINTIFF'S CAUSES OF ACTION**

21                   <u>FIRST CAUSE OF ACTION</u>

22               BREACH OF WRITTEN CONTRACT

23                 (As Against All Defendants)

24     20. Plaintiff incorporates paragraphs 1 through 19, inclusive, of the Common Allegations,

25 as though fully set forth herein.

26     21. On or about November 2, 2007, Plaintiff and Defendant INDYMAC entered into a

27 written mortgage agreement, a copy of which is attached as Exhibit "1" and made a part of this

28 pleading.  Defendant CHICAGO TITLE was designated the trustee of the mortgage and the line

**Complaint**                4

1  of credit, and Defendant MORTGAGE ELECTRONIC RGISTRATION SYSTEMS, INC. was a

2  beneficiary under this mortgage.

3      22.   By the aforementioned acts and omissions, Defendants, and each of them, breached

4  their written contract with Plaintiff by refusing to either modify Plaintiff's mortgage or work in

5  good-faith with Plaintiff to modify Plaintiff's mortgage as required by law.

6      23. Plaintiff has performed all conditions, covenants, and promises required on its part to

7  be performed in accordance with the terms and conditions of the contract, except those for which

8  performance was excused by law or agreement.

9                  SECOND CAUSE OF ACTION

10      BREACH OF COVENANT OF GOOD FAITH AND FAIR DEALING

11                (As Against All Defendants)

12      24. Plaintiff incorporates paragraphs 1 through 19, inclusive, of the Common Allegations,

13  as though fully set forth herein.

14      25. In every contract, including every residential mortgage, the law implies a duty owed

15  by each party to the other to act in good faith, to deal fairly with one another, to not deprive the

16  other party of the benefits of the contract and to take such steps as are necessary and appropriate

17  so that the reasonable expectations of the other party as to the benefits of the contract are

18  fulfilled.

19      26. Defendants' failure to make a good-faith attempt to modify Plaintiff's mortgage as

20  required by California law, constituted a breach of this covenant of good faith and fair dealing,

21  proximately causing Plaintiff to suffer damages in an amount which will be proven at trial.

22

23                  THIRD CAUSE OF ACTION

24      STATUTORY VIOLATIONS OF CIVIL CODE SECTION 2923.6

25                (As Against All Defendants)

26      27. Plaintiff incorporates paragraphs 1 through 19, inclusive, of the Common Allegations,

27  as though fully set forth herein.

28      28.  The wrongful conduct of Defendants, and each of them, in not allowing a meaningful

**Complaint**　　　　　　　　　5

1 | modification of Plaintiff's mortgage violated California Civil Code section 2923.6.

2 |      29.   Defendants failure to modify Plaintiff's mortgage as required by California law,
3 | and/or its failure to make a good-faith attempt as required by California law, proximately caused
4 | Plaintiff to suffer damages in an amount which will be proven at trial.

5 | FOURTH CAUSE OF ACTION

6 | INJUNCTIVE RELIEF

7 | (As Against All Defendants)

8 |      30. Plaintiff incorporates paragraphs 1 through 19, inclusive, of the Common Allegations,
9 | as though fully set forth herein.

10 |      31.   The wrongful conduct of Defendants, and each of them, in breaching the agreements
11 | regarding Plaintiff, as well as breaching the covenant of good faith and fair dealing, and or
12 | violating Civil Code section 2923.6, unless and until enjoined and restrained by order of this
13 | court, will cause great and irreparable injury to Plaintiff in that Plaintiff will suffer the
14 | foreclosure and loss of his residence.

15 |      32.   Plaintiff has no adequate remedy at law for the injuries currently being suffered in
16 | that monetary damages after trial will not sufficient since Plaintiff will not be able to recover his
17 | residence of many years.

18 | FIFTH CAUSE OF ACTION

19 | DECLARATORY RELIEF

20 | (As Against All Defendants)

21 |      33.   Plaintiff incorporates paragraphs 1 through 19, inclusive, of the Common
22 | Allegations, as though fully set forth herein.

23 |      34.   An actual controversy exists between Plaintiff and Defendants as to their legal rights
24 | and duties under the statutory authority cited herein, and/or the causes of action contained herein.

25 |      35.   No adequate remedy is available other than that prayed herein by which the rights of
26 | the parties hereto may be determined.

27 |      36.   Plaintiff desires a judicial determination as to the rights and obligations of the parties
28 | under the mortgage agreement and the statutory authority cited herein, and/or the causes of

**Complaint**        6

action contained herein.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment against Defendants and each of them, pursuant to each cause of action as expressed herein as follows:

**As to the first cause of action:**

1.    For a compensatory damage award according to proof;

2.    For reasonable attorneys' fees and costs of suit;

3.    For such other and further relief as the court deems just and proper.

**As to the second cause of action:**

1.    For a compensatory damage award according to proof;

2.    For reasonable attorneys' fees and costs of suit;

3.    For such other and further relief as the court deems just and proper.

**As to the third cause of action:**

1.    For a compensatory damage award according to proof.;

2.    For reasonable attorneys' fees and costs of suit;

3.    For such other and further relief as the court deems just and proper.

**As to the fourth cause of action:**

1.    For an injunction enjoining Defendants, and each of them, from any foreclosure actions against Plaintiff's residence;

2.    For reasonable attorneys' fees and costs of suit;

3.    For such other and further relief as the court deems just and proper.

///

///

///

Complaint                                    7

**As to the fifth cause of action:**

1. For a declaration that the agreement between Plaintiff and Defendant as to whether the mortgage agreement has been breached by Defendant's failure to make a good-faith effort to modify the terms of the mortgage agreement as required by law;

2. For reasonable attorneys' fees and costs of suit;

3. For such other and further relief as the court deems just and proper.

DATED: May 27, 2009

LAW OFFICES OF MOSES S. HALL,

BY: *Moss S Hall*

MOSES S. HALL,
Attorney for Plaintiff,
EMILIO BAEZ

Complaint                                    8

# EXHIBIT "1"

3.

## "LSI TITLE, FNDS DIVISION"

**Recording Requested By:**
INDYMAC BANK, F.S.B., C/O DOCUMENT MANAGEMENT

[Company Name]
**And When Recorded Mail To:**
INDYMAC BANK, F.S.B., C/O DOCUMENT MANAGEMENT

[Name]
BLDG B, 901 E 104TH ST, SUITE 400/500
[Street Address]
KANSAS CITY, MO 64131
[City, State Zip Code]

K765555

_____[Space Above This Line]



DOC # 2007-0680017
11/07/2007 08:00A Fee:51.00
Page 1 of 15
Recorded in Official Records
County of Riverside
Larry W. Ward
Assessor, County Clerk & Recorder

| S | R | U | PAGE | SIZE | DA | MISC | LONG | RFD | COPY |
|---|---|---|---|---|---|---|---|---|---|
| | | | 15 | | | | | | |
| M | A | L | 465 | 426 | PCOR | NCOR | SMF | NCHG | EXAM |
| | | | | | | | T: | CTY | UNI |

MIN: 100055401282176579



## DEED OF TRUST

### DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

(A)     "Security Instrument" means this document, which is dated   November   2,   2007   , together with all Riders to this document.

(B)     "Borrower" is   EMILIO BAEZ A MARRIED MAN AS HIS SOLE AND SEPARATE
PROPERTY

Borrower is the trustor under this Security Instrument.

(C)     "Lender" is   INDYMAC BANK, F.S.B., A FEDERALLY CHARTERED SAVINGS BANK

Lender is a   Federal Savings Bank   organized and existing under the laws of United States of America . Lender's address is   155 NORTH LAKE AVENUE, PASADENA, CA 91101

(D)     "Trustee" is   CHICAGO TITLE INSURANCE CO.

(E)     "MERS" is Mortgage Electronic Registration Systems, Inc.  MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns.  MERS is the beneficiary under this Security Instrument.  MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI  48501-2026, tel. (888) 679-MERS.

Loan No: 128217657

California Deed of Trust—Single Family—Fannie Mae/Freddie Mac Uniform Instrument              Form 3005 1/01
MERS Modified                                                                                                  Closing
The Compliance Source, Inc.                  Page 1 of 14     Modified by Compliance Source 14301CA 08/00 Rev. 02/07
www.compliancesource.com                                                      © 2007, The Compliance Source, Inc.

(F)    "**Note**" means the promissory note signed by Borrower and dated   November  2, 2007   . The Note states that Borrower owes Lender  three hundred seventy five thousand and NO/100ths Dollars                                                                                                (U.S.

$   375,000.00   ) plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than  December  1, 2037.

(G)    "**Property**" means the property that is described below under the heading "Transfer of Rights in the Property."

(H)    "**Loan**" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.

(I)    "**Riders**" means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:

☐ Adjustable Rate Rider       ☐ Condominium Rider                ☐ Second Home Rider
☐ Balloon Rider                ☐ Planned Unit Development Rider   ☐ Biweekly Payment Rider
☐ 1-4 Family Rider             ☐ Revocable Trust Rider
☐ Other(s) [specify]

(J)    "**Applicable Law**" means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.

(K)    "**Community Association Dues, Fees, and Assessments**" means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.

(L)    "**Electronic Funds Transfer**" means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

(M)    "**Escrow Items**" means those items that are described in Section 3.

(N)    "**Miscellaneous Proceeds**" means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

(O)    "**Mortgage Insurance**" means insurance protecting Lender against the nonpayment of, or default on, the Loan.

(P)    "**Periodic Payment**" means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

(Q)    "**RESPA**" means the Real Estate Settlement Procedures Act (12 U.S.C. §2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security

Loan No: 128217657

California Deed of Trust—Single Family—Fannie Mae/Freddie Mac Uniform Instrument                                         Form 3005 1/01
MERS Modified                                                                                                            Closing
The Compliance Source, Inc.                          Page 2 of 14    Modified by Compliance Source 14301CA 08/00 Rev. 02/07
www.compliancesource.com                                                          © 2007, The Compliance Source, Inc.

Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

(R)     "Successor in Interest of Borrower" means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY

The beneficiary of this Security Instrument is MERS (solely as nominee for Lender and Lender's successors and assigns) and the successors and assigns of MERS. This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the          County          of   RIVERSIDE               :
                                            [Type of Recording Jurisdiction]     [Name   of   Recording Jurisdiction]
SEE EXHIBIT A ATTACHED HERETO AND MADE A PART HEREOF

Assessor's Identification Number: 340-331-005-3
which currently has the address of   29239 MEANDERING CIRCLE
                                     [Street]
MENIFEE AREA   ,                     California   92584                    ("Property Address"):
    [City]                              [Zip Code]

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right:  to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seized of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:
    1.  Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges. Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment

charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

2.   **Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

3.   **Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in

Loan No: 128217657

California Deed of Trust—Single Family—Fannie Mae/Freddie Mac Uniform Instrument          Form 3005 1/01
MERS Modified                                                                               Closing
The Compliance Source, Inc.               Page 4 of 14   Modified by Compliance Source 14301CA 08/00 Rev. 02/07
www.compliancesource.com                                          © 2007, The Compliance Source, Inc.

this Security Instrument, as the phrase "covenant and agreement" is used in Section 9.  If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount.  Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA.  Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank.  Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA.  Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge.  Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds.  Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds.  Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA.  If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments.  If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

4.  **Charges; Liens.**  Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any.  To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument.  If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien.  Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

5.  **Property Insurance.**  Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance.  This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires.  What Lender requires pursuant to the preceding sentences can change during the term of the Loan.  The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably.  Lender may require Borrower to pay, in connection with this Loan,

either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

6.    **Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in

California Deed of Trust—Single Family—Fannie Mae/Freddie Mac Uniform Instrument    Form 3005 1/01
MERS Modified    Closing
The Compliance Source, Inc.    Page 6 of 14    Modified by Compliance Source 14301CA 08/00 Rev. 02/07
www.compliancesource.com    © 2007, The Compliance Source, Inc.

writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

**7. Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

**8. Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

**9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**10. Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent

Loan No: 128217657

California Deed of Trust—Single Family—Fannie Mae/Freddie Mac Uniform Instrument          Form 3005 1/01
MERS Modified          Closing
The Compliance Source, Inc.          Page 7 of 14    Modified by Compliance Source 14301CA 08/00 Rev. 02/07
www.compliancesource.com          © 2007, The Compliance Source, Inc.

Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a)  Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.

(b)  Any such agreements will not affect the rights Borrower has – if any – with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

11.  Assignment of Miscellaneous Proceeds; Forfeiture.  All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

Loan No:  128217657

California Deed of Trust—Single Family—Fannie Mae/Freddie Mac Uniform Instrument                    Form 3005 1/01
MERS Modified                                                                                          Closing
The Compliance Source, Inc.                        Page 8 of 14    Modified by Compliance Source 14301CA 08/00 Rev. 02/07
www.compliancesource.com                                          © 2007, The Compliance Source, Inc.



In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

12.  **Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

13.  **Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

Loan No: 128217657

California Deed of Trust—Single Family—Fannie Mae/Freddie Mac Uniform Instrument                         Form 3005 1/01
MERS Modified                                                                                                   Closing
The Compliance Source, Inc.                              Page 9 of 14     Modified by Compliance Source 14301CA 08/00 Rev. 02/07
www.compliancesource.com                                                            © 2007, The Compliance Source, Inc.



**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the

Loan No: 128217657

California Deed of Trust—Single Family—Fannie Mae/Freddie Mac Uniform Instrument                    Form 3005 1/01
MERS Modified                                                                                          Closing
The Compliance Source, Inc.                    Page 10 of 14    Modified by Compliance Source 14301CA 08/00 Rev. 02/07
www.compliancesource.com                                                        © 2007, The Compliance Source, Inc.

expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

    **19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

    **20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

    Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period, which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

    **21. Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

    Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow

Loan No: 128217657

California Deed of Trust—Single Family—Fannie Mae/Freddie Mac Uniform Instrument    Form 3005 1/01
MERS Modified    Closing
The Compliance Source, Inc.    Page 11 of 14    Modified by Compliance Source 14301CA 08/00 Rev. 02/07
www.compliancesource.com    © 2007, The Compliance Source, Inc.

anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**22. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option, may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.**

**If Lender invokes the power of sale, Lender shall execute or cause Trustee to execute a written notice of the occurrence of an event of default and of Lender's election to cause the Property to be sold. Trustee shall cause this notice to be recorded in each county in which any part of the Property is located. Lender or Trustee shall mail copies of the notice as prescribed by Applicable Law to Borrower and to the other persons prescribed by Applicable Law. Trustee shall give public notice of sale to the persons and in the manner prescribed by Applicable Law. After the time required by Applicable Law, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Trustee may postpone sale of all or any parcel of the Property by public announcement at the time and place of any previously scheduled sale. Lender or its designee may purchase the Property at any sale.**

**Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.**

**23. Reconveyance.** Upon payment of all sums secured by this Security Instrument, Lender shall request Trustee to reconvey the Property and shall surrender this Security Instrument and all notes evidencing debt secured by this Security Instrument to Trustee. Trustee shall reconvey the Property without warranty to the person or persons legally entitled to it. Lender may charge such person or persons a reasonable fee for reconveying the Property, but only if the fee is paid to a third party (such as the Trustee) for services rendered and the charging of the

Loan No: 128217657

California Deed of Trust—Single Family—Fannie Mae/Freddie Mac Uniform Instrument                Form 3005 1/01
MERS Modified                                                                                              Closing
The Compliance Source, Inc.                      Page 12 of 14    Modified by Compliance Source 14301CA 08/00 Rev. 02/07
www.compliancesource.com                                                      © 2007, The Compliance Source, Inc.

fee is permitted under Applicable Law. If the fee charged does not exceed the fee set by Applicable Law, the fee is conclusively presumed to be reasonable.

　　　24.  **Substitute Trustee.**  Lender, at its option, may from time to time appoint a successor trustee to any Trustee appointed hereunder by an instrument executed and acknowledged by Lender and recorded in the office of the Recorder of the county in which the Property is located. The instrument shall contain the name of the original Lender, Trustee and Borrower, the book and page where this Security Instrument is recorded and the name and address of the successor trustee. Without conveyance of the Property, the successor trustee shall succeed to all the title, powers and duties conferred upon the Trustee herein and by Applicable Law. This procedure for substitution of trustee shall govern to the exclusion of all other provisions for substitution.

　　　25.  **Statement of Obligation Fee.**  Lender may collect a fee not to exceed the maximum amount permitted by Applicable Law for furnishing the statement of obligation as provided by Section 2943 of the Civil Code of California.

　　　BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

Witnesses:

_____ (Seal)
EMILIO BAEZ                                       -Borrower
                                                         [Printed Name]

_____ (Seal)
                                                         -Borrower
                                                         [Printed Name]

_____ (Seal)
                                                         -Borrower
                                                         [Printed Name]

_____ (Seal)
                                                         -Borrower
                                                         [Printed Name]

———————————[Acknowledgment on Following Page]———————————

Loan No:  128217657

California Deed of Trust—Single Family—Fannie Mae/Freddie Mac Uniform Instrument
MERS Modified
The Compliance Source, Inc.                          Page 13 of 14    Modified by Compliance Source 14301CA 08/00 Rev. 02/07
www.compliancesource.com                                                  © 2007, The Compliance Source, Inc.

Form 3005 1/01
Closing

## ACKNOWLEDGMENT

State of *California*

County of *Orange*

§
§
§

On *Nov. 2, 2007*, before me, *Maria Palacio, Notary Public* [name and title of officer] personally appeared EMILIO BAEZ

, personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s) or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

Signature *Maria Palacio.*                    (Seal)

> MARIA PALACIO
> Commission # 1495647
> Notary Public - California
> Orange County
> My Comm. Expires Jun 19, 2008

## REQUEST FOR FULL RECONVEYANCE

TO TRUSTEE:

The undersigned is the holder of the note or notes secured by this Deed of Trust, which was recorded in the office of the Recorder of _____ County, State of California, in book _____, page _____ of official records. Said note or notes, together with all other indebtedness secured by this Deed of Trust, have been paid in full. You are hereby directed to cancel said note or notes and this Deed of Trust, which are delivered hereby, and to reconvey, without warranty, all the estate now held by you under this Deed of Trust to the person or persons legally entitled thereto.

_____
(Trustee)

Date:_____

Loan No: 128217657

California Deed of Trust—Single Family—Fannie Mae/Freddie Mac Uniform Instrument          Form 3005 1/01
MERS Modified
The Compliance Source, Inc.                    Page 14 of 14   Modified by Compliance Source 14301CA 08/00 Rev. 02/07
www.compliancesource.com                                     © 2007, The Compliance Source, Inc.

ORDER NO: K702555

A
EXHIBIT "~~ONE~~"

LOT 18, AS SHOWN ON THE MAP ENTITLED, "TRACT NO. 25252-1", FILED FOR RECORD IN BOOK 345 OF MAPS, PAGES 38 THROUGH 41.

# EXHIBIT "2"

# *LAW OFFICE OF MOSES S. HALL*

**2651 East Chapman Avenue, Suite 110**
**Fullerton, California 92831**
**Telephone (714) 738-4830**
**Facsimile (714)992-7916**

April 8, 2009

Indy Mac Federal Bank
P.O. BOX 78826
Phoenix, AZ  85062-8826

RE: Emilio Baez
    Mortgage Loan # 70258819
    Address:  29239 Meandering Circle
    Menifee, CA  92584-7313

Dear Sir/Madam:

Please be advised that this office has been retained by Emilio Baez in regards to the above referenced mortgage.   Please forward all future correspondence for this matter to this office.  An Authorization is attached hereto.

I am contacting you on behalf of my clients to negotiate a new modification of their current mortgage, pursuant to California Civil Code § 2923.6, (a copy of the statute is included herein).

Prior to the enactment of the statute 95% of all loan modifications dealt only with interest reductions, such as your offer.  However smaller mortgage companies were doing principal reductions without standard variables, and as a result one person would receive a principal reduction of several thousand dollars, while others were given reductions of several hundred thousand dollars.

RE: Emilio Baez
     Mortgage Loan # 70258819
     Address: 29239 Meandering Circle
     Menifee, CA  92584-7313
Page Two
Date: April 8, 2009

Based upon the statute, modifications must now be based upon a two step criteria:

     (1) The loan is in payment default, or payment default is
     reasonably foreseeable.

     (2) Anticipated recovery under the loan modification or workout
     plan exceeds the anticipated recovery through foreclosure on a net
     present value basis.

Step one of the statute merely requires my client to honestly believe that they will not be able to continue to maintain their current monthly mortgage payments. Your records indicate that my clients' are delinquent and unable to make the monthly mortgage payment. Therefore that portion of the statutes should not be in dispute.

In satisfaction of the second criteria, a "RealQuest.com" comparable sales of real property similar in kind to my clients is attached hereto. The report indicates the fair market value of the residence at approximately $256.545.00. [See: Number 5 of the sheet, 29152 Celestial Dr., which square footage and year are similar to my clients' real property.] Without question no property sells for full market value at a foreclosure sale. The statute requires that the anticipated recovery under the modification or workout plan exceed the anticipated recovery through a foreclosure sale. It is the opinion of foreclosure consultant companies that currently lenders are netting between 70-80% of the fair market value. Given the best possible scenario this property would generate proceeds of approximately $210,000.00, from a foreclosure sale. We are willing to set a fair market value for this loan modification consistent with the $256.545.00, value.

The interest rate on this loan is presently 7.25%. According to the above code section the interest rate that is attached to this loan modification should be reduced to your present rate for a like kind borrower. In the effort of facilitating this modification, we are willing to assign to this modification an interest rate of 6% as this is the accurate rate for a like kind borrower.

RE: Emilio Baez
    Mortgage Loan # 70258819
    Address: 29239 Meandering Circle
    Menifee, CA  92584-7313
Page Three
Date: April 8, 2009

We request a principal reduction of the existing loan of $375,000.00,.00 to the anticipated foreclosure recovery of $256,545.00 and agree to commence making payment of $1538.12, forthwith.

As my client has retained this office to represent them in what may be a matter that is litigated in the immediate future, the balance of the loan and the conditions of the loan are deemed disputed. The sums allotted for the mortgage payments stated above are being deposited into a client trust account and will remain there available for your company upon resolution of this matter, minus legal cost incurred by my client to get your company to comply with the statute. Said legal costs will be deducted on a monthly accounting basis until this matter is resolved.

Your response is due within 15 days of receipt of this letter otherwise legal action will be instituted against your company to obtain my client's legal rights.

If you have any questions or comments please feel free to contact me at the above address.

Sincerely,
Law Offices of Moses S. Hall

Moses S. Hall, Esq.
MSH:
Attachments

# LAW OFFICE OF MOSES S. HALL

**2651 East Chapman Avenue, Suite 110**
**Fullerton, California  92831**
**Telephone (714) 738-4830**
**Facsimile (714)992-7916**

## THIRD PARTY AUTHORIZATION

I hereby authorize ___Indy Mac Federal Bank___ (name of lender) to discuss my request for payment assistance/loan modifications with the individual(s) that I have identified below as my designated agent(s) (hereinafter "Designated Agent").

Further, ___Indy Mac Federal Bank___ (name of lender) is hereby authorized to discuss all current and future matters related to my mortgage and negotiate terms of a workout agreement with my Designated Agent and to deliver any and all necessary documents to my Designated Agent.

I understand that I will be fully responsible for reviewing any information or documentation that is sent by ___Indy Mac Federal Bank___ (name of lender) to my Designated Agent.

This authorization is effective from the date written below and remains valid for the next 180 consecutive days.

My Designated Agent(s) are:

___Law Office of Moses S Hall___          ___(914) 738-4830___
Name of 3rd Party Agent                          Phone #

___Moses S. Hall___                              ___(714) 738 4830___
Name of 3rd Party Agent                          Phone #


___Emilio Baez___                              ___3/23/09___
Name of Client                                    Date

4

### The Law:

### California Civil Code Section

**2923.6.**  (a) The Legislature finds and declares that any duty servicers may have to maximize net present value under their pooling and servicing agreements is owed to all parties in a loan pool, not to any particular parties, and that a servicer acts in the best interests of all parties if it agrees to or implements a loan modification or workout plan for which both of the following apply:
   (1) The loan is in payment default, or payment default is reasonably foreseeable.
   (2) Anticipated recovery under the loan modification or workout plan exceeds the anticipated recovery through **foreclosure on a net present value basis.**
   (b) It is the intent of the Legislature that the mortgagee, beneficiary, or authorized agent offer the borrower a loan modification or workout plan if such a modification or plan is consistent with its contractual or other authority.
   (c) This section shall remain in effect only until January 1, 2013, and as of that date is repealed, unless a later enacted statute, that is enacted before January 1, 2013, deletes or extends that date.

# SUMMONS
## (CITACION JUDICIAL)

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*
INDYMAC BANK, a federally chartered savings bank;
CHICAGO TITLE INSURANCE CO., an entity whose form is
unknown,; MORTGAGE ELECTRONIC REGISTRATION SYSTEMS,
INC., a Delaware Corporation, and DOES 1 through 50,
inclusive,

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*
EMILIO BAEZ, an individual,



**SUM-100**

FOR COURT USE ONLY
*(SOLO PARA USO DE LA CORTE)*

CDH

FILED
SUPERIOR COURT OF CALIFORNIA
COUNTY OF RIVERSIDE

JUN 15 2009

M. Precido

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (www.lawhelpcalifornia.org), the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), or by contacting your local court or county bar association.

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.courtinfo.ca.gov/selfhelp/espanol/), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.courtinfo.ca.gov/selfhelp/espanol/) o poniéndose en contacto con la corte o el colegio de abogados locales.*

The name and address of the court is:
*(El nombre y dirección de la corte es):*
RIVERSIDE SUPERIOR COURT
4050 Main Street
Same as above
Riverside, California 92501
Central Courthouse

CASE NUMBER:
*(Número del Caso):*
RIC528863

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
Moses S. Hall, Esq.                                714-738-4830
LAW OFFICE OF MOSES S. HALL
Moses S. Hall, Esq.
Fullerton, California 92831

DATE: 10-15-09                Clerk, by _____, Deputy
*(Fecha)*                      *(Secretario)*                  *(Adjunto)*

(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)
*(Para prueba de entrega de esta citatión use el formulario Proof of Service of Summons, (POS-010)).*

**NOTICE TO THE PERSON SERVED:** You are served
1. [ ] as an individual defendant.
2. [ ] as the person sued under the fictitious name of *(specify):*

3. [ ] on behalf of *(specify):*

   under: [ ] CCP 416.10 (corporation)     [ ] CCP 416.60 (minor)
          [ ] CCP 416.20 (defunct corporation)  [ ] CCP 416.70 (conservatee)
          [ ] CCP 416.40 (association or partnership)  [ ] CCP 416.90 (authorized person)
          [ ] other *(specify):*
4. [ ] by personal delivery on *(date):*

[SEAL]

Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 [Rev. January 1, 2004]

**SUMMONS**

Legal
Solutions
Plus

Code of Civil Procedure §§ 412.20, 465

**SUPERIOR COURT, COUNTY OF RIVERSIDE, STATE OF CALIFORNIA**

| | | | | | |
|---|---|---|---|---|---|
| ☐ | **BANNING** 135 N. Alessandro Road, Banning, CA 92220 | | ☐ | **MURRIETA** 30755-D Auld Road, Murrieta, CA 92563 | |
| ☐ | **BLYTHE** 265 North Broadway, Blythe, CA 92225 | | ☒ | **RIVERSIDE** 4050 Main St., Riverside, CA 92501 | |
| ☐ | **HEMET** 880 N. State St., Hemet, CA 92543 | | ☐ | **RIVERSIDE** 4175 Main St., Riverside, CA 92501 | |
| ☐ | **INDIO** 46-200 Oasis St., Indio, CA 92201 | | ☐ | **TEMECULA** 41002 County Center Dr., #100, Temecula, CA 92591 | |
| ☐ | **MORENO VALLEY** 13800 Heacock St. #D201, Moreno Valley, CA 92553 | | | | |

CDH

JUN 15 2009

IR

Name and Address
Moses S. Hall          SBN 153759
Law Offices Of Moses S. Hall
2651 E. Chapman Ave., Ste. 110
Fullerton, CA. 92831

Attorney for Plaintiff
or Party without Attorney

F I L E D
SUPERIOR COURT OF CALIFORNIA
COUNTY OF RIVERSIDE

JUN 15 2009

M. Preciado

EMILIO BAEZ, an individual,

                          Plaintiff(s)

vs.

INDYMAC BANK, et. al.

                          Defendant(s)

CASE NO. **RIC 528863**

**CERTIFICATE OF COUNSEL**

The undersigned certifies that this matter should be tried or heard in the
Court for the following reason:

☒   The action arose in this judicial district.

☒   The action concerns real property located in this judicial district.

☐   The defendant resides in this judicial district.

Dated:  May 27, 2009

Signed by: _Moses S. Hall_
ATTORNEY FOR PLAINTIFF(S)
OR PARTY WITHOUT ATTORNEY

Moses S. Hall Esq.

53

POS-010

ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address):*
Moses S. Hall (SBN 153759)
Law Offices of Moses S. Hall
2651 East Chapman Avenue, Suite 110
Fullerton, CA 92831
TELEPHONE NO.: (714) 738 - 4830   FAX NO. *(Optional):* (714) 992 - 7916
E-MAIL ADDRESS *(Optional):* hralaw@yahoo.com
ATTORNEY FOR *(Name):* Emiliano BAEZ

FOR COURT USE ONLY

FILED
SUPERIOR COURT OF CALIFORNIA
COUNTY OF RIVERSIDE

JUL 17 2009

V. Reyes

SUPERIOR COURT OF CALIFORNIA, COUNTY OF Riverside
STREET ADDRESS: 4050 Main Street
MAILING ADDRESS:
CITY AND ZIP CODE: Riverside, CA, 92501
BRANCH NAME: Central Courthouse

PLAINTIFF/PETITIONER: Emiliano Baez

DEFENDANT/RESPONDENT: Indymac Bank et. al.

CASE NUMBER:
RIC528863

PROOF OF SERVICE OF SUMMONS

Ref. No. or File No.:

*(Separate proof of service is required for each party served.)*

1. At the time of service I was at least 18 years of age and not a party to this action.
2. I served copies of:
   a. ☑ summons
   b. ☑ complaint
   c. ☐ Alternative Dispute Resolution (ADR) package
   d. ☑ Civil Case Cover Sheet *(served in complex cases only)*
   e. ☐ cross-complaint
   f. ☑ other *(specify documents):* Court Calendar

3. a. Party served *(specify name of party as shown on documents served):*
      Chicago Title Insurance Co.

   b. ☑ Person (other than the party in item 3a) served on behalf of an entity or as an authorized agent (and not a person under item 5b on whom substituted service was made) *(specify name and relationship to the party named in item 3a):*
      C T Corporation System - Agent for Service of Process

4. Address where the party was served:
   818 West Seventh Street, Los Angeles, CA 90017
5. I served the party *(check proper box)*
   a. ☑ by personal service. I personally delivered the documents listed in item 2 to the party or person authorized to receive service of process for the party (1) on *(date):* 6/22/09      (2) at *(time):* 2:59 pm
   b. ☐ by substituted service. On *(date):*                     at *(time):*            I left the documents listed in item 2 with or in the presence of *(name and title or relationship to person indicated in item 3):*

      (1) ☐ **(business)** a person at least 18 years of age apparently in charge at the office or usual place of business of the person to be served. I informed him or her of the general nature of the papers.

      (2) ☐ **(home)** a competent member of the household (at least 18 years of age) at the dwelling house or usual place of abode of the party. I informed him or her of the general nature of the papers.

      (3) ☐ **(physical address unknown)** a person at least 18 years of age apparently in charge at the usual mailing address of the person to be served, other than a United States Postal Service post office box. I informed him or her of the general nature of the papers.

      (4) ☐ I thereafter mailed (by first-class, postage prepaid) copies of the documents to the person to be served at the place where the copies were left (Code Civ. Proc., § 415.20). I mailed the documents on *(date):*            from *(city):*                     or ☐ a declaration of mailing is attached.

      (5) ☐ I attach a **declaration of diligence** stating actions taken first to attempt personal service.

Form Adopted for Mandatory Use
Judicial Council of California
POS-010 [Rev. January 1, 2007]

PROOF OF SERVICE OF SUMMONS

Page 1 of 2

Code of Civil Procedure, § 417.10
American LegalNet, Inc.
www.FormsWorkflow.com

| PLAINTIFF/PETITIONER: Emiliano Baez | CASE NUMBER: |
|---|---|
| DEFENDANT/RESPONDENT: Indymac Bank et. al. | RIC528863 |

5.   c. ☐   **by mail and acknowledgment of receipt of service.** I mailed the documents listed in item 2 to the party, to the address shown in item 4, by first-class mail, postage prepaid,

    (1) on *(date):*                    (2) from *(city):*

    (3) ☐  with two copies of the *Notice and Acknowledgment of Receipt* and a postage-paid return envelope addressed to me.  (Attach completed Notice and Acknowledgment of Receipt.) (Code Civ. Proc., § 415.30.)

    (4) ☐  to an address outside California with return receipt requested.  (Code Civ. Proc., § 415.40.)

   d. ☐  **by other means** *(specify means of service and authorizing code section):*

    ☐  Additional page describing service is attached.

6.   The "Notice to the Person Served" (on the summons) was completed as follows:
   a. ☐   as an individual defendant.
   b. ☐   as the person sued under the fictitious name of *(specify):*
   c. ☐   as occupant.
   d. ☑   On behalf of *(specify):*
     under the following Code of Civil Procedure section:

     ☑ 416.10 (corporation)              ☐ 415.95 (business organization, form unknown)
     ☐ 416.20 (defunct corporation)         ☐ 416.60 (minor)
     ☐ 416.30 (joint stock company/association)   ☐ 416.70 (ward or conservatee)
     ☐ 416.40 (association or partnership)     ☐ 416.90 (authorized person)
     ☐ 416.50 (public entity)             ☐ 415.46 (occupant)
                                     ☐ other:

7.   **Person who served papers**
   a. Name:  Mike Distefano
   b. Address: 2651 East Chapman Avenue, Suite 110, Fullerton CA 92831
   c. Telephone number:  (714) 738 - 4830
   d. The fee for service was: $ 75.00
   e. I am:
     (1) ☐  not a registered California process server.
     (2) ☐  exempt from registration under Business and Professions Code section 22350(b).
     (3) ☑  a registered California process server:
       (i) ☑ owner   ☐ employee   ☐ independent contractor.
       (ii)  Registration No.: PSC
       (iii)  County:  Orange

8.   ☐  I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

     or

9.   ☐  I am a California sheriff or marshal and I certify that the foregoing is true and correct.

Date:  07/10/09

Mike Distefano
_____
(NAME OF PERSON WHO SERVED PAPERS/SHERIFF OR  MARSHAL)

(SIGNATURE )

POS-010

| | |
|---|---|
| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address)*:<br>Moses S. Hall (SBN 153759)<br>Law Offices of Moses S. Hall<br>2651 East Chapman Avenue, Suite 110<br>Fullerton, CA 92831<br>TELEPHONE NO.: (714) 738-4830   FAX NO. *(Optional)*: (714) 992-7916<br>E-MAIL ADDRESS *(Optional)*: hralaw@yahoo.com<br>ATTORNEY FOR *(Name)*: Emilio Baez | FOR COURT USE ONLY<br><br>F I L E D<br>SUPERIOR COURT OF CALIFORNIA<br>COUNTY OF RIVERSIDE<br><br>JUL 17 2009<br><br>V. Reyes |
| SUPERIOR COURT OF CALIFORNIA, COUNTY OF Riverside<br>STREET ADDRESS: 4050 Main Street<br>MAILING ADDRESS:<br>CITY AND ZIP CODE: Riverside, CA, 92501<br>BRANCH NAME: Central Courthouse | |

| PLAINTIFF/PETITIONER: Emilio Baez | CASE NUMBER: |
|---|---|
| DEFENDANT/RESPONDENT: Indymac Bank, et. al. | RIC 528863 |
| **PROOF OF SERVICE OF SUMMONS** | Ref. No. or File No.: |

*(Separate proof of service is required for each party served.)*

1. At the time of service I was at least 18 years of age and not a party to this action.

2. I served copies of:
   a. ☑ summons
   b. ☑ complaint
   c. ☑ Alternative Dispute Resolution (ADR) package
   d. ☑ Civil Case Cover Sheet *(served in complex cases only)*
   e. ☐ cross-complaint
   f. ☑ other *(specify documents)*: Court calendar

3. a. Party served *(specify name of party as shown on documents served)*:
   **Indymac Bank**

   b. ☑ Person (other than the party in item 3a) served on behalf of an entity or as an authorized agent (and not a person under item 5b on whom substituted service was made) *(specify name and relationship to the party named in item 3a)*:
   **Lorna Lualhati - Manager**

4. Address where the party was served:
   888 E. Walnut St, Pasadena, CA 91101

5. I served the party *(check proper box)*
   a. ☑ **by personal service.** I personally delivered the documents listed in item 2 to the party or person authorized to receive service of process for the party (1) on *(date)*: 6/26/2009   (2) at *(time)*: 10:59 am
   b. ☐ **by substituted service.** On *(date)*:   at *(time)*:   I left the documents listed in item 2 with or in the presence of *(name and title or relationship to person indicated in item 3)*:

      (1) ☐ **(business)** a person at least 18 years of age apparently in charge at the office or usual place of business of the person to be served. I informed him or her of the general nature of the papers.

      (2) ☐ **(home)** a competent member of the household (at least 18 years of age) at the dwelling house or usual place of abode of the party. I informed him or her of the general nature of the papers.

      (3) ☐ **(physical address unknown)** a person at least 18 years of age apparently in charge at the usual mailing address of the person to be served, other than a United States Postal Service post office box. I informed him or her of the general nature of the papers.

      (4) ☐ I thereafter mailed (by first-class, postage prepaid) copies of the documents to the person to be served at the place where the copies were left (Code Civ. Proc., § 415.20). I mailed the documents on *(date)*:   from *(city)*:   or ☐ a declaration of mailing is attached.

      (5) ☐ I attach a **declaration of diligence** stating actions taken first to attempt personal service.

Page 1 of 2

| | | |
|---|---|---|
| Form Adopted for Mandatory Use<br>Judicial Council of California<br>POS-010 [Rev. January 1, 2007] | **PROOF OF SERVICE OF SUMMONS** | Code of Civil Procedure, § 417.10<br>American LegalNet, Inc.<br>www.FormsWorkflow.com |

56

| PLAINTIFF/PETITIONER: Emilio Baez | CASE NUMBER: |
|---|---|
| DEFENDANT/RESPONDENT: Indymac Bank, et. al. | RIC 528863 |

5.  c.  ☐  **by mail and acknowledgment of receipt of service.** I mailed the documents listed in item 2 to the party, to the address shown in item 4, by first-class mail, postage prepaid,

    (1) on *(date):*                        (2) from *(city):*

    (3) ☐ with two copies of the *Notice and Acknowledgement of Receipt* and a postage-paid return envelope addressed to me. *(Attach completed Notice and Acknowledgement of Receipt.)* (Code Civ. Proc., § 415.30.)

    (4) ☐ to an address outside California with return receipt requested. (Code Civ. Proc., § 415.40.)

  d.  ☐  **by other means** *(specify means of service and authorizing code section):*

    ☐ Additional page describing service is attached.

6.  The "Notice to the Person Served" (on the summons) was completed as follows:
  a.  ☐  as an individual defendant.
  b.  ☐  as the person sued under the fictitious name of *(specify):*
  c.  ☐  as occupant.
  d.  ☑  On behalf of *(specify):*
    under the following Code of Civil Procedure section:

| | |
|---|---|
| ☑ 416.10 (corporation) | ☐ 415.95 (business organization, form unknown) |
| ☐ 416.20 (defunct corporation) | ☐ 416.60 (minor) |
| ☐ 416.30 (joint stock company/association) | ☐ 416.70 (ward or conservatee) |
| ☐ 416.40 (association or partnership) | ☐ 416.90 (authorized person) |
| ☐ 416.50 (public entity) | ☐ 415.46 (occupant) |
| | ☐ other: |

7.  **Person who served papers**
  a.  Name: **Mike Distefano**
  b.  Address: 2651 E. Chapman Avenue, Suite 110, Fullerton, CA 92831
  c.  Telephone number: (714) 738 - 4830
  d.  The fee for service was: $ 75.00
  e.  I am:

    (1) ☐ not a registered California process server.
    (2) ☐ exempt from registration under Business and Professions Code section 22350(b).
    (3) ☑ a registered California process server:
      (i) ☑ owner   ☐ employee   ☐ independent contractor.
      (ii) Registration no.: PSC 1678
      (iii) County: Orange

8.  ☐  I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

    or

9.  ☐  I am a California sheriff or marshal and I certify that the foregoing is true and correct.

Date: 06/29/09

Mike Distefano
_____
(NAME OF PERSON WHO SERVED PAPERS/SHERIFF OR MARSHAL)

▶ _____
(SIGNATURE )

ORIGINAL

8/28
D-10

1  George C. Rudolph, Esq. (State Bar No. 72470)
   Deanna M. Spelber, Esq. (State Bar No. 217361)
2  **LUCE, FORWARD, HAMILTON & SCRIPPS LLP**
   2050 Main Street, Suite 600
3  Irvine, California 92614
   Telephone No.: 949.732.3700
4  Fax No.: 949.732.3739

5  Attorneys for Defendant CHICAGO TITLE
   INSURANCE COMPANY
6

FILED
SUPERIOR COURT OF CALIFORNIA
COUNTY OF RIVERSIDE

JUL 21 2009

A. Sanchez

LJF
JUL 2 3 2009

7

8              SUPERIOR COURT OF THE STATE OF CALIFORNIA

9           FOR THE COUNTY OF RIVERSIDE, CENTRAL COURTHOUSE

10

11  EMILIO BAEZ, an individual,                 Case No. RIC 528863

12              Plaintiff,                       Hon. Sharon J. Waters
                                                 Dept. 10
13  v.
                                                 **NOTICE OF DEMURRER AND**
14  INDYMAC BANK, a federally chartered          **DEMURRER OF DEFENDANT**
    savings bank, CHICAGO TITLE                  **CHICAGO TITLE INSURANCE**
15  INSURANCE, CO., an entity whose form in      **COMPANY TO COMPLAINT**
    unknown, MORTGAGE ELECTRONIC
16  REGISTRATION SYSTEMS, INC., a
    Delaware corporation, and DOES 1 through
17  50, inclusive,

18              Defendants.

19                                               [Supporting Memorandum of Points and
                                                 Authorities, and Notice of Lodgment of Non-
20                                               California Authorities filed separately and
                                                 concurrently]
21
                                                 Date: _____, 2009
22                                               Time: _____m.
                                                 Dept.: 10
23

24                                               Complaint Filed:     June 15, 2009
                                                 Trial Set:           Not Set
25

26

27

28
    501012769.1

1  **TO: ALL PARTIES, AND TO THEIR ATTORNEYS OF RECORD:**

2        **PLEASE TAKE NOTICE** that on _____9|26____, 2009, at __830__ *a*___.m., or

3  as soon thereafter as counsel may be heard, in Department 10 of the above-entitled Court, located at

4  4050 Main Street, Riverside, California, Defendant CHICAGO TITLE INSURANCE COMPANY,

5  for itself and itself alone, will, and does hereby, demur to Plaintiff's Complaint filed herein on June

6  15, 2009.

7        This Demurrer is based upon *Code of Civil Procedure*, § 430.10, and each and all of the

8  grounds stated in the Demurrer attached hereto.

9        This Demurrer is based upon this Notice; the attached Demurrer; the supporting Memorandum

10  of Points and Authorities filed concurrently herewith; the complete record and file in this action; and

11  upon such further argument and evidence as might be submitted prior to, or at the time of, the Court's

12  hearing of this Demurrer.

13  Dated: July 22, 2009                    LUCE, FORWARD, HAMILTON & SCRIPPS, LLP

14

15                                          By _George C. Rudolph_

16                                             George C. Rudolph, Esq.

17

18

19

20

21

22

23

24

25

26

27

28

501012769.1

1

NOTICE OF DEMURRER AND DEMURRER OF DEFENDANT CHICAGO TITLE

## DEMURRER TO COMPLAINT

Defendant CHICAGO TITLE INSURANCE COMPANY ("Chicago Title"), for itself and itself alone, hereby demurs to Plaintiff's Complaint filed herein on June 15, 2009 ("the Complaint"), and the whole thereof, on each and all of the following grounds.

    1.   **The First Cause of Action** fails to state facts sufficient to constitute a valid claim for relief against Chicago Title. (*Code Civ. Proc.*, § 430.10(e).)

    2.   **The Second Cause of Action** fails to state facts sufficient to constitute a valid claim for relief against Chicago Title. (*Code Civ. Proc.*, § 430.10(e).)

    3.   **The Third Cause of Action** fails to state facts sufficient to constitute a valid claim for relief against Chicago Title. (*Code Civ. Proc.*, § 430.10(e).)

    4.   **The Fourth Cause of Action** fails to state facts sufficient to constitute a valid claim for relief against Chicago Title. (*Code Civ. Proc.*, § 430.10(e).)

    5.   **The Fifth Cause of Action** fails to state facts sufficient to constitute a valid claim for relief against Chicago Title. (*Code Civ. Proc.*, § 430.10(e).)

**WHEREFORE**, Chicago Title prays:

    1.   That the Complaint be dismissed, as against Chicago Title, in its entirety and without leave to amend; and

    2.   That Chicago Title be awarded its costs incurred herein; and

    3.   For such other and further relief as the Court deems just and proper.

Dated: July 22, 2009            LUCE, FORWARD, HAMILTON & SCRIPPS, LLP

By   _____
      George C. Rudolph, Esq.

501012769.1

2

NOTICE OF DEMURRER AND DEMURRER OF DEFENDANT CHICAGO TITLE



1 | George C. Rudolph, Esq. (State Bar No. 72470)
Deanna M. Spelber, Esq. (State Bar No. 217361)
2 | **LUCE, FORWARD, HAMILTON & SCRIPPS LLP**
2050 Main Street, Suite 600
3 | Irvine, California 92614
Telephone No.: 949.732.3700
4 | Fax No.: 949.732.3739

5 | Attorneys for Defendant CHICAGO TITLE
INSURANCE COMPANY

6

7

8 | SUPERIOR COURT OF THE STATE OF CALIFORNIA

9 | FOR THE COUNTY OF RIVERSIDE, CENTRAL COURTHOUSE

10

11 | EMILIO BAEZ, an individual,

Case No. RIC 528863

12 | Plaintiff,

Hon. Sharon J. Waters
Dept. 10

13 | v.

**NOTICE OF LODGMENT OF NON-
CALIFORNIA AUTHORITIES IN
SUPPORT OF DEFENDANT CHICAGO
TITLE INSURANCE COMPANY'S
DEMURRER TO COMPLAINT**

14 | INDYMAC BANK, a federally chartered
savings bank, CHICAGO TITLE
15 | INSURANCE, CO., an entity whose form in
unknown, MORTGAGE ELECTRONIC
16 | REGISTRATION SYSTEMS, INC., a
Delaware corporation, and DOES 1 through
17 | 50, inclusive,

18 | Defendants.

19 | [Supporting Notice of Demurrer and
Memorandum of Points and Authorities filed
20 | separately and concurrently]

21 | Date: 8/28 , 2009
Time: 830 a.m.
22 | Dept.: 10

23

24 | Complaint Filed:    June 15, 2009
Trial Set:    Not Set

25

26

27

28

5010012759.1

1

NOTICE OF LODGMENT OF NON-CALIFORNIA AUTHORITIES IN SUPPORT OF DEFENDANT

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

Pursuant to Rule 3.1113, subd. (i) of the *California Rules of Court*, Defendant CHICAGO TITLE INSURANCE COMPANY hereby lodges true copies of the following Federal authorities in support of its Demurrer to Plaintiff's Complaint:

| Exhibit | Description |
|---------|-------------|
| A | *Paek v. Plaza Home Mortgage, Inc.*, 2009 U.S. Dist. LEXIS 54888 (C.D. Cal. June 15, 2009) |
| B | *Farner v. Countrywide Home Loans*, 2009 U.S. Dist. LEXIS 5303 (S.D. Cal. Jan. 26, 2009) |
| C | *Pittman v. Barclays Capital Real Estate, Inc.*, 2009 U.S. Dist. LEXIS 34885 (S.D. Cal. Apr. 24, 2009) |

Dated: July 22, 2009                 LUCE, FORWARD, HAMILTON & SCRIPPS, LLP

By _____
George C. Rudolph, Esq.

501012759.1                                    2

NOTICE OF LODGMENT OF NON-CALIFORNIA AUTHORITIES IN SUPPORT OF DEFENDANT

EXHIBIT (A)

Page 1



**UNSON PAEK, ET AL., v. PLAZA HOME MORTGAGE, INC., ET AL.,**

Case No. CV 09-1729 CAS (CTx)

**UNITED STATES DISTRICT COURT FOR THE CENTRAL DISTRICT OF CALIFORNIA**

*2009 U.S. Dist. LEXIS 54888*

**June 15, 2009, Decided**
**June 15, 2009, Filed**

**COUNSEL:** [*1] Attorneys for Plaintiffs: Timothy Thurman Present.

Attorneys for Defendants: John Alessio Present.

**JUDGES:** Honorable CHRISTINA A. SNYDER.

**OPINION BY:** CHRISTINA A. SNYDER

**OPINION**

**CIVIL MINUTES - GENERAL**

Proceedings: **DEFENDANT PLAZA HOME MORTGAGE, INC.'S MOTION TO DISMISS FIRST AMENDED COMPLAINT** (Filed 5/14/09)

**I. INTRODUCTION**

On March 12, 2009, plaintiffs Unson Paek and Jung Paek filed the suit against defendants Plaza Home Mortgage, Inc. ("Plaza Home"); Indymac F.S.B.; DLJ Mortgage Capital, Inc.; CLC Consumer Services Co.; Charles Schwab Bank, N.A.; PHH Mortgage Corporation, and Does 1 through 10 alleging various claims arising out of the foreclosure of their home.

On April 20, 2009, plaintiffs filed a first amended complaint ("FAC") against defendants Plaza Home; Indymac F.S.B.; Charles Schwab Bank, N.A.; PHH Mortgage Corporation, and Does 1 through 10. Plaintiff alleges the following claims against Plaza Home alleging claims for (1) violation of the Truth in Lending Act ("TILA"), *15 U.S.C. § 1601*; (2) violation of the Real Estate Settlement Procedures Act ("RESPA"), *12 U.S.C. § 2601*; (3) breach of contract; (4) breach of the implied covenant of good faith and fair dealing; (5) violation of *Cal. Civ. Code § 2923.6*; [*2] (6) violation of *Cal. Civ. Code § 2923.5*; (7) violation of *Cal. Bus. & Prof. Code §§ 17200 and 17500*; (8) quiet title; and (9) declaratory relief.

On May 14, 2009, defendant Plaza Home filed the instant motion to dismiss the FAC. On June 1, 2009, plaintiffs filed their opposition. On June 8, 2009, defendant filed its reply. A hearing was held on June 15, 2009. After carefully considering the parties' arguments, the Court finds and concludes as follows.

**II. BACKGROUND**

Plaintiffs allege that on or about May 9, 2005, they obtained a $ 584,000 primary mortgage loan and $ 73,000 second mortgage loan from Plaza Home secured by plaintiff's principal residence, located at 7286 Woodvale Court, Los Angeles, California. FAC P 18. Plaintiffs allege that these notes were secured by a first and second trust deed on the property in favor of Plaza Home. *Id.* Plaintiffs further allege that "the terms of the finance transaction with [Plaza Home] are not clear or conspicuous, nor consistent, and include reference to a variable rate note with a 'teaser rate' or discounted rate of 1%, conflicting interest rate change dates, a yield spread premium, and other rates and fees for which [Plaza Home] either did [*3] not disclose, make clear, or had not included as part of the finance charge." FAC P 19.

**III. LEGAL STANDARD**

A *Rule 12(b)(6)* motion tests the legal sufficiency of the claims asserted in a complaint. "While a complaint attacked by a *Rule 12(b)(6)* motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' re-

2009 U.S. Dist. LEXIS 54888, *

quires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 127 S. Ct. 1955, 1964-65, 167 L. Ed. 2d 929 (2007).* "[F]actual allegations must be enough to raise a right to relief above the speculative level." *Id. at 1965.*

In considering a motion pursuant to *Fed. R. Civ. P. 12(b)(6)*, a court must accept as true all material allegations in the complaint, as well as all reasonable inferences to be drawn from them. *Pareto v. F.D.I.C., 139 F.3d 696, 699 (9th Cir. 1998).* The complaint must be read in the light most favorable to the nonmoving party. *Sprewell v. Golden State Warriors, 266 F.3d 979, 988 (9th Cir. 2001); Parks Sch. of Bus., Inc. v. Symington, 51 F.3d 1480, 1484 (9th Cir. 1995).* However, a court need not accept as true unreasonable [*4] inferences or conclusory legal allegations cast in the form of factual allegations. *Sprewell, 266 F.3d at 988; W. Mining Council v. Watt, 643 F.2d 618, 624 (9th Cir. 1981).*

Dismissal pursuant to *Rule 12(b)(6)* is proper only where there is either a "lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dept., 901 F.2d 696, 699 (9th Cir. 1990).*

Furthermore, unless a court converts a *Rule 12(b)(6)* motion into a motion for summary judgment, a court cannot consider material outside of the complaint (e.g., facts presented in briefs, affidavits, or discovery materials). *In re American Cont'l Corp./Lincoln Sav. & Loan Sec. Litig., 102 F.3d 1524, 1537 (9th Cir. 1996), rev'd on other grounds sub nom Lexecon, Inc. v. Milberg Weiss Bershad Hynes & Lerach, 523 U.S. 26, 118 S. Ct. 956, 140 L. Ed. 2d 62 (1998).* A court may, however, consider exhibits submitted with or alleged in the complaint and matters that may be judicially noticed pursuant to *Federal Rule of Evidence 201. In re Silicon Graphics Inc. Sec. Litig., 183 F.3d 970, 986 (9th Cir. 1999); Lee v. City of Los Angeles, 250 F.3d 668, 689 (9th Cir. 2001).*

For all of these reasons, it is only [*5] under extraordinary circumstances that dismissal is proper under *Rule 12(b)(6). United States v. City of Redwood City, 640 F.2d 963, 966 (9th Cir. 1981).*

As a general rule, leave to amend a complaint which has been dismissed should be freely granted. *Fed. R. Civ. P. 15(a).* However, leave to amend may be denied when "the court determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency." *Schreiber Distrib. Co. v. Serv-Well Furniture Co., 806 F.2d 1393, 1401 (9th Cir. 1986); see Lopez v. Smith, 203 F.3d 1122, 1127 (9th Cir. 2000).*

**IV. DISCUSSION**

Defendant argues that the FAC contains only two paragraphs of allegations against it and that these allegations are "woefully inadequate as factual support for the claims made in the FAC." Mot. at 4. Defendant contends that the FAC does not allege any specific misconduct attributable to Plaza Home or any specific damage arising therefrom. *Id.*

**A. Plaintiff's TILA and RESPA Claims**

The Court concludes that plaintiffs' TILA and RESPA claims should be dismissed. Plaintiffs' TILA claim alleges that defendant "violated the requirements of TILA and Regulation Z, and other applicable laws, in [*6] one or more of the following ways within one year of the Closing Date" and lists sixteen sections of TILA and Regulation Z without any factual support. Similarly, plaintiffs' RESPA claim alleges that defendant "violated RESPA in one or more of the following ways" and lists thirteen sections of RESPA without factual support These allegations are inadequate to "raise a right to relief above the speculative level." *Twombly, 127 S. Ct. at 1965.*

**B. Plaintiff's Breach of Contract Claim**

The Court concludes that plaintiffs' breach of contract claim should be dismissed. Plaintiffs allege that "BANK breached the agreement by, among other things, failing to calculate and charge an interest rate based on the Index agreed to." FAC P 36. Plaintiffs fail to identify which bank breached which agreement or any details regarding the alleged miscalculation. These allegations are inadequate to "raise a right to relief above the speculative level." *Twombly, 127 S. Ct. at 1965.*

**C. Plaintiff's Breach of the Implied Covenant of Good Faith and Fair Dealing Claim**

The Court concludes that plaintiffs' claim for breach of the implied covenant of good faith and fair dealing should be dismissed. Plaintiffs allege that [*7] defendant's "attempt to foreclose upon the property lawfully belonging to Plaintiff without production of documents demonstrating the lawful rights for said foreclosure would constitute a breach of the said covenant of good faith and fair dealing." FAC P 40. However, defendant does not have any special relationship with plaintiffs that would support recovery in tort for breach of the implied covenant of good faith and fair dealing. *Price v. Wells Fargo Bank, 213 Cal. App. 3d 465, 476, 261 Cal. Rptr. 735 (1989)* ("A debt is not a trust and there is not a fiduciary relation between debtor and creditor as such"). Moreover, the Court cannot conclude that a foreclosure conducted in accordance with the terms of a deed of trust constitutes a breach of the implied covenant of good faith and fair dealing. Furthermore, defendant did not partici-

 

pate in the foreclosure because they sold the note "several years ago." *See* FAC, Ex. E (demonstrating that the foreclosure was conducted by defendants PHH Mortgage Corporation and INDYMAC).

**D. Plaintiff's Claim for Violation of *Cal. Civ. Code § 2923.6***

The Court concludes that plaintiffs' claim for violation of *Cal. Civ. Code § 2923.6* should be dismissed. Plaintiffs allege that [*8] "[a] loan modification would be in the best interest of all parties in this case because Plaintiff is currently in default and the recovery under a loan modification or workout plan would exceed the anticipated recovery through foreclosure." FAC P 44. Plaintiffs' claim is based on the erroneous assumption that *§ 2923.6* requires a lender to enter into a loan modification if it is in the best interest of the parties. *Section 2923.6* contains no such requirement and plaintiff's claim should therefore be dismissed. *Farner v. Countrywide Home Loans, 2009 U.S. Dist. LEXIS 5303, 2009 WL 189025 at *2 (S.D. Cal. Jan. 26, 2009)* ("nothing in *Cal. Civ. Code § 2923.6* imposes a duty on servicers of loans to modify the terms of loans or creates a private right of action for borrowers.").

**E. Plaintiff's Claim for Violation of *Cal. Civ. Code § 2923.5***

The Court concludes that plaintiffs' claim for violation of *Cal. Civ. Code § 2923.5* should be dismissed. Plaintiffs allege that defendant violated *§ 2923.5* "in one or more of the following ways" and restates the statute. These allegations are inadequate to "raise a right to relief above the speculative level." *Twombly, 127 S. Ct. at 1965.*

**F. Plaintiff's Claim for Violation of *Cal. Bus. & Prof. Code §§ 17200* [*9] and *17500***

The Court concludes that plaintiffs' claim for violation of *Cal. Bus. & Prof. Code §§ 17200* and *17500* should be dismissed. Plaintiffs allege that defendant's "act or practices of failing to accurately and adequately disclose the true loan terms, failing to provide Plaintiff with the necessary disclosures and documents, violating anti-predatory lending statutes requiring such disclosures, etc., all as previously alleged with this Complaint, was and is illegal, unfair, fraudulent and/or deceptive." FAC P 36. Because the Court herein dismisses all of plaintiffs' claims, there is no predicate to support plaintiffs' claim pursuant to *§§ 17200* and *17500*. *See Smith v. State Farm Mutual Automobile Ins. Co., 93 Cal. App. 4th 700, 718, 113 Cal. Rptr. 2d 399 (2001).* Furthermore,

plaintiffs' claim is preempted by TILA. *Nava v. Virtual-Bank, 2008 U.S. Dist. LEXIS 72819, 2008 WL 2873406, *7 (E.D. Cal. Jul. 16, 2008)* ("for the same reason that plaintiff's UCL claim based on unfair or fraudulent business practices is preempted by federal law, plaintiff's UCL claim based on violation of TILA is also preempted.")

**G. Plaintiff's Claim to Quiet Title**

The Court concludes that plaintiffs' claim to quiet title should be dismissed. Plaintiff alleges [*10] that none of the defendants have any right in the property and seeks a declaration that "title to the subject Property is vested in Plaintiff alone." FAC P 75. The Court concludes that plaintiff cannot "quiet title without discharging [their] debt. The cloud upon [their] title persists until the debt is paid." *Aguilar, 39 Cal. App. 3d at 477.* The non-judicial foreclosure sale does not entitle plaintiffs to quiet title to the property without paying their debt. *See Karlsen v. American Sav. & Loan Assn., 15 Cal. App. 3d 112, 117, 92 Cal. Rptr. 851 (1971)* ("A valid and viable tender of payment of the indebtedness owing is essential to an action to cancel a voidable sale under a deed of trust.").

**H. Plaintiff's Claim for Declaratory Relief**

The Court concludes that plaintiff's claim for declaratory relief should be dismissed. "The declaratory relief statute should not be used for the purpose of anticipating and determining an issue which can be determined in the main action." *Lilly, 258 Cal. App. 2d at 470.* The object of the declaratory relief statute is "not to furnish a litigant with a second cause of action for the determination of identical issues." *Id.* The Court concludes that plaintiffs' claim for declaratory [*11] relief should be dismissed because it is duplicative of their other claims.

**V. CONCLUSION**

In accordance with the foregoing, the Court hereby GRANTS defendant's motion to dismiss without prejudice. Plaintiffs shall file an amended complaint curing the defects noted herein within 45 days after the filing of this order. In the event that plaintiffs do not amend their complaint within 45 days, this order will operate as a dismissal with prejudice.

IT IS SO ORDERED.

00:02

Initials of Preparer CMJ

EXHIBIT ( ß )

LexisNexis

LEXSEE 2009 U.S. DIST. LEXIS 5303

**THOMAS FARNER; SHANNON FARNER, Plaintiffs, vs. COUNTRYWIDE HOME LOANS; RECONTRUST COMPANY, and DOES 1 through 10, inclusive, Defendants.**

**CASE NO. 08cv2193 BTM(AJB)**

**UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF CALIFORNIA**

***2009 U.S. Dist. LEXIS 5303***

**January 26, 2009, Decided**
**January 26, 2009, Filed**

**COUNSEL:** [*1] Thomas Farner, Plaintiff, Pro se, Vista, CA.

Shannon Farner, Plaintiff, Pro se, Vista, CA.

For Countrywide Home Loans, Recontrust Company, Defendants: Brendon K Barton, LEAD ATTORNEY, Bryan Cave LLP, Irvine, CA.

**JUDGES:** Honorable Barry Ted Moskowitz, United States District Judge.

**OPINION BY:** Barry Ted Moskowitz

**OPINION**

**ORDER DENYING MOTION FOR PRELIMINARY INJUNCTION AND VACATING TEMPORARY RESTRAINING ORDER**

**I. *INTRODUCTION***

Prior to the removal of this case, the Superior Court granted Plaintiffs' application for a temporary restraining order and Plaintiffs filed a motion for preliminary injunction. Upon removal, this Court issued a temporary restraining order to maintain the status quo and ordered Defendants to show cause why a preliminary injunction should not issue. Defendants filed a response to the OSC. Plaintiffs have not filed any reply. Upon review of the record, the Court finds that there is no need for an evidentiary hearing or oral argument and decides the motion on the papers.

**II. *DISCUSSION***

A. *Standard*

To prevail on a motion for a preliminary injunction, the moving party must show either "a) a probable success on the merits combined with the possibility of irreparable injury or b) that [the moving party] has [*2] raised serious questions going to the merits, and that the balance of hardships tips sharply in her favor." *Bernhardt v. County of Los Angeles, 339 F.3d 920, 925 (9th Cir. 2003)*. These alternatives are "extremes of a single continuum," thus, "the greater the relative hardship to the moving party, the less probability of success must be shown." *Id.* (citations omitted). Courts will also consider the public interest when evaluating a request for injunctive relief. *Caribbean Marine Servs. Co. v. Baldridge, 844 F.2d 668, 674 (9th Cir. 1988)*.

B. *Analysis*

Plaintiffs contend that Defendants lack standing to foreclose on the property located at 2246 1/2 Buena Creek Road, Vista, California (the "Property"), and seek to enjoin Defendants from conducting nonjudicial foreclosure proceedings. For the reasons discussed below, the Court denies Plaintiffs' motion for preliminary injunction.

In May 2005, Plaintiffs obtained a $ 660,100 loan from Nationwide Lending Group. (Ex. A to Razo Decl.) The note was secured by a Deed of Trust, which names Mortgage Electronic Registration Systems, Inc. ("MERS") as the beneficiary. (Ex. B to Razo Decl.)

In October 2005, Countrywide Home Loans, Inc. ("Countrywide") acquired [*3] the servicing rights to the loan, including the right to collect payments and enforce

2009 U.S. Dist. LEXIS 5303, *

the terms of the Note and Deed of Trust. (Razo Decl. P 7.) On May 19, 2008, at Countrywide's direction, ReconTrust Company ("ReconTrust"), acting as an agent for MERS, recorded a Notice of Default and Election to Sell Under Deed of Trust ("Notice of Default") in the San Diego County Recorder's Office. (Ex. E to Razo Decl.) On August 21, 2008, MERS substituted ReconTrust as the trustee under the Deed of Trust. The Deed of Trust was recorded with the San Diego County Recorder's Office. (Ex. F to Razo Decl.) On August 26, 2008, ReconTrust, as trustee under the Deed of trust, recorded a Notice of Trustee's sale with a foreclosure sale date of September 11, 2008. (RJN, Ex. 8.) No foreclosure sale has yet taken place. The amount due to reinstate the loan under the note is $ 98,409.93. (Razo Decl. P 13.)

Under California law, nonjudicial foreclosure proceedings can be instituted by "the trustee, mortgagee, or beneficiary, or any of their authorized agents" by filing a notice of default with the office of the recorder. *Cal. Civ. Code § 2924(a)(1)*. No less than three months after the filing of the notice of [*4] default, a notice of sale may be given by "the mortgagee, trustee, or other person authorized to take the sale." *Cal. Civ. Code § 2924(a)(3)*.

Here, the notice of default was filed by ReconTrust at the direction of Countrywide. Both ReconTrust and Countrywide were acting as agents for MERS, the beneficiary under the deed of trust. Subsequently ReconTrust, as trustee, recorded the Notice of Trustee's sale. ReconTrust and Countrywide had standing to perform the aforementioned actions, and Plaintiffs have failed to produce evidence of any procedural impropriety with respect to the nonjudicial foreclosure proceedings.

Plaintiffs suggest that Defendants must produce the original note in order to conduct nonjudicial foreclosure proceedings. However, there does not appear to be any requirement under California law that the original note be produced in order to render the foreclosure proceedings valid. *See Cal. Civ. Code §§ 2924, et seq.*

Plaintiffs argue that the foreclosure proceedings would violate *Cal. Civ. Code § 2923.6*, which, according to Plaintiffs, requires Defendants to modify the terms of the loan. However, nothing in *Cal. Civ. Code § 2923.6* imposes a duty on servicers of loans to modify [*5] the terms of loans or creates a private right of action for borrowers. [1]

1  *Cal. Civ. Code § 2923.6* provides:

(a) The Legislature finds and declares that any duty servicers may have to maximize net present value under their pooling and ser-

vicing agreements is owed to all parties in a loan pool, not to any particular parties, and that a servicer acts in the best interests of all parties if it agrees to or implements a loan modification or workout plan for which both of the following apply:

(1) The loan is in payment default, or payment default is reasonably foreseeable.

(2) Anticipated recovery under the loan modification or workout plan exceeds the anticipated recovery through foreclosure on a net present value basis.

(b) It is the intent of the Legislature that the mortgagee, beneficiary, or authorized agent offer the borrower a loan modification or workout plan if such a modification or plan is consistent with its contractual or other authority.

(c) This section shall remain in effect only until January 1, 2013, and as of that date is repealed, unless a later enacted statute, that is enacted before January 1, 2013, deletes or extends that date.

Plaintiffs' remaining causes of action for fraud [*6] and violations of the Rosenthal Fair Debt Collection Practices Act ("RFDCPA") and the Federal Fair Debt Collection Practices Act ("FDCPA") seek damages and do not have any bearing on Plaintiffs' motion for preliminary injunction. At any rate, Plaintiffs have not shown a likelihood of success on these claims. Plaintiffs make general claims that Defendants engaged in conduct "which harassed, oppressed, and abused" them (Decl. of Shannon Farner (RJN Ex. 2), P. 3), but do not specify exactly what each Defendant did to violate the RFDCPA and/or FDCPA. As for the fraud claim, it appears that the

Page 3

2009 U.S. Dist. LEXIS 5303, *

alleged fraud was committed by the lender. It is unclear under what theory Plaintiffs seek to hold Defendants responsible for the lender's actions.

Although the loss of Plaintiffs' home may constitute an irreparable injury -- *see, e.g., Wrobel v. S.L Pope & Assocs., 2007 U.S. Dist. LEXIS 59779, 2007 WL 2345036 (S.D. Cal. August 15, 2007)* -- Plaintiffs have failed to show even a modest chance of success on the merits. Therefore, Plaintiffs are not entitled to injunctive relief at this time.

**III. CONCLUSION**

For the reasons discussed above, Plaintiffs' motion for a preliminary injunction is **DENIED,** and the temporary restraining order [*7] is **VACATED.** The hearing on the Order to Show Cause is **VACATED.**

**IT IS SO ORDERED.**

DATED: January 26, 2009

/s/ Barry Ted Moskowitz

Honorable Barry Ted Moskowitz

United States District Judge

EXHIBIT ( $C$ )



6 of 8 DOCUMENTS

**JEFFREY ALLEN PITTMAN, Plaintiff, vs. BARCLAYS CAPITAL REAL ES-
TATE, INC. d/b/a HOMEQ SERVICING CORPORATION, Defendant.**

**CASE NO. 09 CV 0241 JM (AJB)**

**UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF
CALIFORNIA**

*2009 U.S. Dist. LEXIS 34885*

**April 24, 2009, Decided
April 24, 2009, Filed**

**COUNSEL:** [*1] For Jeffrey Allen Pittman, Plaintiff:
Brett A. Baer, LEAD ATTORNEY, Doan Law Firm,
LLP, Carlsbad, CA.

For Barclays Capital Real Estate, Inc., d/b/a HomEq Ser-
vicing Corporation, Defendant: Starlet J. Japp, LEAD
ATTORNEY, Houser & Allison, APC, Vista, CA:

**JUDGES:** Hon. Jeffrey T. Miller, United States District
Judge.

**OPINION BY:** Jeffrey T. Miller

**OPINION**

**ORDER:**

**1) GRANTING MOTION TO DISMISS** (Doc.
No. 3) and

**2) DENYING MOTION FOR PRELIMINARY
INJUNCTION**

**(Doc. No. 9)**

On January 5, 2009, Plaintiff Jeffrey Allen Pittman [1]
("Plaintiff") initiated an action in San Diego Superior
Court, North County Division, alleging violations of
California Commercial Code *§ 3301, California Civil
Code §§ 2924, 1708,* and *1788, et seq.* ("Rosenthal Act"),
and *California Business and Professions Code § 17200*
(Unfair Competition Law). (Doc. No. 1, Exh. A
("Compl.") at 2.) On February 10, 2009, Defendant Bar-
clays Capital Real Estate Inc. d/b/a Homeq Servicing
("HomEq"), removed the case to federal court. (Doc. No.
1.)

1   The court notes the absence from the case of a
possible indispensable plaintiff, Sarah Denise
Combs, named as a joint tenant on the Deed of
Trust. (MTD, Exh. 3.)

Pending before the court are two motions: 1)
HomEq's motion to dismiss the [*2] Complaint under
*Rule 12(b)(6) of the Federal Rules of Civil Procedure*
(Doc. No. 3, "MTD"); and 2) Plaintiff's motion for a pre-
liminary injunction to enjoin any foreclosure sale of his
property (Doc. No. 9, "MPI"). Each party opposes the
motion filed by the other. Pursuant to Civ.L.R. 7.1(d),
the matters were taken under submission by the court
without oral argument on April 17, 2009. For the reasons
set forth below, the court **GRANTS** HomEq's motion to
dismiss and **DENIES** Plaintiff's motion for a preliminary
injunction.

**I. BACKGROUND**

On November 18, 2005, Plaintiff obtained a home
mortgage loan from lender HomeLoanAdvisors.Com
with which he purchased the subject property. (Compl. P
18.) Plaintiff's promise to pay the Adjustable Rate Note
was secured by a Deed of Trust on the property. (Compl.
P 55, Exh. A; MTD, Exh. 3.) Plaintiff later defaulted on
the loan, leading to the initiation of foreclosure proceed-
ings. (Compl. PP 28, 47, 49, 84, Exhs. C and E.) During
a status conference before the court on February 27,
2009, HomEq represented that no foreclosure sale would
take place until Plaintiff's motion for preliminary injunc-
tion was decided by the court.

In his first cause of action, Plaintiff [*3] argues
HomEq does not have the authority to enforce the Note
through foreclosure proceedings and requests declaratory
and injunctive relief. Next, Plaintiff alleges HomEq

committed a "tort-in-se" by breaching a statutory duty allegedly imposed by *Cal. Civil Code § 2923.6(a)* when it refused to accept his loan modification demand. Plaintiff claims this conduct also violated *Cal. Civ. Code § 1708* and California's Unfair Competition Law (UCL), *Cal. Bus. Prof. Code § 17200 et seq.* Plaintiff asserts his fifth cause of action under the Rosenthal Fair Debt Collection Practices Act, *Cal. Civ. Code § 1788.17.* Plaintiff seeks injunctive relief, damages, attorneys' fees and costs, and rescission.

## II. MOTION TO DISMISS

### A. Legal Standards

A motion to dismiss under *Rule 12(b)(6)* challenges the legal sufficiency of the pleadings. *De La Cruz v. Tormey, 582 F.2d 45, 48 (9th Cir. 1978).* In evaluating the motion, the court must construe the pleadings in the light most favorable to the plaintiff, accepting as true all material allegations in the complaint and any reasonable inferences drawn therefrom. See, e.g., *Broam v. Bogan, 320 F.3d 1023, 1028 (9th Cir. 2003).* While *Rule 12(b)(6)* dismissal is proper only [*4] in "extraordinary" cases, the complaint's "factual allegations must be enough to raise a right to relief above the speculative level...." *U.S. v. Redwood City, 640 F.2d 963, 966 (9th Cir. 1981); Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 127 S.Ct. 1955, 1965, 167 L. Ed. 2d 929 (2007)* (allegations must provide "plausible grounds to infer" that plaintiff is entitled to relief). The court should grant 12(b)(6) relief only if the complaint lacks either a "cognizable legal theory" or facts sufficient to support a cognizable legal theory. *Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1990).* In testing the complaint's legal adequacy, the court may consider material properly submitted as part of the complaint or subject to judicial notice. *Swartz v. KPMG LLP, 476 F.3d 756, 763 (9th Cir. 2007).* Furthermore, under the "incorporation by reference" doctrine, the court may consider documents "whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the [plaintiff's] pleading." *Janas v. McCracken (In re Silicon Graphics Inc. Sec. Litig.), 183 F.3d 970, 986 (9th Cir. 1999)* (internal quotation marks omitted). [1]

2   To this end, the court may consider [*5] the Adjustable Rate Note, Notice of Default, Assignment of Deed of Trust, and Notice of Trustee's Sale attached to Plaintiff's Complaint. (Compl., Exhs. A, C-E.) The court may also consider the Deed of Trust and Substitution of Trustee submitted by HomEq and grants the Request for Judicial Notice for these documents. (MTD, Exhs. 3 and 9; Doc. No. 4.)

### B. Analysis

*1. Lack of Standing to Enforce the Note*

In his first cause of action, Plaintiff argue HomEq lacks standing to proceed to foreclosure because it has no enforceable rights in the Note. (Compl. P 71.) In particular, Plaintiff alleges HomEq is absent from the Note's chain of title and has not otherwise shown it is a "holder" or "nonholder in possession" of the instrument as required by *Cal. Comm. Code § 3301.* Because HomEq arguably lacks standing to foreclose, Plaintiff contends any actions under the statutes governing nonjudicial foreclosures, *Cal. Civ. Code § 2924 et seq.,* were unlawful. (Compl. P 70.)

Plaintiff's contentions are, in fact, correct, but they actually work in HomEq's favor. As Plaintiff notes, HomEq is neither the beneficiary nor the trustee. HomEq is merely the loan servicer and has no beneficial interest in [*6] the Note. However, at no point in any of his submissions does Plaintiff allege that HomEq, on its own behalf or as an agent to purported beneficiary Deutsche Bank, has taken any action whatsoever to effect foreclosure on the property. Rather, only foreclosure trustee Old Republic Default Management Services ("Old Republic") has taken such action; Old Republic recorded both the Notice of Default and Notice of Trustee's Sale. (Compl., Exhs. C, E.) While Plaintiff is right that HomEq does not have any enforceable rights in the Note, Plaintiff has failed to show HomEq has made any attempt to enforce the obligation. Plaintiff's lack of standing claim is properly brought against Deutsche Bank and Old Republic and, based on the record before the court, fails to state a claim against HomEq.

As to the chain of title, HomEq contends Plaintiff, in his capacity as principal of the original beneficiary, HomeLoanAdvisors.Com, transferred an interest in the Deed of Trust and the Note to New Century Mortgage Corporation by Allonge. (Doc. No. 16 at 2, Exh. D.) The Allonge is undated and it appears neither it nor any assignment to New Century was ever recorded. Thereafter, New Century assigned its interest [*7] to Deutsche Bank National Trust Company ("Deutsche Bank"). [3] (MTD, Exh. 3.) Plaintiff argues the Allonge was ineffective as an endorsement to New Century, and thus, it is unclear at this point who, including Plaintiff's company, holds the right to enforce the Note. [4] (Doc. No. 18 at 2.) Regardless of whether Deutsche Bank is properly authorized to foreclose on the property, Plaintiff's claim against *HomEq* fails for the simple reason that Plaintiff has not alleged HomEq is either effecting foreclosure or has claimed a right to do so.

◯                    ◯                              Page 3

2009 U.S. Dist. LEXIS 34885, *

3   Plaintiff argues the assignment is invalid because it assigned the Deed of Trust without the Note. (Opp'n to MTD at 4.) However, the Assignment clearly transfers "all beneficial under that certain Deed of Trust...together with the Promissory Note secured by said Deed of Trust and also all rights accrued or to accrue under said Deed of Trust." (Compl., Exh. D.)

4   The court observes Plaintiff had an opportunity to contest Deutsche Bank's and HomEq's standing rights during his Chapter 7 Bankruptcy proceedings, during which the parties won an uncontested motion for relief from the automatic stay. (MTD, Exh. 8.) Although the court does not decide the issue, Plaintiff's [*8] acquiescence could be construed to have preclusive effect.

Based on this claim, Plaintiff seeks a declaration that the Note and Deed of Trust are invalid and injunctive relief to enjoin any foreclosure sale. HomEq has no interest in either document and thus, there are no respective interests to declare. HomEq's motion to dismiss the declaratory relief claim is therefore granted. The court notes Plaintiff made a separate motion for preliminary injunction which is addressed in Section III, below.

### 2. "Tort-in-Se" for Violation of Cal. Civ. Code § 2923.6

Plaintiff argues HomEq violated *Cal. Civ. Code § 2923.6* when it did not accept the modified loan payment terms he proposed. (Compl. P 96.) Plaintiff asserts HomEq's violation of a statutory duty constitutes a "tort-in-se." (Compl. P 100.)

Section § 2923.6 provides, "any duty servicers may have to maximize net present value under their pooling and servicing agreements is owed to all parties in a loan pool...and that a servicer acts in the best interests of all parties" by modifying a defaulted loan to recover a greater amount than it would through foreclosure. Plaintiff engages in a lengthy discussion regarding the state legislature's intent [*9] that the statute help curb the wave of foreclosures and concludes the statute was meant to assist borrowers. (Doc. No. 18 at 8-9.) However, even assuming Plaintiff's analysis is correct, the cited statute clearly addresses this concern by creating a duty between a loan servicer and a *loan pool member*. The statute in no way confers standing on a *borrower* to contest a breach of that duty. Despite Plaintiff's assertion to the contrary, he personally is not a member of a loan pool, nor has he alleged he is a party to any "pooling and servicing agreement" which might trigger the statute. [5] Because HomEq, as the loan servicer, owes Plaintiff no statutory duty, Plaintiff fails to state a claim for a "tort-in-se." Therefore, the court grants HomEq's motion to dismiss on this claim.

5   The court observes Plaintiff's argument that his loan is part of a loan pool is in direct contradiction to his argument that Deutsche Bank "as Trustee under Pooling and Servicing Agreement dated as of April 1, 2006 Morgan Stanley ABS Capital I Inc. Trust 2006-NC3 Mortgage Pass-through Certificates, Series 2006 NC3" lacks standing to foreclose on the property.

### 3. Violation of Cal. Civ. Code § 1708

Plaintiff alleges [*10] HomEq's conduct violated *Cal. Civ. Code § 1708* which provides, "Every person is bound, without contract, to abstain from injuring the person or property of another, or infringing upon any of his or her rights." Although it is unclear from the Complaint, it appears Plaintiff's claim is premised on the alleged violation of *Cal. Civ. Code § 2923.6*. (MTD Opp'n at 9.) As Plaintiff fails to state a claim for the underlying violation, he cannot maintain a derivative claim based thereon. Consequently, the court grants HomEq's motion to dismiss on this claim.

### 4. Violation of California's Unfair Competition Law

Plaintiff's claim for violation of California's UCL is based on HomEq's purported violations of *Cal. Comm. Code § 3301* and *Cal. Civ. Code §§ 1708, 2923.6*, and *2924*. (MTD Opp'n at 10.) The court has addressed each of these underlying claims in the preceding sections and found them lacking. Plaintiff's predicate claims are therefore insufficient to support this derivative claim. Thus, HomEq's motion to dismiss is granted on the UCL claim.

### 5. Violation of California's Rosenthal Act

Plaintiff alleges HomEq violated the Rosenthal Act, *Cal. Civ. Code § 1788.17*, in particular the sections incorporating [*11] standards set forth in *15 U.S.C. §§ 1692f(1)* and *(6)*. However, as HomEq observes, Plaintiff's claims are wholly unsupported by relevant factual allegations and are subject to dismissal on this basis alone. *Clegg v. Cult Awareness Network, 18 F.3d 752, 754-55 (9th Cir. 1994)* ("the court is not required to accept legal conclusions cast in the form of factual allegations"). On a more basic level, even if Plaintiff had pled relevant facts, he fails to state a claim under the Rosenthal Act because a residential mortgage loan does not qualify as a "debt" under the statute. The Rosenthal Act protects consumers from debt collection practices for "consumer debts," created through transactions in which "property, services or money is acquired on credit?primarily for personal, family, or household purposes." *Cal. Civ. Code § 1788.2(e)-(f)*. Thus, foreclosing on a deed of trust does not invoke the statutory protections. Additionally, as discussed above, Plaintiff has not alleged HomEq itself has taken any action in the foreclo-



sure proceedings. Plaintiff fails to state a claim under the Rosenthal Act and Homeq's motion to dismiss is granted.

### III. MOTION FOR PRELIMINARY INJUNCTION

Plaintiff's motion [*12] for preliminary injunction raises the same issues as his Complaint. Plaintiff bears the burden of showing: (1) a combination of probable success and the possibility of irreparable harm, or (2) serious questions and the balance of hardship tips in his favor. *Arcamuzi v. Continental Air Lines, Inc., 819 F.2d 935, 937 (9th Cir. 1987).* Under either formulation, Plaintiff must demonstrate a "fair chance of success on the merits" and a "significant threat of irreparable injury." Id. As the discussion above outlines, Plaintiff has failed to demonstrate a likelihood of success on the merits and is not entitled to injunctive relief against HomEq.

### IV. CONCLUSION

For the reasons set forth above, the court **GRANTS** HomEq's motion to dismiss. (Doc. No. 3.) In particular, Plaintiff's claim for violation of *Cal. Comm. Code § 3301* and the Unfair Competition Law claim based thereon are **DISMISSED** without prejudice. Plaintiff's tort-in-se claim for violation of *Cal. Civ. Code § 2923.6* and the Unfair Competition Law claim based thereon, his claim under *Cal. Civ. Code § 1708*, and his Rosenthal Act claim are **DISMISSED** with prejudice.

Plaintiff's motion for preliminary injunction against HomEq is **DENIED.** (Doc. [*13] No. 9.)

**IT IS SO ORDERED.**

DATED: April 24, 2009

/s/ Jeffrey T. Miller

Hon. Jeffrey T. Miller

United States District Judge



1   George C. Rudolph, Esq. (State Bar No. 72470)
    Deanna M. Spelber, Esq. (State Bar No. 217361)
2   **LUCE, FORWARD, HAMILTON & SCRIPPS LLP**
    2050 Main Street, Suite 600
3   Irvine, California 92614
    Telephone No.: 949.732.3700
4   Fax No.: 949.732.3739

5   Attorneys for Defendant CHICAGO TITLE
    INSURANCE COMPANY

6

7

8              SUPERIOR COURT OF THE STATE OF CALIFORNIA

9         FOR THE COUNTY OF RIVERSIDE, CENTRAL COURTHOUSE

10

11  EMILIO BAEZ, an individual,            Case No. RIC 528863

12          Plaintiff,                     Hon. Sharon J. Waters
                                           Dept. 10
13  v.
                                           **MEMORANDUM OF POINTS AND**
14  INDYMAC BANK, a federally chartered    **AUTHORITIES IN SUPPORT OF**
    savings bank, CHICAGO TITLE            **DEFENDANT CHICAGO TITLE**
15  INSURANCE, CO., an entity whose form in **INSURANCE COMPANY'S DEMURRER**
    unknown, MORTGAGE ELECTRONIC           **TO COMPLAINT**
16  REGISTRATION SYSTEMS, INC., a
    Delaware corporation, and DOES 1 through
17  50, inclusive,

18          Defendants.

19                                         [Notice of Demurrer and Demurrer, and Notice
                                           of Lodgment of Non-California Authorities
20                                         filed separately and concurrently]

21                                         Date: _____, 2009
                                           Time: _____ a.m.
22                                         Dept.: 10

23

24                                         Complaint Filed:    June 15, 2009
                                           Trial Set:          Not Set
25

26

27

28
    501012768.1
    MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEMURRER

ORIGINAL

LUCE, FORWARD, HAMILTON & SCRIPPS LLP

## I.   INTRODUCTION.

This is an action by a borrower, who admits that he is having difficulty paying the two mortgage loans he obtained—a first mortgage, which is reflected by the deed of trust attached to the complaint, and a home equity line of credit. Both mortgage loans are secured by a residence that is now allegedly appraised for approximately $118,000 less than the original principal of his senior mortgage loan. According to Plaintiff, his lender has refused to entertain a modification of the mortgage loans. Hence, Plaintiff alleges that he is entitled to relief under the terms of the senior deed of trust, and under *Civil Code*, § 2923.6.

However, Plaintiff did not name and sue only his lender. He also names and prays for relief against Defendant CHICAGO TITLE INSURANCE COMPANY ("Chicago Title"), which is the original trustee under the deed of trust securing the senior mortgage loan at issue. As would be expected given that capacity, there is not a single allegation that Chicago Title committed any wrongdoing. In fact, there is no fact alleged that even indicates involvement or participation by Chicago Title in the occurrences that form the basis for Plaintiff's purported claims. As such, there is no factual basis for any valid claim for relief against Chicago Title.

Moreover, the deed of trust attached to the Complaint indicates that Chicago Title's only possible role was that of trustee, assuming that Chicago Title remained as such. As trustee, Chicago Title is immune from liability for the conduct by the lender-beneficiary, which is the crux of Plaintiff's action. Accordingly, this is a case in which the fatal defect cannot be corrected by amendment. As the following discussion establishes, Chicago Title's instant Demurrer should be granted, in its entirety and without leave to amend.

## II.   SUMMARY OF PLAINTIFF'S ALLEGATIONS.

The Complaint attempts to advance five separate claims for relief against Defendants INDYMAC BANK. ("IndyMac"), MORTGAGE ELECTRONIC REGISTRATIONS SYSTEMS, INC. ("MERS"), and Chicago Title. In a prefatory paragraph, Plaintiff characterizes the gravamen of his purported claims for relief: "Plaintiff has been damaged through the demand for payment of

1  excessive mortgage payments . . . ." (Complaint, ¶ 8, 2:20-21.)[1]

2       Plaintiff then sets forth what is denominated as "Summary Description and History of Civil

3  Code Sections 2923.5 and 2923.6." (¶¶ 10-13, 2:26-3:21.) Following that purported characterization

4  of the referenced statutes, Plaintiff enumerates "Plaintiff's Contentions of Wrongful Conduct by

5  Defendants." (¶¶ 18-22, 4:7-5:1.) This latter section contains the only factual allegations to be found

6  in the pleading.

7       Plaintiff alleges that in November of 2007, he obtained a 30-year mortgage from IndyMac, in

8  the sum of $375,000.00; that IndyMac obtained an appraisal and assured both itself and Plaintiff that

9  the value of the property supported the value of the loan;  and that a true copy of "said mortgage" is

10  attached to and incorporated in the Complaint, as Exhibit "1." (¶14, 3:24-28.)  Plaintiff also alleges

11  that in February and March 2009, he began to experience difficulty in paying the IndyMac mortgage,

12  and obtained an appraisal, which valued the secured property at $256,545.00 (¶ 16, 4:4-7); that on

13  April 8, 2009, Plaintiff contacted IndyMac in a written letter sent by Plaintiff's counsel, demanding a

14  loan modification pursuant to *Civil Code*, § 2923.6 (¶ 17, 4:8-12); that a true copy of the April 8, 2009

15  letter to IndyMac is attached to and incorporated in the Complaint as Exhibit "2" (¶ 17, 4:11-12); and

16  that IndyMac failed to comply with *Civil Code*, § 2923.6, and failed to make a good faith effort to

17  avoid foreclosure of the secured property (¶¶ 18, 19, 4:13-28).

18       Based upon the foregoing allegations of IndyMac's purported violations of *Civil Code*,

19  § 2923.6, Plaintiff set forth five purported causes of action supposedly "As Against All Defendants,"

20  as follows:

21      1.    <u>The First Cause of Action</u>, for breach of written contract, alleges that

22            Defendants breached the terms of Exhibit "1" to the Complaint "by refusing to

23            either modify Plaintiff's mortgage or work in good-faith with Plaintiff to

24            modify Plaintiff's mortgage as required by law." (¶ 21, 22, 4:26-5:25.)

25      2.    <u>The Second Cause of Action</u>, for breach of the implied covenant of good faith

26            and fair dealing, alleges that Defendants' "failure to make a good-faith attempt

27

28  [1] All further paragraph, and page and line citations refer to the Complaint.

LUCE, FORWARD, HAMILTON & SCRIPPS LLP

1   to modify Plaintiff's mortgage as required by California law, constituted a

2   breach of this covenant of good faith and fair dealing . . . ." (¶ 26, 5:19-21.)

3   3.   The Third Cause of Action, for violation of *Civil Code*, § 2923.6, alleges that

4   Defendants' failure "to modify Plaintiff's mortgage . . . and/or its failure to

5   make a good-faith attempt as required by California law" violates *Civil Code*,

6   § 2923.6. (¶¶ 28, 29, 5:28-6:4.)

7   4.   The Fourth Cause of Action, for injunctive relief, alleges that Defendants'

8   purportedly wrongful conduct in breaching its written contract with Plaintiff

9   and violating *Civil Code*, § 2923.6 will continue unless and until enjoined by

10   the Court. (¶ 31, 6:10-14.)

11   5.   The Fifth Cause of Action, for declaratory relief, alleges that "[a]n actual

12   controversy exists between Plaintiff and Defendants as to their legal rights and

13   duties . . ." (¶ 34, 6:23-24), as to which Plaintiff seeks a judicial declaration

14   (¶ 36, 6:27-7:1).

15   Plaintiff's two exhibits confirm that a deed of trust was recorded on November 7, 2007 ("the

16   Trust Deed"), as an encumbrance against the real property located at 29239 Meandering Circle,

17   Menifee, Riverside County, California ("the Secured Property"), securing a loan made by IndyMac, in

18   the amount of $375,000.00, and naming Chicago Title as initial trustee (Exhibit "1"); and that on April

19   8, 2009, Plaintiff's counsel wrote to IndyMac, seeking a modification under *Civil Code*, § 2923.6

20   (Exhibit "2").

21   **III.   LEGAL STANDARD GOVERNING DEMURRERS.**

22   Pursuant to California *Code of Civil Procedure*, section 430.10(e), a party may demur to the

23   complaint or any cause of action therein on the grounds that the "pleading does not state facts

24   sufficient to constitute a cause of action" against the demurring party.   For purposes of ruling on a

25   demurrer, the court "assume[s] the truth of all material facts properly pleaded in the compliant unless

26   they are contradicted by facts judicially noticed, but no such credit is given to pleaded contentions or

27   legal conclusions." (*Financial Corp. of America v. Wilburn* (1987) 189 Cal.App.3d 764, 768-69.) As

28   such, "[c]ontentions, deductions or conclusions of fact or law alleged in the complaint are not

LUCE, FORWARD, HAMILTON & SCRIPPS LLP

501012768.1

3

1  considered in judging the sufficiency" against a demurrer and must be disregarded. (*C&H Foods Co.*

2  *v. Hartford Ins. Co.* (1984) 163 Cal.App.3d 1055, 1062.) Moreover, general averments are controlled

3  by specific allegations. (See, *Iverson, Yoakum, Papiano & Hatch v. Berwald* (1999) 76 Cal.App.4th

4  990, 995.)

5       A demurrer should be sustained without leave to amend when there is no reasonable possibility

6  that the defects in the complaint can be cured by amendment, such as where the complainant cannot

7  state a claim under the substantive law. (*Scott v. City of Indian Wells* (1972) 6 Cal.3d 541, 549;

8  *Lawrence v. Bank of America* (1985) 163 Cal.App.3d 431, 436 [leave to amend should be denied

9  where the nature of the claim is clear but no liability exists under substantive law].)

10 **IV.   THERE IS NO STATUTORY DUTY IMPOSED ON CHICAGO TITLE, OR**

11      **ANY DEFENDANT FOR THAT MATTER, REQUIRING THEM TO**

12      **MODIFY PLAINTIFF'S MORTGAGE LOAN**

13      The gravamen of Plaintiff's Complaint is that Defendants, including Chicago Title, breached a

14 statutory duty imposed by *Civil Code*, § 2923.6, when "they" refused to modify Plaintiff's mortgage

15 loan.[2] However, Plaintiff has a fundamental misunderstanding concerning to the statutory duty that

16 § 2923.6 creates, and who is bound by that duty.

17      *Civil Code*, § 2923.6 provides, in pertinent part, "any duty *servicers* may have to maximize net

18 present value under their pooling and servicing agreements is owed to *all parties in a loan pool*, not

19 any particular parties, and that a servicer acts in the best interests of all parties" by modifying a

20 defaulted loan or a loan where default is foreseeable to recover a greater amount than it would through

21 foreclosure. (*Civ. Code*, § 2923.6; emphasis added.)

22      As written, *Civil Code*, § 2923.6 does not impose a duty on a lender, loan servicer or trustee to

23 modify a mortgage loan merely because the borrower or asks. (*Paek v. Plaza Home Mortgage, Inc.*

24 (C.D. Cal. June 15, 2009) 2009 U.S. Dist. LEXIS 54888 at 8, citing *Farner v. Countrywide Home*

25 *Loans* (S.D. Cal. Jan. 26, 2009) 2009 U.S. Dist. LEXIS 5303 at 4-5 ["nothing in Cal. Civ. Code

26

27 [2] The fundamental misunderstanding with which Plaintiff begins is that the trustee under a deed of trust—Chicago Title here—has the power, right or authority to modify the underlying mortgage loan. The trustee

28 has no such power.

LUCE, FORWARD, HAMILTON & SCRIPPS LLP

501012768.1

4

1   § 2923.6 imposes a duty on servicers of loans to modify the terms of loans or creates a private right of

2   action for borrowers."].)[3].

3       On the contrary, *Civil Code* § 2923.6 expressly creates a duty between a loan servicer and a

4   loan pool member. (*Pittman v. Barclays Capital Real Estate, Inc.* (S.D. Cal., Apr. 24, 2009) 2009

5   U.S. Dist. LEXIS 34885 at 9.)  Moreover, and equally important, the "statute in no way confers

6   standing on a *borrower* to contest a breach of that duty." (*Id.*; emphasis in original.)  At bar, Plaintiff

7   has not alleged that he is a member of a loan pool nor a party to a pooling and servicing agreement.

8   Absent factual allegations to that effect, Plaintiff cannot state a claim under *Civil Code*, § 2923.6

9   against Chicago Title or any other Defendant.

10   **V.   PLAINTIFF   FAILS   TO   ALLEGE   ANY   FACT   ESTABLISHING**

11   **INVOLVEMENT, PARTICIPATION OR WRONGDOING BY CHICAGO**

12   **TITLE**

13       There are no charging allegations set forth anywhere in the Complaint against Chicago Title.

14   The only substantive references to Chicago Title contained in the Complaint are: (1) its designation as

15   initial trustee of the Trust Deed, as is recited in Exhibit "1"; and (2) an admission that Chicago Title

16   *was* designated the trustee of the mortgage and line of credit (¶ 21, 4:28-5:1, [emphasis added]).[4]

17   Other than these references, there is nothing else alleged in the Complaint with respect to Chicago

18   Title.  More importantly, there are no facts alleged that indicate any involvement or participation by

19   Chicago Title in the occurrences that form the basis for Plaintiff's purported claims.

20       **A.   Plaintiff Has Not And Cannot State Facts Sufficient To Constitute A**

21           **Cause Of Action for Breach of Contract**

22       In regard to Plaintiff's breach of contract cause of action, Plaintiff fails to plead: (1) the

23   existence of a valid contract between himself and Chicago Title, in which Chicago Title is obligated

24   under the express terms therein, to negotiate, participate in, or agree to modify Plaintiff's mortgage

25   ────────────

26   [3] The federal case law cited is attached to the Notice of Lodgment of Non-California Authorities
filed concurrently herewith, in accordance with *California Rules of Court*, Rule 3.1113, subd. (i)

27   [4] Notably, while Plaintiff pleads that Chicago Title was the initial trustee, he has not plead facts sufficient to
establish that Chicago Title *continues* to serve as trustee under the Trust Deed.

28

501012768.1

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEMURRER

LUCE, FORWARD, HAMILTON & SCRIPPS LLP

1    loan; and (2) conduct on the part of Chicago Title which constitutes a breach of that duty.[5]

2         Instead, Plaintiff claims that the Trust Deed (Ex. "1" to the Complaint) constitutes a valid

3    contract under which Chicago Title has liability.  However, a Trust Deed is not a contract, but is

4    instead a trust instrument that is used to secure payment of a promissory note or other performance.

5    To the extent it could be deemed to be a contract, it would be one solely between Plaintiff, as

6    borrower, and IndyMac, as lender.  Even assuming, for argument sake, that the Trust Deed is a valid

7    contract, Chicago Title's obligations under the instrument (assuming it is still the trustee—a fact that

8    is not plead), are limited to conducting a sale of the property upon the trustor's default or recording a

9    reconveyance upon the trustor's full satisfaction of the debt.  (*Vournas v. Fidelity Nat. Title Ins. Co.*

10   (1999) 73 Cal.App.4th 668, 677; *Civ. Code*, §§ 2941 through 2943.)

11        There are no other duties imposed upon Chicago Title under the Trust Deed, and Plaintiff

12   proffers no facts to suggest otherwise.  Consequently, Chicago Title's demurrer must be sustained

13   against the first cause of action for breach of contract.

14   **B.    Plaintiff Has Not And Cannot State Facts Sufficient To Constitute A**

15   **Cause Of Action for Breach of Implied Covenant of Good Faith And**

16   **Fair Dealing**

17        "Without a contractual relationship, [plaintiff] cannot state a cause of action for breach of the

18   implied covenant."  (*Smith v. City and County of San Francisco* (1990) 225 Cal.App.3d 38, 49.)

19   Moreover, the "implied covenant of good faith and fair dealing is limited to assuring compliance with

20   the express terms of the contract, and cannot be extended to create obligations not contemplated by the

21   contract." (*Pasadena Live, LLC v. City of Pasadena* (2004) 114 Cal.App.4th 1089, 1093-1094.)

22   Because Plaintiff fails to plead facts sufficient to establish (a) the existence of a valid contract that

23   contains an express obligation to modify a mortgage loan and (b) breach of that express term, he

24   cannot sustain a cause of action for breach of the implied covenant of good faith and fair dealing.

25

26   _____

[5] To properly allege a claim for breach of contract, Plaintiff must factually allege: (1) the existence of a valid

27   contract between he and Chicago Title; (2) his performance; (3) Chicago Title's unjustified failure to perform
     (i.e., breach); and (4) the resulting damage.  (See, CACI No. 303; *Careau & Co. v. Security Pacific*

28   *Business, Inc.* (1990) 222 Cal.App.3d 1371, 1388.)

501012768.1                                        6

LUCE, FORWARD, HAMILTON & SCRIPPS LLP

**C.    Plaintiff Has Not And Cannot State Facts Sufficient To Constitute**

**A Cause Of Action for Injunctive Relief or Declaratory Relief**

As discussed in detail above, Plaintiff has no standing to pursue a cause of action under *Civil Code*, § 2923.6, and has not asserted factual allegations sufficient to state a claim for relief sounding in contract. Accordingly, Plaintiff's causes of action for injunctive relief and declaratory relief, which are based upon a non-existent statutory and contractual duty to modify the mortgage loan, fail as a matter of law.

**VI.    THE DEMURRER SHOULD BE SUSTAINED WITHOUT LEAVE TO AMEND**

It is important to emphasize that a demurrer should be sustained without leave to amend where the complaint fails to state facts sufficient to constitute a cause of action under governing law, and there is no reasonable possibility the pleading can be amended to state a valid claim. (*Virginia G. v. ABC Unified School District* (1993) 15 Cal.App.4th 1848.) The burden of proving such a "reasonable possibility" rests with the plaintiff. (*Blank v. Kirwan* (1985) 39 Cal.3d 311, 318 [demurrer admits "all material facts properly pleaded, but not contentions, deductions or conclusions of facts or law"].)

At bar, Plaintiff's judicial admissions, through the allegations of the Complaint, establish that his only assertions of purported wrongdoing relate to conduct that is in the sole province of Plaintiff's mortgage lender, IndyMac, which is the alleged owner of the loan. Even if Plaintiff could ultimately allege that Chicago Title continued as trustee under the Trust Deed and that the Secured Property was foreclosed upon[6], Plaintiff still could not advance a valid claim for relief against Chicago Title. The Trust Deed (Exhibit "1") establishes that Chicago Title's only possible capacity is that of trustee. As such, Chicago Title is immune from liability. (*Civil Code*, § 2924, subd. (b) ["In performing acts required by this article, the trustee shall incur no liability for any good faith error resulting from reliance on information provided in good faith by the beneficiary regarding the nature and the amount of the default under the secured obligation, deed of trust, or mortgage."].)

Consequently, there is no possibility of Plaintiff amending the Complaint to state a valid claim for relief against Chicago Title. The demurrer should, therefore, be sustained without leave to amend.

---

[6] There is no allegation indicating that any foreclosure proceedings are pending with respect to the Secured Property.

501012768.1

7

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEMURRER

LUCE, FORWARD, HAMILTON & SCRIPPS LLP

1  (*Scott v. City of Indian Wells, supra,* 6 Cal.3d 541, 549; *Lawrence v. Bank of America, supra,* 163

2  Cal.App.3d 431, 436.)

3  **VI.   CONCLUSION.**

4       The Complaint is entirely devoid of factual allegation, which would provide any basis for a

5  valid claim for relief against Chicago Title.  Further, the allegations of the Complaint and the Trust

6  Deed incorporated by reference, establish that Chicago Title's only possible capacity is that of

7  trustee—a capacity in which Chicago Title would be immune from liability under *Civil Code,* § 2924,

8  subd. (b).  Therefore, Chicago Title respectfully urges the Court to sustain its demurrer, without leave

9  to amend.

10  Dated: July 22, 2009.   LUCE, FORWARD, HAMILTON & SCRIPPS LLP

11

12      By _____
       George C. Rudolph, Esq.

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

LUCE, FORWARD, HAMILTON & SCRIPPS LLP

501012768.1

8

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEMURRER

8/28
0/10

1  George C. Rudolph, Esq. (State Bar No. 72470)
   Deanna M. Spelber, Esq. (State Bar No. 217361)
2  **LUCE, FORWARD, HAMILTON & SCRIPPS LLP**
   2050 Main Street, Suite 600
3  Irvine, California 92614
   Telephone No.: 949.732.3700
4  Fax No.: 949.732.3739

5  Attorneys for Defendant CHICAGO TITLE
   INSURANCE COMPANY

6

7

8              SUPERIOR COURT OF THE STATE OF CALIFORNIA

9          FOR THE COUNTY OF RIVERSIDE, CENTRAL COURTHOUSE

10

11  EMILIO BAEZ, an individual,            Case No. RIC 528863

12              Plaintiff,                 Hon. Sharon J. Waters
                                           Dept. 10
13  v.
                                           **PROOF OF SERVICE**
14  INDYMAC BANK, a federally chartered
    savings bank, CHICAGO TITLE
15  INSURANCE, CO., an entity whose form in
    unknown, MORTGAGE ELECTRONIC
16  REGISTRATION SYSTEMS, INC., a
    Delaware corporation, and DOES 1 through
17  50, inclusive,

18              Defendants.

19                                         Complaint Filed:   June 15, 2009
                                           Trial Set:         Not Set
20

21

22

23

24

25

26

27

28

501012827.1

FILED
SUPERIOR COURT OF CALIFORNIA
COUNTY OF RIVERSIDE

JUL 22 2009

CJF
JUL 24 2009
R

LUCE, FORWARD, HAMILTON & SCRIPPS LLP

85

*Emilio Baez v. Indymac Bank, et al., Case No. RIC 528863*

Judge: Sharon J. Waters, Dept: 10

At the time of service, I was over 18 years of age and **not a party to this action**. I am employed in the County of Orange, State of California. My business address is 2050 Main Street, Suite 600, Irvine, California 92614.

On July $\underline{21}$, 2009, I served true copies of the following document(s) described as conformed, certified and recorded copy of

**(1) NOTICE OF DEMURRER AND DEMURRER OF DEFENDANT CHICAGO TITLE INSURANCE COMPANY TO COMPLAINT;**

**(2) MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT CHICAGO TITLE INSURANCE COMPANY'S DEMURRER TO COMPLAINT; and**

**(3) NOTICE OF LODGMENT OF NON-CALIFORNIA AUTHORITIES IN SUPPORT OF DEFENDANT CHICAGO TITLE INSURANCE COMPANY'S DEMURRER TO COMPLAINT** on the interested parties in this action as follows:

### SEE ATTACHED SERVICE LIST

**BY MAIL:** I enclosed the document(s) in a sealed envelope or package addressed to the persons at the addresses listed in the Service List and placed the envelope for collection and mailing, following our ordinary business practices. I am readily familiar with Luce, Forward, Hamilton & Scripps LLP's practice for collecting and processing correspondence for mailing. On the same day that the correspondence is placed for collection and mailing, it is deposited in the ordinary course of business with the United States Postal Service, in a sealed envelope with postage fully prepaid.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on July $\underline{21}$, 2009, at Irvine, California.

Jodi Sanchez

LUCE, FORWARD, HAMILTON & SCRIPPS LLP

501012827.1

1

SERVICE LIST

| | |
|---|---|
| Moses S. Hall, Esq.<br>LAW OFFICE OF MOSES S. HALL<br>2651 E. Chapman Avenue, Suite 110<br>Fullerton, California 92831<br><br>(714) 738-4830<br>FAX (714) 992-7916 | Attorney for Emilio Baez |

LUCE, FORWARD, HAMILTON & SCRIPPS LLP

501012827.1

2

POS-010

**ATTORNEY OR PARTY WITHOUT ATTORNEY** *(Name, State Bar number, and address):*
Moses S. Hall, Esquire
Law Offices of Moses S. Hall
2651 East Chapman Avenue, Suite 110
Fullerton, CA 92831

TELEPHONE NO.: 714-738-4830          FAX NO. *(Optional):*

E-MAIL ADDRESS *(Optional):*

ATTORNEY FOR *(Name):* Emilio Baez

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF** Riverside
STREET ADDRESS: 4050 Main St.
MAILING ADDRESS:
CITY AND ZIP CODE: Riverside, CA 92501
BRANCH NAME: Central Courthouse

PLAINTIFF/PETITIONER: Emilio Baez

DEFENDANT/RESPONDENT: Indymac Bank, et al

**PROOF OF SERVICE OF SUMMONS**

FOR COURT USE ONLY

**F I L E D**
SUPERIOR COURT OF CALIFORNIA
COUNTY OF RIVERSIDE

JUL 24 2009

C. Mundo

8/27
0-10

EJF
JUL 2 8 2009

CASE NUMBER: RIC 528863

Ref. No. or File No.:

*(Separate proof of service is required for each party served.)*

1. At the time of service I was at least 18 years of age and not a party to this action.
2. I served copies of:
   a. ☑ summons
   b. ☑ complaint
   c. ☑ Alternative Dispute Resolution (ADR) package
   d. ☑ Civil Case Cover Sheet *(served in complex cases only)*
   e. ☐ cross-complaint
   f. ☐ other *(specify documents):*

3. a. Party served *(specify name of party as shown on documents served):* Mortgage Electronic Registration Systems, Inc.
   - Accepted by Scott LaScala, Managing Agent

   b. ☑ Person (other than the party in item 3a) served on behalf of an entity or as an authorized agent (and not a person under item 5b on whom substituted service was made) *(specify name and relationship to the party named in item 3a):*

4. Address where the party was served: Corporation Trust Company, 1209 Orange St., Wilmington, DE 19801

5. I served the party (check proper box)
   a. ☑ by **personal service**. I personally delivered the documents listed in item 2 to the party or person authorized to receive service of process for the party (1) on *(date):* 6/25/09          (2) at *(time):* 3:10 PM
   b. ☐ by **substituted service**. On *(date):*          at *(time):*          I left the documents listed in item 2 with or in the presence of *(name and title or relationship to person indicated in item 3):*

      (1) ☐ **(business)** a person at least 18 years of age apparently in charge at the office or usual place of business of the person to be served. I informed him or her of the general nature of the papers.

      (2) ☐ **(home)** a competent member of the household (at least 18 years of age) at the dwelling house or usual place of abode of the party. I informed him or her of the general nature of the papers.

      (3) ☐ **(physical address unknown)** a person at least 18 years of age apparently in charge at the usual mailing address of the person to be served, other than a United States Postal Service post office box. I informed him or her of the general nature of the papers.

      (4) ☐ I thereafter mailed (by first-class, postage prepaid) copies of the documents to the person to be served at the place where the copies were left (Code Civ. Proc., § 415.20). I mailed the documents on *(date):*          from *(city):*          or ☐ a declaration of mailing is attached.

      (5) ☐ I attach a **declaration of diligence** stating actions taken first to attempt personal service.

Page 1 of 2

Form Adopted for Mandatory Use
Judicial Council of California
POS-010 [Rev. January 1, 2007]
**PROOF OF SERVICE OF SUMMONS**
American LegalNet, Inc.
www.FormsWorkflow.com
Code of Civil Procedure, § 417.10

88

| PLAINTIFF/PETITIONER: Emilio Baez | CASE NUMBER: RIC 528863 |
|---|---|
| DEFENDANT/RESPONDENT: Indymac Bank, et al | |

5. c. ☐ **by mail and acknowledgment of receipt of service.** I mailed the documents listed in item 2 to the party, to the address shown in item 4, by first-class mail, postage prepaid,

    (1) on *(date):*              (2) from *(city):*

    (3) ☐  with two copies of the *Notice and Acknowledgment of Receipt* and a postage-paid return envelope addressed to me. *(Attach completed* Notice and Acknowledgement of Receipt.*)* (Code Civ. Proc., § 415.30.)

    (4) ☐  to an address outside California with return receipt requested. (Code Civ. Proc., § 415.40.)

  d. ☐ **by other means** *(specify means of service and authorizing code section):*

    ☐  Additional page describing service is attached.

6. The "Notice to the Person Served" (on the summons) was completed as follows:
  a. ☐  as an individual defendant.
  b. ☐  as the person sued under the fictitious name of *(specify):*
  c. ☐  as occupant.
  d. ☑  On behalf of *(specify):* Mortgage Electronic Registration Systems, Inc.
    under the following Code of Civil Procedure section:

| | | |
|---|---|---|
| ☑ 416.10 (corporation) | ☐ 415.95 (business organization, form unknown) | |
| ☐ 416.20 (defunct corporation) | ☐ 416.60 (minor) | |
| ☐ 416.30 (joint stock company/association) | ☐ 416.70 (ward or conservatee) | |
| ☐ 416.40 (association or partnership) | ☐ 416.90 (authorized person) | |
| ☐ 416.50 (public entity) | ☐ 415.46 (occupant) | |
| | ☐ other: | |

7. **Person who served papers**
  a.  Name: Daniel Newcomb
  b.  Address: Delaware Attorney Services - 2000 Pennsylvania Avenue, Suite 207, Wilmington, DE 19806
  c.  Telephone number: 302-429-0657
  d.  **The fee for service was: $**
  e.  I am:
    (1) ☑  not a registered California process server.
    (2) ☐  exempt from registration under Business and Professions Code section 22350(b).
    (3) ☐  a registered California process server:
      (i) ☐ owner ☐ employee ☐ independent contractor.
      (ii) Registration No.:
      (iii) County:

8. ☑  I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

    or

9. ☐  I am a California sheriff or marshal and I certify that the foregoing is true and correct.

Date: July 17, 2009

Daniel Newcomb, Process Server
(NAME OF PERSON WHO SERVED PAPERS/SHERIFF OR MARSHAL)

▶            (SIGNATURE)



1   ALLEN MATKINS LECK GAMBLE
        MALLORY & NATSIS LLP
2   MICHAEL R. FARRELL (BAR NO. 173831)
    NANCY S. FONG (BAR NO. 217552)
3   515 South Figueroa Street, Ninth Floor
    Los Angeles, California 90071-3309
4   Phone: (213) 622-5555
    Fax: (213) 620-8816
5   E-Mail: mfarrell@allenmatkins.com
            nfong@allenmatkins.com
6
    Attorneys for Defendant
7   MORTGAGE ELECTRONIC REGISTRATION
    SYSTEMS, INC.
8

FILED
SUPERIOR COURT OF CALIFORNIA
COUNTY OF RIVERSIDE

JUL 24 2009
C. Mundo

9            SUPERIOR COURT OF THE STATE OF CALIFORNIA

10                    FOR THE COUNTY OF RIVERSIDE

11

12   EMILIO BAEZ, an individual,               Case No. RIC528863

13               Plaintiff,                    [Assigned to Hon. Sharon J. Waters, Department 10]

14        vs.
                                               MORTGAGE ELECTRONIC
15   INDYMAC BANK., a federally chartered      REGISTRATION SYSTEMS, INC.'S
     savings bank; CHICAGO TITLE               NOTICE OF DEMURRER AND
16   INSURANCE CO., an entity whose form is    DEMURRER TO COMPLAINT
     unknown; MORTGAGE ELECTRONIC
17   REGISTRATION SYSTEMS, INC., a             Date: 8.27.09
     Delaware corporation; and DOES 1 through  Time: 8:30
18   50, inclusive,                            Dept: 10

19               Defendants.                   Complaint Filed: June 15, 2009

20

21

22

23

24

25

26

27

28

LAW OFFICES
Allen Matkins Leck Gamble
Mallory & Natsis LLP

833520.01/LA

1
DEMURRER

90

1   TO ALL PARTIES AND THEIR RESPECTIVE ATTORNEYS OF RECORD:

2   PLEASE TAKE NOTICE that on _____, 2009 at ____ a.m., or as soon

3   thereafter as counsel may be heard in Department 10 of the above entitled Court, located at

4   4050 Main Street, Riverside, California 92501, Defendant Mortgage Electronic

5   Registration Systems, Inc. ("MERS"), hereby does demur to the First, Second, Third,

6   Fourth, and Fifth Causes of Action in Plaintiff Emilio Baez' Complaint. This demurrer is

7   based on California Code of Civil Procedure § 430.10, and is made on the grounds that the

8   Complaint fails to state facts sufficient to constitute a cause of action against MERS and is

9   vague, ambiguous and unintelligible.

10       This demurrer is based on the Notice of Demurrer and Demurrer, the attached

11  Memorandum of Points and Authorities, the concurrently filed Appendix of Non-

12  California Authority, and such other evidence and argument as may be presented at the

13  hearing on this matter.

14  Dated: July 23, 2009

       ALLEN MATKINS LECK GAMBLE
15         MALLORY & NATSIS LLP
       MICHAEL R. FARRELL
       NANCY S. FONG
16

17     By: _____

18       NANCY S. FONG
       Attorneys for Defendant
19       MORTGAGE ELECTRONIC
       REGISTRATION SYSTEMS, INC.

20

21

22

23

24

25

26

27

28

## DEMURRERS

Defendant Mortgage Electronic Registration Systems, Inc. ("MERS") hereby demurs to Plaintiff's Complaint on the following grounds:

### DEMURRER TO FIRST CAUSE OF ACTION

1.     The first cause of action fails to state facts sufficient to constitute a cause of action against MERS.  Code of Civil Procedure §§ 430.10(e).

2.     The pleading is uncertain, ambiguous and unintelligible.  Code of Civil Procedure §§ 430.10(f).

### DEMURRER TO SECOND CAUSE OF ACTION

3.     The second cause of action fails to state facts sufficient to constitute a cause of action against MERS.  Code of Civil Procedure §§ 430.10(e).

4.     The pleading is uncertain, ambiguous and unintelligible.  Code of Civil Procedure §§ 430.10(f).

### DEMURRER TO THIRD CAUSE OF ACTION

5.     The third cause of action fails to state facts sufficient to constitute a cause of action against MERS.  Code of Civil Procedure §§ 430.10(e).

6.     The pleading is uncertain, ambiguous and unintelligible.  Code of Civil Procedure §§ 430.10(f).

### DEMURRER TO FOURTH CAUSE OF ACTION

7.     The fourth cause of action fails to state facts sufficient to constitute a cause of action against MERS.  Code of Civil Procedure §§ 430.10(e).

8.     The pleading is uncertain, ambiguous and unintelligible.  Code of Civil Procedure §§ 430.10(f).

LAW OFFICES
Allen Matkins Leck Gamble
Mallory & Natsis LLP

833520.01/LA

3
DEMURRER

## DEMURRER TO FIFTH CAUSE OF ACTION

9.     The fifth cause of action fails to state facts sufficient to constitute a cause of action against MERS.  Code of Civil Procedure §§ 430.10(e).

10.     The pleading is uncertain, ambiguous and unintelligible.  Code of Civil Procedure §§ 430.10(f).

Dated: July 23, 2009

                              ALLEN MATKINS LECK GAMBLE
                              MALLORY & NATSIS LLP
                              MICHAEL R. FARRELL
                              NANCY S. FONG

                              By: _____
                              NANCY S. FONG
                              Attorneys for Defendant
                              MORTGAGE ELECTRONIC
                              REGISTRATION SYSTEMS, INC.

⊂                                    ⊃

1                    <u>**MEMORANDUM OF POINTS AND AUTHORITIES**</u>

2  **I.      INTRODUCTION**

3           Plaintiff Emilio Baez' ("Plaintiff") Complaint (the "Complaint") fails, on its face, to

4  identify any specific facts that would support any cause of action against Mortgage

5  Electronic Registration Systems, Inc. ("MERS") for: (1) Breach of Written Contract; (2)

6  Breach of Covenant of Good and Fair Dealing; (3) Violation of Civil Code § 2923.6; (4)

7  Injunctive Relief; and (5) Declaratory Relief. Each of Plaintiff's claims arise out of a loan

8  transaction with co-defendant IndyMac Bank in November of 2007. Each of Plaintiff's

9  claims are premised on his allegation that IndyMac, and not MERS, wrongfully initiated

10 foreclosure on the subject property without first offering Plaintiff a loan modification or

11 work-out plan. (Complaint, ¶¶ 10-13).[1]

12          Plaintiff's Complaint is premised upon a complete misunderstanding of MERS. As

13 set forth in the Deed of Trust, which is attached to Plaintiff's Complaint as Exhibit "A",

14 MERS *is not a lender.* (Complaint, Ex. A). Plaintiff does not deny this fact. Because

15 MERS is not a lender and is not obligated to modify Plaintiff's loan, Plaintiff has failed to

16 plead any valid cause of action against MERS and the Demurrer should be sustained

17 without leave to amend.

18 **II.      STATEMENT OF FACTS**

19          Plaintiff alleged that he entered into a loan transaction with IndyMac Bank on

20 November 2, 2007 (the "Loan") for the property located at 29239 Meandering Circle,

21 Menifee Area, Ca 92584 (the "Property"). (Complaint, ¶ 14, Ex. A).  Plaintiff alleges that

22 the Loan was for a thirty-year term, for the amount of $375,000. *Id.* Plaintiff alleges that

23 as if November of 2007, IndyMac obtained an appraisal, and advised the Plaintiff that the

24 value of the property at the time of origination supported the value of Plaintiff's loan. *Id.*

25 Plaintiff does not allege that the appraised value of the Property as of November 2007 was,

26

27

28  [1]  MERS does not concede the truth of Plaintiff's allegations, but relies on such
         allegations of the Complaint solely for the purposes of this Demurrer.

LAW OFFICES
Allen Matkins Leck Gamble
Mallory & Natsis LLP

833520.01/LA

1
DEMURRER

94

1 | in any way, false or improper. Plaintiff also alleges that IndyMac was the "servicing

2 | agent" on Plaintiff's mortgage and on a home equity loan. *Id.*

3 | Plaintiff does not deny that he in default on his loan obligations. Plaintiff alleges

4 | that in February and March of 2009, "Plaintiff began to experience difficulty in paying the

5 | previously described mortgage and home equity loan from INDYMAC." (Complaint,

6 | ¶16). Plaintiff alleges that in March or April of 2009, the appraised value of the Property

7 | fell to $256,545.00. *Id.* Plaintiff alleges that he requested a loan modification pursuant to

8 | California Civil Code § 2923.6. (*Id.*, ¶ 17, Ex. 2). Plaintiff does not allege that his request

9 | was ignored and admits that "within the time allotted to respond," IndyMac responded to

10 | Plaintiff's request. (Complaint, ¶ 18). Plaintiff alleges that "the request for a loan

11 | modification was denied and/or had failed to adequately respond to Plaintiff's request to

12 | modify his mortgage, and/or indicated that it intended to commence foreclosure actions

13 | against Plaintiff's residence." (Complaint, ¶ 18). Plaintiff alleges that IndyMac did not

14 | make good-faith attempts to modify the Loan in order to avoid foreclosure. (Complaint,

15 | ¶19).

16 | There are no specific allegations regarding MERS in the Complaint. The sole

17 | allegation as to MERS is that MERS "is a Delaware corporation doing business in

18 | California and which was at all relevant times a beneficiary under the mortgage between

19 | Plaintiff and Defendant INDYMAC." (Complaint, ¶ 4).

20 | **III.   THE COMPLAINT, ON ITS FACE, FAILS TO STATE A CAUSE OF**

21 | **ACTION AGAINST MERS AND THE DEMURRER MUST BE**

22 | **SUSTAINED.**

23 | A demurrer lies where a complaint fails to state facts sufficient to constitute a cause

24 | of action. Code of Civil Procedure § 430.10(e). A demurrer also lies where the pleading is

25 | uncertain, ambiguous or unintelligible. Code of Civil Procedure § 430.10(f)430.10(f). A

26 | demurrer serves to test the sufficiency of a pleading by raising questions of law. *Buford v.*

27 | *State of California* (1980) 104 Cal. App. 3d 811, 818. In ruling on a demurrer, the court is

28 | required to assume the truth of all properly pleaded material allegations of fact. *Lazar v.*

1    *Superior Court* (1996) 12 Cal. 4th 631, 635. While a demurrer admits all material facts

2    that were properly plead, a demurrer does not assume the truth of contentions, deductions,

3    or conclusions of facts or law. *See Leyva v. Nielsen* (2000) 83 Cal. App. 4th 1061, 1063.

4        While ordinarily, on demurrer, the allegations of the complaint must be accepted as

5    true, this general rule does not apply to allegations expressing mere conclusions of law, or

6    allegations contradicted by the exhibits to the complaint or by matters of which judicial

7    notice may be taken. *See Vance v. Villa Park Mobilehome Estates* (1995) 36 Cal. App. 4th

8    698, 709. Allegations of a complaint must be sufficiently clear to apprise the defendant of

9    the issues which he is to meet and defend. *See Butler v. Sequeira* (1950) 100 Cal. App. 2d

10    143.

11        "It is settled law that a pleading must allege facts and not conclusions, and that

12    material facts must be alleged directly and not by way of recital." *Ankeny v. Lockheed-*

13    *Missiles & Space Co* (1979) 88 Cal. App. 3d 531, 537. Further, "in pleading, the essential

14    facts upon which a determination of the controversy depends should be stated with

15    clearness and precision so that nothing is left to surmise." *Id.* "Those recitals, references

16    to, or allegations of material fact which are left to surmise are subject to special demurrer

17    for uncertainty." *Id.*

18    **IV.**    **MERS IS NOT A LENDER.**

19        Each of Plaintiff's claims are premised upon an alleged duty of a lender to modify

20    Plaintiff's loan. Nowhere in the Complaint does Plaintiff allege that MERS is a lender.

21    Indeed, Plaintiff admits that IndyMac originated Plaintiff's Loan. (Complaint, ¶ 21).

22    Plaintiff further admits that MERS "was at all relevant times a beneficiary under the

23    mortgage between Plaintiff and Defendant INDYMAC." (Complaint, ¶ 4). Plaintiff is

24    correct. MERS is not a lender and, as evidenced by the Deed of Trust, MERS is a

25    "separate corporation that is acting solely as a nominee for Lender and Lender's successors

26    and assigns. MERS is the beneficiary under this Security Instrument." (Complaint, Ex.

27    A).

28

1    There are no allegations that MERS committed any breach of any obligations under

2    the Loan contract.  There are no allegations that MERS was involved in the alleged failure

3    to modify Plaintiff's Loan.  **Again, this is because MERS is not a lender.**  Therefore,

4    each of Plaintiff's causes of action – premised on the alleged violations of a lender -- must

5    fail.  *See Vance, supra,* 36 Cal.App.4[th] at 709 (holding that the general rule regarding

6    acceptance of allegations of a complaint as true do not apply with those allegations are

7    contradicted by exhibits to the complaint).

8    V.    <u>THERE IS NO STATUTORY OBLIGATION TO MODIFY PLAINTIFF'S</u>

9          <u>LOAN.</u>

10    Plaintiff's entire Complaint hinges upon his improper interpretation of Civil Code §

11   2923.6.  Plaintiff alleges that there are "record residential foreclosures" in California.

12   (Complaint, ¶ 10).  As a result of this crisis, Plaintiff alleges that the Legislature has

13   enacted Civil Code §§ 2923.5 and 2923.6.  Plaintiff alleges that the law requires lenders or

14   servicers to avoid foreclosure by first engaging in a "mandatory notification, meeting, and

15   consultation process that must be made available to the borrower by the foreclosing lender

16   prior to filing a notice of default."  (Complaint, ¶ 11).  Plaintiff further alleges that Civil

17   Code § 2923.6 requires "loan pools and servicers" to "offer specific forbearances, payment

18   reductions, postponements, interest rate reductions or other work-out terms to the

19   borrowers before initiating foreclosure."  (Complaint, ¶ 12).  Plaintiff alleges the "lender or

20   servicing agent is required to offer such a modification or work-out plan to the borrower if

21   necessary to avoid foreclosure."  (Complaint, ¶ 13).

22    Nowhere does Plaintiff allege that MERS is a lender or servicer of the loan.  Indeed,

23   Plaintiff admits that MERS is the beneficiary named in the Deed of Trust and that

24   IndyMac is the Lender.  (Complaint, Ex. A).  Nowhere does Plaintiff allege that MERS, or

25   the beneficiary, is obligated to offer a loan modification.  For that reason alone, any causes

26   of action against MERS relating to the alleged obligation to modify Plaintiff's loan, must

27   fail.

28

LAW OFFICES
Allen Matkins Leck Gamble
Mallory & Natsis LLP

833520.01/LA

4

DEMURRER

97

1  Furthermore, no such obligation exists under California law.  Section 2923.6 was

2  recently enacted in July of 2008.  The most recent authority regarding this section makes it

3  clear that there is **no obligation to modify Plaintiffs' Loan.**  *See Farner v. Countrywide*

4  *Home Loans*, 2009 WL 189025 (S.D. Cal. Jan. 26, 2009) (holding that "nothing in [Section

5  2923.6], imposes a duty on servicers of loans to modify the terms of loans or creates a

6  private right of action for borrowers.")  *Farner* makes clear that there is no private right of

7  action under Civil Code § 2923.6, nor is there any such obligation to modify Plaintiff's

8  Loan.

9  Because MERS is not alleged to be the lender for this Loan, has no authority to

10  modify Plaintiff's Loan, and because the statute imposes no such mandatory obligation,

11  MERS' Demurrer should be sustained without leave to amend.

12  **VI.    THE DEMURRER MUST BE SUSTAINED AS TO EACH CAUSE OF**

13          **ACTION.**

14      A.    **Plaintiff's First Cause of Action for Breach of Contract And Third**

15            **Cause of Action For Statutory Violations of Civil Code Section 2923.6**

16            **Fail As to MERS.**

17  Plaintiff's first cause of action is for Breach of Contract.  Plaintiff's Third Cause of

18  Action is for Statutory Violations of Civil Code § 2923.6.  Both causes of action fail as to

19  MERS.  Plaintiff alleges that "Plaintiff and Defendant INDYMAC entered into a written

20  mortgage agreement."  (Complaint, ¶ 21).  Plaintiff alleges that MERS is the "beneficiary

21  under this mortgage."  *Id.*  Plaintiff goes on to allege that "Defendants" breached the terms

22  of the contract by "refusing to either modify Plaintiff's mortgage or work in good-faith

23  with Plaintiff to modify Plaintiff's mortgage as required by law."  (Complaint, ¶ 23).

24  First, Plaintiff has failed to plead each necessary element for a Breach of Contract

25  claim: (1) the existence of a contract; (2) performance by the plaintiff or excuse for

26  nonperformance; (3) breach by the defendant; and (4) resulting damages.  *First*

27  *Commercial Mortgage Co. v. Reece* (2001) 89 Cal.App.4th 731, 745; 4 Witkin, California

28  Procedure (4th ed. 1997), Pleading, § 476, p. 570.  "In an action based on written contract,

1  a plaintiff may plead the legal effect of the contract rather than its precise language."

2  *Constr. Protective Servs., Inc. v. TIG Specialty Ins. Co.* (2002) 29 Cal.4th 189, 198-99.

3       Here, there are no allegations regarding any breach of a contract by MERS.

4  Indeed, all allegations state that Plaintiff "contacted INDYMAC" for a loan modification

5  and that "INDYMAC denied the Plaintiff's request." (Complaint, ¶¶ 17-19).  Furthermore,

6  Plaintiff cannot plead that he has performed under the contract, as Plaintiff admits that he

7  is in default and was unable to pay his mortgage obligations.  (Complaint, ¶ 16).  Thus,

8  Plaintiff cannot establish the requisite allegations required to maintain a Breach of

9  Contract cause of action against MERS.

10      Moreover, the alleged breach is the failure to "modify Plaintiff's mortgage or work

11  in good-faith with Plaintiff to modify Plaintiff's mortgage."  As set forth in detail above,

12  there is no such obligation under Civil Code § 2923.6.  *See Farner v. Countrywide Home*

13  *Loans*, 2009 WL 189025 (S.D. Cal. Jan. 26, 2009) (holding that "nothing in [Section

14  2923.6], imposes a duty on servicers of loans to modify the terms of loans or creates a

15  private right of action for borrowers.")

16      Therefore, MERS' Demurrer should be sustained without leave to amend as Plaintiff

17  has failed to and cannot allege the requisite elements for Breach of Contract.  The

18  Demurrer should also be sustained without leave to amend because there is no private right

19  of action under Civil Code § 2923.6, and there is no obligation to modify Plaintiff's Loan.

20  **B.**   **Plaintiff's Second Cause of Action for Breach of the Implied Covenant**

21       **of Good Faith and Fair Dealing Fails As To MERS.**

22      To plead a cause of action for breach of the implied covenant of good faith and fair

23  dealing, a plaintiff must allege that (1) plaintiff and defendant entered into a contract;

24  (2) that plaintiff did all that the contract required her to do, or was excused from

25  performance; (3) that all conditions required for defendant's performance had occurred;

26  (4) that defendant unfairly interfered with plaintiff's right to receive the benefits of the

27  contract; **and** (5) that plaintiff was harmed by defendant's conduct.  *CACI Jury Instruction*

28  No. 325.  The implied covenant "cannot be extended to create obligations not

1   contemplated in the contract." *Racine & Laramie, Ltd. v. Dept. of Parks & Recreation,*11

2   Cal.App.4th 1026, 1032 (1992). "[T]o state a claim for breach of an implied covenant of

3   good faith and fair dealing, the specific contractual obligation from which the implied

4   covenant of good faith and fair dealing arose must be alleged." *Inter-Mark USA, Inc. v.*

5   *Intuit, Inc.,* 2008 WL 552482 at *6 (N.D.Cal. 2008).

6         Plaintiff's Cause of Action for breach of the implied covenant cannot stand because

7   Plaintiff fails to allege multiple essential elements. A demurrer is appropriate where it

8   cannot be ascertained from the pleading whether the contract is written, oral, or implied.

9   CCP § 430.10(g). Plaintiff only alleges that the contract is between Plaintiff and IndyMac.

10  (Complaint, ¶ 21). Plaintiff only alleges that MERS is a beneficiary under the mortgage.

11  *Id.*

12        Furthermore, Plaintiff fails to allege compliance with the Loan contract. This is an

13  incurable defect because Plaintiff does not deny that he is in default, and admits that as of

14  February and March of 2009, Plaintiff could not perform his contractual obligations.

15  (Complaint, ¶ 16). Therefore, the requisite elements for Breach of the Implied Covenant

16  of Good Faith and Fair Dealing cannot be met.

17        Moreover, in addition to the above-described pleading defects, this cause of action

18  is premised upon the alleged failure to modify Plaintiff's Loan. As set forth above, there is

19  no such obligation and Civil Code § 2923.6 does not provide for a private right of action.

20  Thus, MERS' Demurrer should be sustained without leave to amend.

21        C.    **Plaintiff's Fourth Cause of Action for "Injunctive Relief" Fails As To**

22              **MERS.**

23        "Injunctive relief" is a remedy and not an independent cause of action. *Shell Oil*

24  *Co. v. Richter* (1942) 52 Cal.App.2d 164, 168. Furthermore, a cause of action must exist

25  before injunctive relief may be granted. *Id.* Here, all of the claims against MERS relate to

26  the alleged failure to modify Plaintiff's Loan. As set forth above, no such violation exists

27  under California law. Moreover, there are no allegations that MERS has initiated

28  foreclosure. Plaintiff only alleges that "INDYMAC . . . indicated that it intended to

LAW OFFICES
Allen Matkins Leck Gamble
Mallory & Natsis LLP

833520.01/LA                                    7
                                           DEMURRER

100

1  commence foreclosure actions against Plaintiff's residence." (Complaint, ¶ 18).

2  Therefore, title is undisputed and there is no basis to restrain foreclosure. There is no valid

3  cause of action asserted which would afford Plaintiff the remedy of injunctive relief

4  against MERS (or against any other defendant for that matter).

5      Furthermore, Plaintiff's allegations do not satisfy California Code of Civil

6  Procedure § 526. Section 526 authorizes an injunction when there is irreparable harm and

7  where money damages are inadequate. Each of Plaintiff's causes of action relating to the

8  alleged breach of contract are for money damages. (*See,* Plaintiff's Prayer for Relief).

9  Therefore, Plaintiff's conclusory allegations that money damages are inadequate do not

10  suffice and the Demurrer should be sustained.

11      **D.**    **Plaintiff's Fifth Cause of Action for Declaratory Relief Must Fail As To**

12      **MERS.**

13      Plaintiff alleges that a "judicial determination as to the rights and obligations of the

14  parties under the mortgage agreement and the statutory authority cited herein" is necessary.

15  As set forth above, there are no allegations asserted by Plaintiff specifically against MERS.

16  Moreover, there is no authority to support any cause of action premised upon Civil Code §

17  2923.6, as that section does not support a private right of action and does not obligate a

18  lender (which MERS is not) to modify Plaintiff's Loan.

19      For all of the reasons set forth above, which are incorporated herein by this

20  reference, MERS' Demurrer to Plaintiff's Fifth Cause of Action should be sustained.

21

22

23

24

25

26

27

28

LAW OFFICES
Allen Matkins Leck Gamble
Mallory & Natsis LLP

833520.01/LA

8
DEMURRER

101

VII.   **CONCLUSION**.

Clearly, MERS is not a lender and was not involved in any statutory violations in connection with the alleged failure to modify Plaintiff's Loan.  Moreover, no such obligation exists under California law.  Therefore, for all the foregoing reasons, MERS respectfully requests that this Demurrer be sustained without leave to amend.

Dated: July 23 2009

ALLEN MATKINS LECK GAMBLE
MALLORY & NATSIS LLP
MICHAEL R. FARRELL
NANCY S. FONG

By: _____
NANCY S. FONG
Attorneys for Defendant
MORTGAGE ELECTRONIC
REGISTRATION SYSTEMS, INC.

LAW OFFICES
Allen Matkins Leck Gamble
Mallory & Natsis LLP

833520.01/LA

9
DEMURRER

102



PROOF OF SERVICE BY MAIL

STATE OF CALIFORNIA      )
                         )  ss.:
COUNTY OF LOS ANGELES    )

I am employed in the County of Los Angeles, State of California. I am over the age of 18 and not a party to the within action. My business address is 515 South Figueroa Street, Ninth Floor, Los Angeles, California 90071-3309.

On July 24, 2009, I served on interested parties in said action the within:

MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.'S NOTICE OF DEMURRER AND DEMURRER TO COMPLAINT

by placing a true copy thereof in sealed envelope(s) addressed as stated below.

Moses S. Hall, Esq.
Law Offices of Moses S. Hall
2651 East Chapman Avenue, Suite 110
Fullerton, CA 92831

I am readily familiar with this firm's practice of collection and processing correspondence for mailing. Under that practice it would be deposited with the U.S. Postal Service on that same day in the ordinary course of business. I am aware that on motion of party served, service is presumed invalid if postal cancellation date or postage meter date is more than 1 day after date of deposit for mailing in affidavit.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on July 24, 2009, at Los Angeles, California.

Russell P. Ritchie
(Type or print name)                          (Signature)

LAW OFFICES
Allen Matkins Leck Gamble
Mallory & Natsis LLP

833520.01/LA

10
DEMURRER

103



1  ALLEN MATKINS LECK GAMBLE
      MALLORY & NATSIS LLP
2  MICHAEL R. FARRELL (BAR NO. 173831)
   NANCY S. FONG (BAR NO. 217552)
3  515 South Figueroa Street, Ninth Floor
   Los Angeles, California 90071-3309
4  Phone: (213) 622-5555
   Fax: (213) 620-8816
5  E-Mail: mfarrell@allenmatkins.com
           nfong@allenmatkins.com
6
   Attorneys for Defendant
7  MORTGAGE ELECTRONIC REGISTRATION
   SYSTEMS, INC.
8
9        SUPERIOR COURT OF THE STATE OF CALIFORNIA
10              FOR THE COUNTY OF RIVERSIDE
11
12  EMILIO BAEZ, an individual,          Case No. RIC528863
                                         [Assigned to Hon. Sharon J. Waters,
13              Plaintiff,               Department 10]

14        vs.                            [PROPOSED] ORDER ON DEMURRER
                                         OF MORTGAGE ELECTRONIC
15  INDYMAC BANK, a federally chartered  REGISTRATION SYSTEMS, INC.
    savings bank; CHICAGO TITLE
16  INSURANCE CO., an entity whose form is  Date: 8-27-09
    unknown; MORTGAGE ELECTRONIC           Time:
17  REGISTRATION SYSTEMS, INC., a          Dept: 10
    Delaware corporation; and DOES 1 through
18  50, inclusive,                        Complaint Filed:  June 15, 2009

19              Defendants.
20
21
22
23
24
25
26
27
28

1
[PROPOSED] ORDER
833972.01/LA

1    The Demurrer of Defendant Mortgage Electronic Registration Systems, Inc.

2  ("MERS") came on for hearing on ___8|2'|___ , 2009, at _8:30_ (a.m.) in

3  Department 10 of the Riverside County Superior Court, before the Honorable Sharon J.

4  Waters.

5       Having considered the written submissions and oral argument of the parties, and

6  good cause appearing, **IT IS HEREBY ORDERED THAT:**

7       (1)   Defendant MERS' Demurrer to Plaintiff's First, Second, Third, Fourth and

8  Fifth Causes of Action is **SUSTAINED** without leave to amend.

9

10  Dated: _____        _____

11                                        Hon. Sharon J. Waters
                                          Judge of the Superior Court of the State of
12                                        California

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

LAW OFFICES
Allen Matkins Leck Gamble
Mallory & Natsis LLP

833972.01/LA                          1
                              [PROPOSED] ORDER

105



**PROOF OF SERVICE BY MAIL**

1

2

3  STATE OF CALIFORNIA     )
                               )  ss.:

4  COUNTY OF LOS ANGELES   )

5

6       I am employed in the County of Los Angeles, State of California.  I am over the age of 18 and not a party to the within action.  My business address is 515 South Figueroa Street, Ninth Floor, Los Angeles, California 90071-3309.

7

     On July 24, 2009, I served on interested parties in said action the within:

8

[PROPOSED] ORDER ON DEMURRER OF MORTGAGE ELECTRONIC

9  REGISTRATION SYSTEMS, INC.

10  by placing a true copy thereof in sealed envelope(s) addressed as stated below.

11       Moses S. Hall, Esq.
     Law Offices of Moses S. Hall

12       2651 East Chapman Avenue, Suite 110
     Fullerton, CA 92831

13

14

15       I am readily familiar with this firm's practice of collection and processing correspondence for mailing.  Under that practice it would be deposited with the U.S. Postal Service on that same day in the ordinary course of business.  I am aware that on motion of

16  party served, service is presumed invalid if postal cancellation date or postage meter date is more than 1 day after date of deposit for mailing in affidavit.

17

     I declare under penalty of perjury under the laws of the State of California that the

18  foregoing is true and correct.

19       Executed on July 24, 2009, at Los Angeles, California.

20

21       Russell P. Ritchie                         (Signature)
     (Type or print name)

22

23

24

25

26

27

28

LAW OFFICES
Allen Matkins Leck Gamble
Mallory & Natsis LLP

833972.01/LA

2
[PROPOSED] ORDER

106



1 | ALLEN MATKINS LECK GAMBLE
  | MALLORY & NATSIS LLP
2 | MICHAEL R. FARRELL (BAR NO. 173831)
  | NANCY S. FONG (BAR NO. 217552)
3 | 515 South Figueroa Street, Ninth Floor
  | Los Angeles, California 90071-3309
4 | Phone: (213) 622-5555
  | Fax: (213) 620-8816
5 | E-Mail: mfarrell@allenmatkins.com
  |         nfong@allenmatkins.com
6 |
  | Attorneys for Defendant
7 | MORTGAGE ELECTRONIC REGISTRATION
  | SYSTEMS, INC.
8 |

FILED
SUPERIOR COURT OF CALIFORNIA
COUNTY OF RIVERSIDE

JUL 24 2009

C. Mundo

9 |          SUPERIOR COURT OF THE STATE OF CALIFORNIA

10 |               FOR THE COUNTY OF RIVERSIDE

11 |

12 | EMILIO BAEZ, an individual,

13 |          Plaintiff,

14 |      vs.

15 | INDYMAC BANK, a federally chartered
   | savings bank; CHICAGO TITLE
16 | INSURANCE CO., an entity whose form is
   | unknown; MORTGAGE ELECTRONIC
17 | REGISTRATION SYSTEMS, INC., a
   | Delaware corporation; and DOES 1 through
18 | 50, inclusive,

19 |          Defendants.

Case No. RIC528863
[Assigned to Hon. Sharon J. Waters,
Department 10]

APPENDIX OF NON-CALIFORNIA
AUTHORITY IN SUPPORT OF
MORTGAGE ELECTRONIC
REGISTRATION SYSTEMS, INC.'S
DEMURRER TO COMPLAINT

Date: 8·27·09
Time: 8:30 AM
Dept: 10

Complaint Filed:  June 15, 2009

20 |
21 |
22 |
23 |
24 |
25 |
26 |
27 |
28 |

LAW OFFICES
Allen Matkins Leck Gamble
Mallory & Natsis LLP

833973.01/LA

1

APPENDIX OF NON-CALIFORNIA AUTHORITY

107

1   **TO THE COURT, ALL PARTIES AND TO THEIR ATTORNEYS OF**

2   **RECORD:**

3           Pursuant to California Rule of Court 3.1113(i), Defendants Mortgage Electronic

4   Registration Systems, Inc. ("MERS") and OneWest Bank, FSB ("OneWest"), hereby

5   provide copies of the non-California authorities cited in their respective Demurrers to

6   Plaintiff's Complaint.

7           1.    *Farner v. Countrywide Home Loans*, 2009 WL 189025 (S.D. Cal. Jan. 26,

8   2009).

9           2.    *Inter-Mark USA, Inc. v. Intuit, Inc.*, 2008 WL 552482 (N.D. Cal. 2008).

10  Dated: July 23, 2009                         ALLEN MATKINS LECK GAMBLE
                                                 MALLORY & NATSIS LLP
11                                               MICHAEL R. FARRELL
                                                 NANCY S. FONG
12
                                                 By: _____
13                                               NANCY S. FONG
                                                 Attorneys for Defendant
14                                               MORTGAGE ELECTRONIC
                                                 REGISTRATION SYSTEMS, INC.
15

16

17

18

19

20

21

22

23

24

25

26

27

28

LAW OFFICES
Allen Matkins Leck Gamble
Mallory & Natsis LLP

833973.01/LA

1

APPENDIX OF NON-CALIFORNIA AUTHORITY

108



Slip Copy
Slip Copy, 2009 WL 189025 (S.D.Cal.)
(Cite as: 2009 WL 189025 (S.D.Cal.))

Page 1

Only the Westlaw citation is currently available.

United States District Court,
S.D. California.
Thomas FARNER; Shannon Farner, Plaintiffs,
v.
COUNTRYWIDE HOME LOANS; Recontrust
Company, and Does 1 through 10, inclusive,
Defendants.
No. 08cv2193 BTM(AJB).

Jan. 26, 2009.

Matthew Michael McCormick, Doan Law Firm,
Carlsbad, CA, for Plaintiffs.

Brendon K. Barton, Bryan Cave LLP, Irvine, CA,
for Defendants.

## ORDER DENYING MOTION FOR PRELIMINARY INJUNCTION AND VACATING TEMPORARY RESTRAINING ORDER

BARRY TED MOSKOWITZ, District Judge.

### I. *INTRODUCTION*

*1 Prior to the removal of this case, the Superior Court granted Plaintiffs' application for a temporary restraining order and Plaintiffs filed a motion for preliminary injunction. Upon removal, this Court issued a temporary restraining order to maintain the status quo and ordered Defendants to show cause why a preliminary injunction should not issue. Defendants filed a response to the OSC. Plaintiffs have not filed any reply. Upon review of the record, the Court finds that there is no need for an evidentiary hearing or oral argument and decides the motion on the papers.

### II. *DISCUSSION*

A. *Standard*

To prevail on a motion for a preliminary injunction, the moving party must show either "a) a probable

success on the merits combined with the possibility of irreparable injury or b) that [the moving party] has raised serious questions going to the merits, and that the balance of hardships tips sharply in her favor." *Bernhart v. County of Los Angeles,* 339 F.3d 920, 925 (9th Cir.2003). These alternatives are "extremes of a single continuum," thus, "the greater the relative hardship to the moving party, the less probability of success must be shown." *Id.* (citations omitted). Courts will also consider the public interest when evaluating a request for injunctive relief. *Caribbean Marine Servs. Co. v. Baldridge,* 844 F.2d 668, 674 (9th Cir.1988).

B. *Analysis*

Plaintiffs contend that Defendants lack standing to foreclose on the property located at 2246 1/2 Buena Creek Road, Vista, California (the "Property"), and seek to enjoin Defendants from conducting nonjudicial foreclosure proceedings. For the reasons discussed below, the Court denies Plaintiffs' motion for preliminary injunction.

In May 2005, Plaintiffs obtained a $660,100 loan from Nationwide Lending Group. (Ex. A to Razo Decl.) The note was secured by a Deed of Trust, which names Mortgage Electronic Registration Systems, Inc. ("MERS") as the beneficiary. (Ex. B to Razo Decl.)

In October 2005, Countrywide Home Loans, Inc. ("Countrywide") acquired the servicing rights to the loan, including the right to collect payments and enforce the terms of the Note and Deed of Trust. (Razo Decl. ¶ 7.) On May 19, 2008, at Countrywide's direction, ReconTrust Company ("ReconTrust"), acting as an agent for MERS, recorded a Notice of Default and Election to Sell Under Deed of Trust ("Notice of Default") in the San Diego County Recorder's Office. (Ex. E to Razo Decl.) On August 21, 2008, MERS substituted ReconTrust as the trustee under the Deed of Trust. The Deed of Trust was recorded with the San Diego County Recorder's Office. (Ex. F to Razo

© 2009 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy

Page 2

Slip Copy, 2009 WL 189025 (S.D.Cal.)

(Cite as: 2009 WL 189025 (S.D.Cal.))

Decl.) On August 26, 2008, ReconTrust, as trustee under the Deed of trust, recorded a Notice of Trustee's sale with a foreclosure sale date of September 11, 2008. (RJN, Ex. 8.) No foreclosure sale has yet taken place. The amount due to reinstate the loan under the note is $98,409.93. (Razo Decl. ¶ 13.)

*2 Under California law, nonjudicial foreclosure proceedings can be instituted by "the trustee, mortgagee, or beneficiary, or any of their authorized agents" by filing a notice of default with the office of the recorder. Cal. Civ.Code § 2924(a)(1). No less than three months after the filing of the notice of default, a notice of sale may be given by "the mortgagee, trustee, or other person authorized to take the sale." Cal. Civ.Code § 2924(a)(3).

Here, the notice of default was filed by ReconTrust at the direction of Countrywide. Both ReconTrust and Countrywide were acting as agents for MERS, the beneficiary under the deed of trust. Subsequently ReconTrust, as trustee, recorded the Notice of Trustee's sale. ReconTrust and Countrywide had standing to perform the aforementioned actions, and Plaintiffs have failed to produce evidence of any procedural impropriety with respect to the nonjudicial foreclosure proceedings.

Plaintiffs suggest that Defendants must produce the original note in order to conduct nonjudicial foreclosure proceedings. However, there does not appear to be any requirement under California law that the original note be produced in order to render the foreclosure proceedings valid. See Cal. Civ.Code §§ 2924, et seq.

Plaintiffs argue that the foreclosure proceedings would violate Cal. Civ.Code § 2923.6, which, according to Plaintiffs, requires Defendants to modify the terms of the loan. However, nothing in Cal. Civ.Code § 2923.6 imposes a duty on servicers of loans to modify the terms of loans or creates a private right of action for borrowers. [FN1]

> FN1. Cal. Civ.Code § 2923.6 provides:
> (a) The Legislature finds and declares that any duty servicers may have to maximize net present value under their pooling and servicing agreements is owed to all parties in a loan pool, not to any particular parties, and that a servicer acts in the best interests

of all parties if it agrees to or implements a loan modification or workout plan for which both of the following apply:
(1) The loan is in payment default, or payment default is reasonably foreseeable.
(2) Anticipated recovery under the loan modification or workout plan exceeds the anticipated recovery through foreclosure on a net present value basis.
(b) It is the intent of the Legislature that the mortgagee, beneficiary, or authorized agent offer the borrower a loan modification or workout plan if such a modification or plan is consistent with its contractual or other authority.
(c) This section shall remain in effect only until January 1, 2013, and as of that date is repealed, unless a later enacted statute, that is enacted before January 1, 2013, deletes or extends that date.

Plaintiffs' remaining causes of action for fraud and violations of the Rosenthal Fair Debt Collection Practices Act ("RFDCPA") and the Federal Fair Debt Collection Practices Act ("FDCPA") seek damages and do not have any bearing on Plaintiffs' motion for preliminary injunction. At any rate, Plaintiffs have not shown a likelihood of success on these claims. Plaintiffs make general claims that Defendants engaged in conduct "which harassed, oppressed, and abused" them (Decl. of Shannon Farner (RJN Ex. 2), ¶ 3), but do not specify exactly what each Defendant did to violate the RFDCPA and/or FDCPA. As for the fraud claim, it appears that the alleged fraud was committed by the lender. It is unclear under what theory Plaintiffs seek to hold Defendants responsible for the lender's actions.

Although the loss of Plaintiffs' home may constitute an irreparable injury-- see, e.g., Wrobel v. S.L Pope & Assoc., 2007 WL 2345036 (S.D.Cal. June 15, 2007)-- Plaintiffs have failed to show even a modest chance of success on the merits. Therefore, Plaintiffs are not entitled to injunctive relief at this time.

### III. CONCLUSION

For the reasons discussed above, Plaintiffs' motion for a preliminary injunction is **DENIED**, and the temporary restraining order is **VACATED**. The hearing on the Order to Show Cause is **VACATED**.

© 2009 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy
Slip Copy, 2009 WL 189025 (S.D.Cal.)
(Cite as: 2009 WL 189025 (S.D.Cal.))

**IT IS SO ORDERED.**

Slip Copy, 2009 WL 189025 (S.D.Cal.)

END OF DOCUMENT

© 2009 Thomson Reuters. No Claim to Orig. US Gov. Works.

2

Westlaw.

Not Reported in F.Supp.2d

Not Reported in F.Supp.2d, 2008 WL 552482 (N.D.Cal.), 65 UCC Rep.Serv.2d 479

(Cite as: 2008 WL 552482 (N.D.Cal.))

Page 1

c

United States District Court,
N.D. California.
INTER-MARK USA, INC., Plaintiff,
v.
INTUIT, INC., Defendant.
No. C-07-04178 JCS.

Feb. 27, 2008.

Arthur William Lazear, H. Tim Hoffman, Hoffman & Lazear, Oakland, CA, Joseph A. Ruta, Steven Soulios, Ruta Soulios LLP, Margaret McGerity, Max Folkenflikm, Folkenflik & McGerity, New York, NY, for Plaintiff.

Brian Wesley Carver, Rachael Gayza Samberg, Fenwick & West LLP, San Francisco, Ca, Rodger R. Cole, Fenwick & West LLP, Mountain View, CA, for Defendant.

ORDER GRANTING INTUIT INC.'S MOTION TO DISMISS PLAINTIFF'S CLASS ACTION COMPLAINT PURSUANT TO RULE 12(b)(6)
[Docket No. 8]

JOSEPH C. SPERO, United States Magistrate Judge.

I. INTRODUCTION

*1 On August 15, 2007, Plaintiff Inter-Mark USA, Inc. ("Inter-Mark") filed this purported class-action against Defendant Intuit, Inc. ("Intuit") asserting claims for breach of contract, breach of implied warranty of merchantability, violation of California Bus. & Prof.Code Sections 17500 and 17200, and negligence in connection with Inter-Mark's purchase of Intuit's "QuickBooks" software. Intuit brings a Motion to Dismiss Plaintiff's Class Action Complaint Pursuant to Rule 12(b)(6) ("the Motion"), which came on for hearing on Friday, February 8, 2008. The parties have consented to the jurisdiction of a United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). For the reasons stated below, the Motion is GRANTED. Plaintiff's Complaint is dismissed with leave to amend.

II. BACKGROUND

A. The Complaint[FN1]

FN1. For the purposes of this Motion, the Court accepts Plaintiff's allegations of fact as true. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir.1990).

Inter-Mark brings this purported class action against Intuit on behalf of all present and former customers of Intuit who purchased QuickBooks Enterprise Solutions Version 6.0 (the "Software") from 2005 to the present. Complaint ¶ 1.

Defendant Intuit was founded in 1983. Complaint ¶ 10. It develops and sells software to help small businesses and consumers manage their finances, including QuickBooks. Complaint ¶ 10. QuickBooks is designed to make accounting easier for small businesses. Complaint ¶ 15. QuickBooks tracks sales and expenses, organizes finances, creates invoices and reports, monitors business performance, manages customer, vendor and employee data, and performs advanced accounting and inventory functions. Complaint ¶ 15. It is marketed as being easy to install and set up and as being accessible to multiple users within a business. Complaint ¶ 16.

QuickBooks Enterprise Solutions is an advanced version of QuickBooks that is made specifically for small businesses with advanced accounting needs.

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2008 WL 552482 (N.D.Cal.), 65 UCC Rep.Serv.2d 479
(Cite as: 2008 WL 552482 (N.D.Cal.))

Complaint ¶ 17. "Intuit claims that the benefits of Enterprise Solutions include tracking over 100,000 inventory items, customers or vendors, instantly running financial reports, tracking income and expenses, creating financial statements, sending estimates, invoices and sales orders, managing payroll and paying vendors."Complaint ¶ 17. Intuit develops and markets updated versions of Enterprise Solutions each year. Complaint ¶ 19. Enterprise Solutions 6.0 became available to consumers in October 2005. Complaint ¶ 20. The cost of Enterprise Solutions ranges from $3,000 to $6,000, depending on the number of users. Complaint ¶ 21.

In a 2005 press release, Intuit stated, "[t]he new release of Enterprise Solutions [6.0] gives mid-sized companies robust performance and increased functionality, but with the same easy-to-use interface that has made QuickBooks the number one accounting solution in the small business market."Complaint ¶ 23. In another press release, Intuit stated that its "award-winning QuickBooks 2006, the most significant update to the nation's leading small business management software, is now available online and at retail stores nationwide. In addition to new features and an easier to use interface, QuickBooks 2006 includes new services that will help customers get the most out of Quick-Books."Complaint ¶ 24.

*2 According to Inter-Mark, "Intuit also claims the Enterprise Solutions program included the following improvements over previous versions:"

• new enhancements across most QuickBooks editions, including a new SQL database, allow your clients with larger, growing businesses to run their businesses more efficiently and flexibly;

• improved speed and capacity allows growing businesses to scale up to simultaneous users with 200% faster performance;FN2

FN2. This statement is taken verbatim from Plaintiff's Complaint. It appears to be missing a number between the words "to" and "simultaneous."

• improved advanced functionality for clients to manage their growth with over 120 customizable reports and the ability to perform in-depth financial analyses, track and view inventory in greater detail, customize permissions for over 115 activities for greater security and much more; and

• improved flexibility working with other software allows your clients to access their QuickBooks data with ODBC compliant applications such as Crystal Reports, Microsoft Excel and Access.

Complaint ¶ 25.

Inter-Mark purchased Enterprise Solutions Manufacturing & Wholesale Edition 6.0 on November 5, 2005. Complaint ¶ 26. It installed the software on January 1, 2006. Complaint ¶ 26. Inter-Mark was not aware of any problems with the software until it was installed. Complaint ¶ 26. Inter-Mark's network system met the requirements set forth by Intuit for running Enterprise Solutions 6.0. Complaint ¶ 29. Nonetheless, Inter-Mark had "numerous problems using and implementing the Software."Complaint ¶ 30. For example, in April or May of 2006, Inter-Mark became aware that as data was added into the Software, the program could not process that data without "inordinate delays." Complaint ¶ 30. Further, Inter-Mark issues up to 100 invoices a day and relied heavily on the Enterprises Solutions software to generate them, but it took an "unreasonable and inappropriate amount of time" to generate the invoices. Complaint ¶ 31. As a result, it became evident to Inter-Mark that the Software did not function quickly and efficiently, as represented by Intuit. Complaint ¶ 31. According to Inter-Mark, a related problem with the Software, which was concealed by Intuit even though the problem was known to it, was that when the Software was used to generate an invoice, it locked other employees out of the sys-

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2008 WL 552482 (N.D.Cal.), 65 UCC Rep.Serv.2d 479
(Cite as: 2008 WL 552482 (N.D.Cal.))

tem. Complaint ¶ 32.

Although Intuit sent members of its Consultant
Team to Inter-Mark to try to address the problems
Inter-Mark was experiencing, "they were unable to
make the program work satisfactorily and in ac-
cordance with [Intuit's] representations and contrac-
tual obligations."Complaint ¶ 39.

Based on these factual allegations, Plaintiff asserts
the following claims:

*Claim One:* Breach of Contract based on the "the
contract between Plaintiff and the Class and De-
fendant contained in the implied Duty of Good
Faith and Fair Dealing."Complaint ¶ 53.

*Claim Two:* Violation of Implied Warranty of Mer-
chantability, based on California Commercial Code
Section 2314 and the allegations that "the Software
was not merchantable as required by law in that it
would not pass without objection in the trade under
the contract description, was not of fair average
quality, was not fit for the ordinary purpose for
which the Software was used, did not conform with
promises made on the label with respect to the Soft-
ware's performance and the hardware and software
needs of the computer systems to run the Soft-
ware."Complaint ¶ 58. This claim is based on the
further allegation that to the extent Intuit sought to
exclude the implied warranty of merchantability,
the exclusion was "not sufficiently 'conspicuous' as
required by California Commercial Code Section
2316(2)" and the exclusion is unconscionable.
Complaint ¶ 59. In addition, Plaintiff alleges that
the express and limited remedy to customers who
are not 100% satisfied with the QuickBooks Soft-
ware of returning the software for a full refund
within 60 days of purchase fails of its essential pur-
pose because: 1) the 60-day time period is unreas-
onably short; 2) defects in the software are not im-
mediately apparent and only become obvious with
continued use; 3) Intuit's customer service program
"lulls the customer into the expiration of the 60 day

'window;' " and 4) the remedy of a refund is insuf-
ficient given the costs of switching to a new soft-
ware package. Complaint ¶¶ 61-64.

*3 *Claim Three:* Violation of California Business
and Professions Code Section 17500 based on the
allegation that Intuit used false advertising to sell
its QuickBooks Software.

*Claim Four:* Violation of California Business and
Professions Section 17200 based on alleged unfair,
unlawful or fraudulent business practices.

*Claim Five:* Negligence, based on allegation that
Intuit sold Enterprise Solutions "without properly
testing the product before making it available to the
public."

Inter-Mark seeks direct an consequential damages
on all five claims. Complaint at 16. In addition, it
seeks exemplary damages and restitution of "all
amounts lost" on its Sections 17200 and 17500
claims and exemplary damages as to its negligence
claim.

**B. The Motion**

Intuit argues that all of Plaintiff's claims fail as a
matter of law under Rule 12(b)(6) of the Federal
Rules of Civil Procedure and therefore, the Com-
plaint should be dismissed. With respect to Claim
One, for breach of contract, Intuit argues that the
claim fails because Inter-Mark has not identified
any particular contractual provision, or even any
specific contract. To the extent that the claim is
based on the end-user license agreement ("the Soft-
ware License Agreement") that every customer
must accept before installation-of which Intuit re-
quests judicial notice-Plaintiff has not identified the
specific obligation allegedly breached and therefore
it is impossible to know how Intuit is supposed to
have breached any implied covenant of good faith
and fair dealing that may exist.

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2008 WL 552482 (N.D.Cal.), 65 UCC Rep.Serv.2d 479
(Cite as: 2008 WL 552482 (N.D.Cal.))

Page 4

With respect to Claim Two, for breach of the implied warranty of merchantability, Intuit asserts that this claim fails because there is a conspicuous and valid disclaimer in the Software License Agreement that satisfies the requirements of California Commercial Code Section 2316. In particular, the Software License Agreement contains the following disclaimer:

DISCLAIMER OF WARRANTIES: EXCEPT AS PROVIDED ABOVE, THIS SOFTWARE AND ANY RELATED SERVICES OR CONTENT ACCESSIBLE THROUGH THE SOFTWARE ARE PROVIDED "AS-IS," AND TO THE MAXIMUM PERMITTED BY APPLICABLE LAW, INTUIT DISCLAIMS ALL OTHER REPRESENTATIONS AND WARRANTIES, EXPRESS OR IMPLIED, REGARDING THIS SOFTWARE, DISKS, RELATED MATERIALS AND ANY SERVICES OR CONTENT, INCLUDING THEIR FITNESS FOR A PARTICULAR PURPOSE, SECURITY, THEIR MERCHANTABILITY, OR THEIR NONINFRINGEMENT.

INTUIT DOES NOT WARRANT THAT THE SOFTWARE OR ANY RELATED SERVICES OR CONTENT IS FREE FROM BUGS, VIRUSES, ERRORS, OR OTHER PROGRAM LIMITATIONS OR CONTENT OR DATA THROUGH THE SOFTWARE OR CONTINUED ACCESS TO THE TRIAL VERSION OF THE SOFTWARE OR TO THE DATA ENTERED INTO THE TRIAL VERSION OF THE SOFTWARE AFTER THE SPECIFIED PERIOD OF TIME ALLOWED USE. SOME STATE DO NOT ALLOW THE EXCLUSION OF IMPLIED WARRANTIES, SO THE ABOVE EXCLUSIONS MAY NOT APPLY TO YOU. IN THAT EVENT ANY IMPLIED WARRANTIES ARE LIMITED IN DURATION TO SIXTY (60) DAYS FROM THE DATE OF PURCHASE OF THE SOFTWARE....

*4 Declaration of Angus Thomson in Support of Defendant Intuit Inc.'s Motion to Dismiss and Request for Judicial Notice ("Thomson Decl."), Ex. A (Software Licensing Agreement) at 4-5.

Further, to the extent Claim Two is based on the allegation that the full refund remedy fails of its essential purpose, Intuit argues that this claim is deficient because Inter-Mark did not exercise its rights under the warranty provision by requesting a refund and there is no allegation that Intuit would have refused to give one. In addition, Intuit points to a provision in the Software License Agreement that limits its liability where a remedy set forth in that agreement is "found to have failed of its essential purpose." In particular, in a section entitled "LIMITATION OF LIABILITIES AND DAMAGES," it is stated as follows:

THE ENTIRE LIABILITY OF INTUIT AND ITS REPRESENTATIVES (AS DEFINED BELOW) FOR ANY REASON SHALL BE LIMITED TO THE AMOUNT PAID BY THE CUSTOMER FOR THE SOFTWARE AND, IF YOU HAVE A SUBSCRIPTION TO AN INTUIT PAYROLL SERVICE, UP TO THREE (3) MONTHS OF ANY INTUIT PAYROLL SERVICE UNLESS OTHERWISE SEPARATELY AGREED. TO THE MAXIMUM EXTENT PERMITTED BY APPLICABLE LAW, INTUIT ... [IS] NOT LIABLE FOR ANY INDIRECT, SPECIAL, INCIDENTAL, OR CONSEQUENTIAL DAMAGES ..., WHETHER BASED ON BREACH OF CONTRACT, BREACH OF WARRANTY, TORT (INCLUDING NEGLIGENCE0, PRODUCT LIABILITY OR OTHERWISE ... EVEN IF A REMEDY SET FORTH HEREIN IS FOUND TO HAVE FAILED OF ITS ESSENTIAL PURPOSE....

*Id.* at 5.

Intuit argues that both Claims Three and Four, for false advertising and unfair competition, are defi-

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2008 WL 552482 (N.D.Cal.), 65 UCC Rep.Serv.2d 479
(Cite as: 2008 WL 552482 (N.D.Cal.))

cient because Inter-Mark has not alleged sufficient facts to support them. In particular, as to the false advertising claim, Intuit asserts that Inter-Mark has failed to identify any specific untrue or misleading statements. Further, the only statements that are identified in the Complaint, Intuit asserts, are mere "puffing," which is not actionable under Section 17500. Nor does the Complaint include allegations that show Intuit had any knowledge that the identified statements were untrue. Similarly, as to the false advertising claim, Intuit argues, Inter-Mark has not alleged a violation of Section 17200 because it has not identified any business practice that is unfair under *Camacho v. Automobile Club of Southern California,* 142 Cal.App.4th 1394, 1403, 48 Cal.Rptr.3d 770 (2006). Further, Intuit argues, Inter-Mark has not identified any unlawful business practice or any fraudulent, deceptive or misleading business practice. Also, to the extent the Sections 17200 and 17500 claims are based on the claims for breach of contract and breach of implied warranty of merchantability, Defendants argue, these claims fail for the same reason those claims fail.

Finally, Intuit argues that Plaintiff's Third, Fourth, and Fifth Causes of actions fail because all of these tort claims are barred under the economic loss doctrine. Under that doctrine, tort law does not give rise to liability where a product causes only economic loss and does not give rise to any bodily injury or physical damage to other property.

*5 In its Opposition, Inter-Mark makes the following arguments. With respect to Claim One, Inter-Mark argues that the contract-which it agrees is the Software License Agreement provided by Intuit in support of its Motion-is sufficient to support an implied duty of good faith and fair dealing because "[i]f the implied duty of good faith means anything at all, then in this context it clearly means that the Plaintiff and the Class are entitled to get the benefit of their bargain with a product that works as represented and is sold with a 'satisfaction guarantee.' " Opposition at 6. Inter-Mark asserts that the cases

requiring identification of a specific contractual provision in support of a breach of contract claim that Intuit cited, such are *Love v. The Mail on Sunday,* 2006 WL 4046180 (C.D.Cal. August 15, 2006), are not on point because the nature of the alleged breach is obvious here.

Inter-Mark argues as to Claim Two, for violation of the implied warranty of merchantability, that the adequacy of this claim cannot be decided on a motion to dismiss because the enforceability of the disclaimers of warranties in the Software License Agreement turns on questions of fact. In particular, Inter-Mark argues, there are questions of fact as to whether the disclaimers were sufficiently conspicuous because Inter-Mark contends the disclaimers were on a "submerged page" and moreover, it may not have even seen the Software License Agreement. Inter-Mark further asserts that there are factual questions regarding the adequacy of the remedy contained in the contract.

With respect to Claims Three and Four, for violations of Sections 17200 and 17500, Plaintiff asserts that these claims are pled with "reasonable" particularity, as required under Rule 8 of the Federal Rules of Civil Procedure, and therefore, these claims are sufficient. Inter-Mark points to statements alleged in the Complaint regarding system requirements and representations regarding customer service, arguing that these statements were not mere puffery but rather, objective and specific statements.

Finally, Inter-Mark argues that the economic loss doctrine does not apply to its claims under Sections 17200 and 17500 of the California Business and Professions Code. Inter-Mark does not dispute that the doctrine bars its negligence claim (Claim Five).[FN3]

> FN3. Because Inter-Mark does not oppose the Motion as to Claim Five, or offer any theory under which Claim Five might be

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2008 WL 552482 (N.D.Cal.), 65 UCC Rep.Serv.2d 479
(Cite as: 2008 WL 552482 (N.D.Cal.))

viable, the Court dismisses that claim with prejudice.

## III. ANALYSIS

### A. Legal Standard Applicable to Rule 12(b)(6) Motions

A complaint may be dismissed for failure to state a claim for which relief can be granted under Rule 12(b)(6) of the Federal Rules of Civil Procedure. Fed.R.Civ.P. 12(b)(6)."The purpose of a motion to dismiss under Rule 12(b)(6) is to test the legal sufficiency of the complaint."*N. Star Int'l v. Ariz. Corp. Comm'n*, 720 F.2d 578, 581 (9th Cir.1983). Generally, a plaintiff's burden at the pleading stage is relatively light. Rule 8(a) of the Federal Rules of Civil Procedure states that "[a] pleading which sets forth a claim for relief ... shall contain ... a short and plain statement of the claim showing that the pleader is entitled to relief."Fed.R.Civ.P. 8(a).

*6 In ruling on a motion to dismiss under Rule 12, the court analyzes the complaint and takes "all allegations of material fact as true and construe(s) them in the lights most favorable to the non-moving party." *Parks Sch. of Bus. v. Symington*, 51 F.3d 1480, 1484 (9th Cir.1995). Dismissal may be based on a lack of a cognizable legal theory or on the absence of facts that would support a valid theory. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir.1990). A complaint must "contain either direct or inferential allegations respecting all the material elements necessary to sustain recovery under some viable legal theory." *Bell Atl. Corp. v. Twombley*, --- U.S. ----, ----, 127 S.Ct. 1955, 1969, 167 L.Ed.2d 929 (2007) (citing *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1106 (7th Cir.1984)). The factual allegations must be definite enough to "raise a right to relief above the speculative level." *Id.* at 1965.However, a complaint does not need detailed factual allegations to survive dismissal. *Id.* at 1964.Rather, a complaint need only

include enough facts to state a claim that is "plausible on its face." *Id.* at 1974.That is, the pleadings must contain factual allegations "plausibly suggesting (not merely consistent with)" a right to relief. *Id.* at 1965 (noting that this requirement is consistent with Fed.R.Civ.P. 8(a)(2), which requires that the pleadings demonstrate that "the pleader is entitled to relief").

The Court "may consider material which is properly submitted as part of the complaint on a motion to dismiss without converting the motion to dismiss into a motion for summary judgment." *Gordon v. Impulse Mktg. Group, Inc.*, 375 F.Supp.2d 1040, 1044 (E.D.Wash.2005) (citing *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir.2001)). If the documents are not physically attached to the complaint, they may be considered if the documents' authenticity is not contested and the plaintiff's complaint necessarily relies on them. *Id.* at 1044.The Court may also consider documents of which it has taken judicial notice pursuant to Rule 201 of the Federal Rules of Evidence. *Mir v. Little Co. of Mary Hosp.*, 844 F.2d 646, 649 (9th Cir.1988). Inter-Mark has not objected to Intuit's request for judicial notice of the Software License Agreement. Therefore, the Court grants Intuit's request and finds that it may consider the Software License Agreement on this Rule 12(b)(6) motion even though it was neither cited in nor attached to the Complaint.

### B. Claim One (Breach of Contract)

Intuit asserts that Plaintiff's breach of contract fails because Inter-Mark has not identified the specific contractual provision from which the duty of good faith and fair dealing that was allegedly breached arose. The Court agrees.

To state a claim for breach of contract, a plaintiff must allege the existence of a valid contract, performance of that contract by the plaintiff, defend-

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2008 WL 552482 (N.D.Cal.), 65 UCC Rep.Serv.2d 479
(Cite as: 2008 WL 552482 (N.D.Cal.))

ant's breach and damages. *In re Leisure Corp.*, 2007 WL 607696 (N.D.Cal. Feb.23, 2007) (citing *First Commercial Mortgage Co. v. Reece*, 89 Cal.App.4th 731, 745, 108 Cal.Rptr.2d 23 (2001)). In order to state a claim for breach of an implied covenant of good faith and fair dealing, the specific contractual obligation from which the implied covenant of good faith and fair dealing arose must be alleged. *Love v. The Mail on Sunday*, 2006 WL 4046180 *7 (C.D.Cal. Aug.2006) (dismissing breach of contract claim on motion to dismiss where complaint did not identify any specific contractual provision from which the implied covenant of good faith and fair dealing arose). As the court explained in *Love*,

*7 "The obligations imposed by the covenant of good faith and fair dealing are not those set out in the term of the contract itself, but rather are obligations imposed by law governing the manner in which the contractual obligations must be discharged-fairly and in good faith." *Koehrer v. Sup.Ct.*, 181 Cal.App.3d 1155, 1169, 226 Cal.Rptr. 820 (4th Dist., 1986)."However, what that duty embraces is dependent upon the nature of the bargain struck between the [parties] and the legitimate expectations of the parties which arise from the contract." *Commercial Union Assurance Cos. v. Safeway Stores, Inc.*, 26 Cal.3d 912, 918, 164 Cal.Rptr. 709, 610 P.2d 1038 (1980). Further, "[i]t is universally recognized [that] the scope of conduct prohibited by the covenant of good faith is circumscribed by the purposes and express terms of the contract." *Carma Developers, Inc. v. Marathon Development California, Inc.*, 2 Cal.4th 342, 373, 6 Cal.Rptr.2d 467, 826 P.2d 710 (1992).

2006 WL 4046180 *7 (C.D.Cal. Aug.2006).

Here, Inter-Mark has not identified any specific contractual provision in support of its breach of contract claim. As a result, its allegation that Intuit breached an implied covenant of good faith and fair dealing is nothing more than a bare legal assertion, supported by no factual allegations. This is insufficient to meet even the liberal pleading requirements of Rule 8 of the Federal Rules of Civil Procedure. Accordingly, the Court concludes that Inter-Mark has failed to state a claim for breach of contract in its Complaint.

Further, the Court is not persuaded by Inter-Mark's conclusory assertion that *Love* is not on point. Inter-Mark suggest that in this case, in contrast to *Love*, it is somehow obvious that the Software License Agreement gives rise to an implied covenant of good faith and fair dealing whereby Inter-Mark is entitled to the benefit of its bargain with Intuit. As the California Supreme Court explained in *Carma Developers (California), Inc. v. Marathon Dev. California, Inc.*,"the scope of conduct prohibited by the covenant of good faith is circumscribed by the purposes and express terms of the contract." 2 Cal.4th 342, 373, 6 Cal.Rptr.2d 467, 826 P.2d 710 (1992) (citations omitted). The implied covenant of good faith and fair dealing is intended to "protect the express covenants or promises of the contract, not to protect some general public policy interest not directly tied to the contract's purpose."*Id.* (quoting *Foley v. Interactive Data Corp.*, 47 Cal.3d 654, 690, 254 Cal.Rptr. 211, 765 P.2d 373 (1988). Inter-Mark has failed to include any allegations in its Complaint that show that its breach of contract claim is based on anything more than a general public policy interest. As such, the claim fails as a matter of law. Inter-Mark shall be given leave to amend Claim One.

## C. Claim Two (Breach of Implied Warranty of Merchantability)

### 1. Disclaimer of Implied Warranty of Merchantability

Defendants assert that to the extent Claim Two is based on an alleged breach of an implied warranty

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2008 WL 552482 (N.D.Cal.), 65 UCC Rep.Serv.2d 479
(Cite as: 2008 WL 552482 (N.D.Cal.))

of merchantability, the claim fails because the Software License Agreement contains a valid disclaimer of any implied warranties. The Court agrees.

*8 Under California Commercial Code Section 2316(2), an implied warranty of merchantability may be excluded in a written document in which the disclaimer is conspicuous and mentions merchantability. Further, California Commercial Code Section 2316(3)(a) provides that "all implied warranties are excluded by expressions like 'as is,' ... or other language which in common understanding calls the buyer's attention to the exclusion of warranties and makes plain that there is no implied warranty."Whether a provision is conspicuous is a question for the court. Cal. Commercial Code Section 1201(1). The California Commercial Code provides the following definition of "conspicuous":

(10) "Conspicuous," with reference to a term, means so written, displayed, or presented that a reasonable person against whom it is to operate ought to have noticed it. Whether a term is "conspicuous" or not is a decision for the court. Conspicuous terms include the following:

(A) a heading in capitals equal to or greater in size than the surrounding text, or in contrasting type, font, or color to the surrounding text of the same or lesser size; and

(B) language in the body of a record or display in larger type than the surrounding text, or in contrasting type, font, or color to the surrounding text of the same size, or set off from surrounding text of the same size by symbols or other marks that call attention to the language.

Cal. Comm.Code Section 1201(10). In making the determination as to whether a provision is conspicuous, the court must "review the conspicuousness of the disclaimer in the context of the entire contract, and in light of the sophistication of the parties." *Medimatch, Inc. v. Lucent Techs., Inc.,*

120 F.Supp.2d 842, 860 (N.D.Cal.2000) (citing *Sierra Diesel Injection Serv., Inc. v. Burroughs Corp., Inc.,* 890 F.2d 108, 114 (9th Cir.1989).

Here, the disclaimer in the Software License Agreement is printed in all capital letters, with the title "DISCLAIM OF WARRANTIES" in bold-face type. It is found on the fourth and fifth pages of a ten-page contract. Only two other provisions in the contract are in all capital letters and therefore, the disclaimer stands out visually. In addition, nothing in the allegations of the Complaint suggests that Inter-Mark-a business customer rather than an individual purchaser-is so unsophisticated that it would not have noticed this disclaimer or appreciated its significance. Therefore, the Court concludes, as a matter of law, that the disclaimer meets the requirement that it must be conspicuous. Further, the disclaimer uses the "as is" language that the California legislature has indicated disclaims implied warranties. Thus, assuming the contract as a whole is enforceable, the Court concludes that the disclaimer bars Inter-Mark's claim for breach of implied warranty of merchantability.

A separate question, however, is whether Inter-Mark is bound by the Software License Agreement in the first instance. Inter-Mark argues that this a factual question that cannot be resolved on summary judgment, citing *Specht v. Netscape Communications Corp.,* 306 F.3d 17 (2d Cir.2002). In *Specht,* the Court held that an arbitration clause in an on-line license agreement was unenforceable because the license agreement was located on the defendant's web-page below the button provided for users to down-load software and would have required users to scroll down the page to find the license agreement. *Id.* at 20.As a result, the court concluded, a reasonably prudent Internet user would not have seen the license agreement before downloading the defendant's software. *Id.* Therefore, the plaintiff did not, by downloading the defendant's software, manifest assent to the terms of the license agreement in that case and was not con-

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2008 WL 552482 (N.D.Cal.), 65 UCC Rep.Serv.2d 479
(Cite as: 2008 WL 552482 (N.D.Cal.))

tractually bound to arbitrate its dispute with the defendant. *Id.; see also Feldman v. Google, Inc.,* 513 F.Supp.2d 229, 236 (E.D.Pa.) (holding on summary judgment that "clickwrap" agreement was enforceable and noting that in addressing this question courts apply "traditional principles of contract law and focus on whether the plaintiff had reasonable notice of an manifested assent to the clickwrap agreement").

*9 The Court is not persuaded by Inter-Mark's position because the complaint contains no allegations-either factual or legal-suggesting that the Software License Agreement is unenforceable. Instead, Inter-Mark has conceded that the Software License Agreement is valid and has not objected to the Court taking judicial notice of the copy of the agreement that is attached to Plaintiff's request for judicial notice. Plaintiff also conceded at oral argument that it has no evidence that the disclaimer that Inter-Mark saw on-line was any different from the one that has been provided to the Court. In the face of an enforceable contract that contains a valid and conspicuous disclaimer of all implied warranties of merchantability, dismissal of the this claim is appropriate. *See Dart Enery Corp., Inc. v. Vogel,* 1999 WL 11010342 (W.D.Mich. July 18, 1991) (dismissing claim for breach of implied warranty of merchantability despite plaintiff's assertion that the underlying contract was fraudulently induced and therefore unenforceable on grounds that plaintiffs had not alleged a claim for negligent or fraudulent misrepresentation). Further, Inter-Mark has offered no evidence or argument that persuades the Court the claim can be saved by amendment. Accordingly, this claim is dismissed with prejudice.[FN4]

> FN4. Because the Court finds that Inter-Mark's claim fails on the basis of the disclaimer, it need not reach the question of whether the 90-day return provision fails of its essential purpose.

**D. Claim Three (Violation of Cal. Bus. & Prof.Code § 17500)**

Intuit argues that Defendant's false advertising claim fails because no specific statements are identified in the claim and the marketing statements quoted in the factual allegations of the Complaint are non-actionable puffery. The Court agrees.

Section 17500 of California's Business and Professions Code makes it unlawful for a business to disseminate any statement "which is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading ...."Cal. Bus. & Prof.Code Section 17500. This provision has been "interpreted broadly to embrace not only advertising which is false, but also advertising which although true, is either actually misleading or which has a capacity, likelihood or tendency to deceive or confuse the public." *Leoni v. State Bar,* 39 Cal.3d 609, 626, 217 Cal.Rptr. 423, 704 P.2d 183 (1985). Whether the public actually has been or will be misled for purposes of a claim under the false advertising law is, in general, a factual question that cannot be resolved on a motion to dismiss. *Cairns v. Franklin Mint Co.,* 24 F.Supp.2d 1013, 1037 (C.D.Cal.1998). However, "[g]eneralized, vague, and unspecified assertions 'mere puffery' upon which a reasonable consumer could not rely, and hence are not actionable." *Anunziato v. eMachines Inc.,* 402 F.Supp.2d 1133, 1139 (C.D.Cal.2005) (citing *Glen Holly Entm't, Inc. v. Tektronix Inc.,* 343 F.3d 1000, 1005 (9th Cir.2003)).

The degree of particularity required in pleading a Section 17500 claim depends on the nature of the allegations in the claim. In particular, although fraud is not an essential element of a Section 17500 claim, where a plaintiff alleges fraud as the basis for a violation of that provision, the particularity requirement of Rule 9(b) of the Federal Rules of Civil Procedure applies to the fraud allegations. *Vess v. Ciba-Geigy Corp.,* 317 F.3d 1097, 1105 (9th

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2008 WL 552482 (N.D.Cal.), 65 UCC Rep.Serv.2d 479
(Cite as: 2008 WL 552482 (N.D.Cal.))

Cir.2003). If that requirement is not met, the court must disregard the fraud allegations to determine whether a claim has been stated under the notice pleading standards of Rule 8(a). Under that standard, a Section 17500 claim need be alleged only with "reasonable particularity." *See Khoury v. Maly's of California, Inc.,* 14 Cal.App.4th 612, 619, 17 Cal.Rptr.2d 708 (1993).

*10 Defendant argues that Plaintiff's Section 17500 claim is based on alleged fraud, pointing to the allegation of a "scheme" in paragraph 68 of the Complaint and the allegation that Defendant acted "knowingly, willfully, and maliciously" in paragraph 72 of the Complaint. On this basis, Defendant asserts that the heightened pleading standard of Rule 9(b) should be applied to this claim. While the Court is doubtful that these allegations amount to fraud allegations, it need not resolve the question of whether a heightened standard applies because Plaintiff has not met the more liberal requirements of Rule 8. In the claim, Plaintiff refers only to unspecified "commercial advertisements" and "a variety of promotional materials." Because Plaintiff does not identify any specific statements, this claim does not provide adequate notice to Defendant of the alleged wrongful conduct.

To the extent that Plaintiff seeks to rely on the statements contained in its press releases quoted in paragraphs 23-25 of the Complaint (see above), these statements are mere puffery, touting the "improvements" and "enhancements" in Intuit's Software without making any verifiable factual representations. It is possible that Plaintiff will be able to state a Section 17500 claim based on statements regarding system requirements for running the Software or Intuit's customer service. As currently pled, however, these representation are not alleged to be false or misleading. The Court dismisses this claim with leave to amend to clearly identify the specific statements on which the claim is based, consistent with the discussion above.

## E. Claim Four (Violation of Cal. Bus. & Prof.Code Sections 17200 et seq.)

Defendants argue that Plaintiff's Section 17200 claim also fails as a matter of law because Inter-Mark has not adequately alleged any "unfair," "unlawful" or "fraudulent" business practice. The Court agrees.

California Business & Professions Code Sections 17200 *et seq.* prohibits "unfair competition," which is defined as any "unlawful, unfair or fraudulent business act or practice."To establish a violation of Section 17200, a plaintiff may establish a violation under any one of these prongs. An unlawful business practice is one that is "prohibited by law, where possible sources of law are defined broadly." *Multimedia Patent Trust v. Microsoft Corp.,* 2007 WL 2696675 (S.D.Cal. September 10, 2007) (citation omitted). A business practice is unfair, where the plaintiff is a consumer rather than a competitor, where the injury caused by the allegedly unfair business practice: a) is substantial; b) is not outweighed by any countervailing benefits to consumers or to competitors; and c) could not reasonably have been avoided. *Camacho v. Auto. Club of S. Cal.,* 142 Cal.App.4th 1394, 1403, 48 Cal.Rptr.3d 770 (2006). Finally, "a 'fraudulent' practice is defined more broadly than common law fraud and only requires a showing that "members of the public are likely to be deceived." *Multimedia Patent Trust v. Microsoft Corp.,* 2007 WL 2696675 at *11 (citations omitted).

*11 Here, Inter-Mark does not dispute that its allegations do not satisfy the requirements for establishing an unfair or unlawful practice. Rather, it asserts that it satisfies the "fraudulent" prong of Section 17200, essentially duplicating the Section 17500 claim. For the reasons that the Section 17500 claim fails, so does the Section 17200 claim. Plaintiff shall be granted leave to amend as to this claim.

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d

Not Reported in F.Supp.2d, 2008 WL 552482 (N.D.Cal.), 65 UCC Rep.Serv.2d 479

**(Cite as: 2008 WL 552482 (N.D.Cal.))**

Page 11

**F. Economic Loss Rule**

Finally, Defendant argues that Plaintiff's Sections 17200 and 17500 claims fail for the additional reason that these are essentially tort claims and under the economic loss doctrine, such claims may not be asserted on the basis of pure economic loss without physical injury or property damage. *See Sacramento Reg'l Transit Dist. v. Grumman Flxible,* 158 Cal.App.3d 289, 294, 204 Cal.Rptr. 736 (1984) (holding that strict liability in tort did not apply where claim alleged only economic loss because claim was governed by Uniform Commercial Code). Intuit does not cite to any California decision in which a court has held as much but rather, to a decision in which the court held that an Arizona unfair competition claim was barred because, under Arizona law, the unfair competition claim sounded in tort. *See QC Constr. Prods., LLC v. Cohill's Bldg. Specialities, Inc.,* 423 F.Supp.2d 1008, 1015-16 (D.Ariz.2006); *see also AOL v. St. Paul Mercury Ins. Co.,* 207 F.Supp.2d 459 (E.D.Va.2002) (dismissing tort claims as well as claims that defendants violated "various State Consumer Protection Acts" under Virginia law based on economic loss rule without discussing reasons for extending rule to consumer protection laws).

The Court does not find any case law that suggests that the California Supreme Court would extend the economic loss rule to Sections 17200 or 17500 claims. To the contrary, as Inter-Mark has noted, the California Supreme Court has distinguished such claims from tort claims, characterizing them as "an equitable action by means of which a plaintiff may recover money or property obtained from the plaintiff ... through unfair or unlawful business practices [and which] is not an all-purpose substitute for a tort or contract action." *Cortez v. Purolator Air Filtration Prods. Co.,* 23 Cal.4th 163, 173, 96 Cal.Rptr.2d 518, 999 P.2d 706 (2000).

Inter-Mark has conceded, however, that its remedy under these sections is limited to restitution of money lost-in this case, the money that was spent on the Intuit Software. Thus, to the extent the Complaint seeks damages, such remedies are not available to Inter-Mark on these claims.

**IV. CONCLUSION**

For the reasons stated above, the Motion is GRANTED and the Complaint is DISMISSED with leave to amend. Plaintiff shall be permitted to amend all of its claims except Claim Two, which is dismissed with prejudice. Plaintiff's amended Complaint shall be filed by February 29, 2008.

IT IS SO ORDERED.

N.D.Cal.,2008.

Inter-Mark USA, Inc. v. Intuit, Inc.

Not Reported in F.Supp.2d, 2008 WL 552482 (N.D.Cal.), 65 UCC Rep.Serv.2d 479

END OF DOCUMENT

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

PROOF OF SERVICE BY MAIL

STATE OF CALIFORNIA    )
                       )  ss.:
COUNTY OF LOS ANGELES  )

    I am employed in the County of Los Angeles, State of California.  I am over the age of 18 and not a party to the within action.  My business address is 515 South Figueroa Street, Ninth Floor, Los Angeles, California 90071-3309.

    On July 24, 2009, I served on interested parties in said action the within:

APPENDIX OF NON-CALIFORNIA AUTHORITY IN SUPPORT OF MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.'S DEMURRER TO COMPLAINT

by placing a true copy thereof in sealed envelope(s) addressed as stated below.

    Moses S. Hall, Esq.
    Law Offices of Moses S. Hall
    2651 East Chapman Avenue, Suite 110
    Fullerton, CA 92831

    I am readily familiar with this firm's practice of collection and processing correspondence for mailing.  Under that practice it would be deposited with the U.S. Postal Service on that same day in the ordinary course of business.  I am aware that on motion of party served, service is presumed invalid if postal cancellation date or postage meter date is more than 1 day after date of deposit for mailing in affidavit.

    I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

    Executed on July 24, 2009, at Los Angeles, California.

Russell P. Ritchie
(Type or print name)                         (Signature)

LAW OFFICES
Allen Matkins Leck Gamble
Mallory & Natsis LLP

833973.01/LA

2

APPENDIX OF NON-CALIFORNIA AUTHORITY

125

8/27/09  10

**CIV-110**

| | |
|---|---|
| **ATTORNEY OR PARTY WITHOUT ATTORNEY** *(Name, State Bar number, and address):*<br>Moses S. Hall (SBN 153759)<br>LAW OFFICES OF MOSES S. HALL<br>2651 East Chapman Ave., Suite 110<br>Fullerton, CA 92831<br>TELEPHONE NO.: (714) 738-4830   FAX NO. *(Optional):* (714) 992-7916<br>E-MAIL ADDRESS *(Optional):* hralaw@yahoo.com<br>ATTORNEY FOR *(Name):* Plaintiff Emilio Baez | **FOR COURT USE ONLY**<br><br>**FILED**<br>SUPERIOR COURT OF CALIFORNIA<br>COUNTY OF RIVERSIDE<br><br>AUG 17 2009<br><br>C. Mundo |

SUPERIOR COURT OF CALIFORNIA, COUNTY OF RIVERSIDE
STREET ADDRESS: 4050 Main Street
MAILING ADDRESS: SAME
CITY AND ZIP CODE: Riverside  92501
BRANCH NAME: Central Courthouse

PLAINTIFF/PETITIONER: Emilio Baez

DEFENDANT/RESPONDENT: Indymac Bank, et. al.

| **REQUEST FOR DISMISSAL** | CASE NUMBER: |
|---|---|
| ☐ Personal Injury, Property Damage, or Wrongful Death<br>  ☐ Motor Vehicle   ☐ Other<br>☐ Family Law   ☐ Eminent Domain<br>☑ Other *(specify)*: Breach of Contract | RIC 528863 |

– A conformed copy will not be returned by the clerk unless a method of return is provided with the document. –

1. **TO THE CLERK: Please dismiss this action as follows:**
   a. (1) ☐ With prejudice   (2) ☑ Without prejudice
   b. (1) ☑ Complaint   (2) ☐ Petition
      (3) ☐ Cross-complaint filed by *(name):*                            on *(date):*
      (4) ☐ Cross-complaint filed by *(name):*                            on *(date):*
      (5) ☐ Entire action of all parties and all causes of action
      (6) ☑ Other *(specify):* Defendant Mortgage Electronic Registration System ONLY

2. *(Complete in all cases except family law cases.)*
   ☐ Court fees and costs were waived for a party in this case. *(This information may be obtained from the clerk. If this box is checked, the declaration on the back of this form must be completed).*

Date: July 28, 2009

Moses S. Hall                                                           ▶ Moses S. Hall *(signature)*
(TYPE OR PRINT NAME OF ☑ ATTORNEY ☐ PARTY WITHOUT ATTORNEY)                            (SIGNATURE)
*If dismissal requested is of specified parties only of specified causes of action only, or of specified cross-complaints only, so state and identify the parties, causes of action, or cross-complaints to be dismissed.*

Attorney or party without attorney for:
☑ Plaintiff/Petitioner   ☐ Defendant/Respondent
☐ Cross-Complainant

3. **TO THE CLERK: Consent to the above dismissal is hereby given.**
   Date: July 28, 2009

Moses S. Hall                                                           ▶
(TYPE OR PRINT NAME OF ☑ ATTORNEY ☐ PARTY WITHOUT ATTORNEY)                            (SIGNATURE)
** If a cross-complaint – or Response (Family Law) seeking affirmative relief – is on file, the attorney for cross-complainant (respondent) must sign this consent if required by Code of Civil Procedure section 581 (i) or (j).

Attorney or party without attorney for:
☑ Plaintiff/Petitioner   ☐ Defendant/Respondent
☐ Cross-Complainant

*(To be completed by clerk.)*
4. ☑ Dismissal entered as requested on *(date):* AUG 17 2009
5. ☐ Dismissal entered on *(date):*                as to only *(name):*
6. ☐ Dismissal not entered as requested for the following reasons *(specify):*

7. a. ☐ Attorney or party without attorney notified on *(date):*
   b. ☐ Attorney or party without attorney not notified. Filing party failed to provide
      ☐ a copy to be conformed   ☐ means to return conformed copy

Date: AUG 17 2009                Clerk, by _____, Deputy

Page 1 of 2

Form Adopted for Mandatory Use
Judicial Council of California
CIV-110 [Rev. July 1, 2009]
**REQUEST FOR DISMISSAL**
Code of Civil Procedure, § 581 et seq.;
Gov. Code, § 68637(c); Cal. Rules of Court, rule 3.1390
www.courtinfo.ca.gov
American LegalNet, Inc.
www.FormsWorkflow.com

126

**PROOF OF SERVICE**
1013 a (3) CCP

1

2    STATE OF CALIFORNIA      )
                              )        ss
3    COUNTY OF ORANGE         )

4
           I am employed in the County of Orange, State of California.  I am over the age of 18 and not a
5    party to the within action; my business address is 2651 EAST CHAPMAN AVE., SUITE 110,
     FULLERTON, CA 92831.
6
           On August 14, 2009, I served the foregoing documents described as **Request for Dismissal** by
7    placing a true and correct copy thereof, enclosed in a sealed envelope with postage thereon fully prepaid,
     addressed as follows:
8

9    PLEASE SEE ATTACHED SERVICE LIST

10

11   // BY FACSIMILE:  I sent a copy via facsimile transmission to the telefax number(s) indicated
     below.  The facsimile machine I used complied with California Rules of the Court, Rule 2003
12   and no error was reported by machine.  Pursuant to California Rules of Court, Rule 2006(d), I
13   caused the machine to print a transmission record of the transmission and it recorded as
     completed.
14

15   /x/ BY MAIL:

16   /x/ I deposited such envelope in the mail at FULLERTON, California.  The envelope was mailed with
     postage thereon fully prepaid.

             /x/ I am readily familiar with the firm's practice of collection and processing correspondence for
     mailing.  Under that practice it would be deposited with U.S. Postal Service on that same day with
     postage thereon fully prepaid at Fullerton, California, in the ordinary course of business.  I am aware that
     n motion of the party served, service is presumed invalid if postage cancellation date or postage meter
     e is more than one day after date of deposit for mailing affidavit.

         ˙ PERSONAL SERVICE

         d this 14th day of August, 2009 at Fullerton, California

         e) I declare under penalty of perjury under the laws of the State of California that the above is
          correct.

          l) I declare that I am an employee of a member of the bar of this court at whose direction the
          s made.

                                                                     Matthew Nietschke Declarant


                                   **PROOF OF SERVICE**


127

1

SERVICE LIST

2

Michael R. Farrell
3   Allen, Matkins, Leck, Gamble, Mallory & Natsis
515 South Figueroa Street, Ninth Floor
4   Los Angeles, California 90071-3309

5

George C. Rudolph
6   Luce, Forward, Hamilton & Scripps
2050 Main Street, Suite 600
7   Irvine, California 92614

8

Indymac Bancorp., Inc.
9   888 East Walnut Street
Pasadena, California 91101

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PROOF OF SERVICE

POS-040

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address)*: | FOR COURT USE ONLY |
|---|---|

Moses S. Hall, Esq.
Law Office of Moses S. Hall
2651 East Chapman Avenue, Suite 110
Fullerton, California 92831
TELEPHONE NO.: (714) 738-4830   FAX NO. *(Optional)*:
E-MAIL ADDRESS *(Optional)*: hralaw@yahoo.com
ATTORNEY FOR *(Name)*: EMILIO BAEZ

**FILED**
SUPERIOR COURT OF CALIFORNIA
COUNTY OF RIVERSIDE
AUG 17 2009
C. Mundo

SUPERIOR COURT OF CALIFORNIA, COUNTY OF Riverside
STREET ADDRESS: 4050 Main Street
MAILING ADDRESS: Same
CITY AND ZIP CODE: Riverside, California 92501
BRANCH NAME: Central Courthouse

PLAINTIFF/PETITIONER: EMILIO BAEZ

DEFENDANT/RESPONDENT: INDYMAC BANK, et. al.

**PROOF OF SERVICE—CIVIL**
Check method of service *(only one)*:
[✓] By Personal Service  [ ] By Mail  [ ] By Overnight Delivery
[ ] By Messenger Service  [ ] By Fax  [ ] By Electronic Service

CASE NUMBER:
RIC 528863

JUDGE:
DEPT.:

*(Do not use this proof of service to show service of a Summons and complaint.)*

1. At the time of service I was over 18 years of age and **not a party to this action.**

2. My residence or business address is:
   2651 East Chapman Avenue, Suite 110, Fullerton, California 92831

3. [ ] The fax number or electronic notification address from which I served the documents is *(complete if service was by fax or electronic service)*:

4. On *(date)*: 8/14/09   I served the following **documents** *(specify)*:
   Request for Dismissal (Defendant: Mortgage Electronic Registration Systems, Inc.)

   [ ] The documents are listed in the *Attachment to Proof of Service–Civil (Documents Served)* (form POS-040(D)).

5. I served the documents on the **person or persons** below, as follows:
   a. Name of person served: Julie Karapetyan
   b. [✓] *(Complete if service was by personal service, mail, overnight delivery, or messenger service.)*
      Business or residential address where person was served:
      OneWest Bank. 888 East Walnut Street, Pasadena, California 91101

   c. [ ] *(Complete if service was by fax or electronic service.)*
      (1) Fax number or electronic notification address where person was served:

      (2) Time of service:
   [ ] The names, addresses, and other applicable information about persons served is on the *Attachment to Proof of Service—Civil (Persons Served)* (form POS-040(P)).

6. The documents were served by the following means *(specify)*:
   a. [✓] **By personal service.** I personally delivered the documents to the persons at the addresses listed in item 5. (1) For a party represented by an attorney, delivery was made to the attorney or at the attorney's office by leaving the documents, in an envelope or package clearly labeled to identify the attorney being served, with a receptionist or an individual in charge of the office, between the hours of nine in the morning and five in the evening. (2) For a party, delivery was made to the party or by leaving the documents at the party's residence with some person not younger than 18 years of age between the hours of eight in the morning and six in the evening.

*(Continued on back)*

| Form Approved for Optional Use Judicial Council of California POS-040 [Rev. January 1, 2008] | **PROOF OF SERVICE—CIVIL** **(Proof of Service)** | Code of Civil Procedure, §§ 1010.6, 1011, 1013, 1013a, 2015.5; Cal. Rules of Court, rules 2.260, 2.306 www.courtinfo.ca.gov |

American LegalNet, Inc.
www.FormsWorkflow.com

129

POS-040

| CASE NAME | CASE NUMBER: |
|---|---|
| Baez v. Indymac Bank, et. al. | RIC 528863 |

6, b. ☐ **By United States mail.** I enclosed the documents in a sealed envelope or package addressed to the persons at the addresses in item 5 and *(specify one):*

    (1) ☐   deposited the sealed envelope with the United States Postal Service, with the postage fully prepaid.

    (2) ☐   placed the envelope for collection and mailing, following our ordinary business practices. I am readily familiar with this business's practice for collecting and processing correspondence for mailing. On the same day that correspondence is placed for collection and mailing, it is deposited in the ordinary course of business with the United States Postal Service, in a sealed envelope with postage fully prepaid.

    I am a resident or employed in the county where the mailing occurred. The envelope or package was placed in the mail at *(city and state):*

c. ☐ **By overnight delivery.** I enclosed the documents in an envelope or package provided by an overnight delivery carrier and addressed to the persons at the addresses in item 5. I placed the envelope or package for collection and overnight delivery at an office or a regularly utilized drop box of the overnight delivery carrier.

d. ☐ **By messenger service.** I served the documents by placing them in an envelope or package addressed to the persons at the addresses listed in item 5 and providing them to a professional messenger service for service. *(A declaration by the messenger must accompany this Proof of Service or be contained in the Declaration of Messenger below.)*

e. ☐ **By fax transmission.** Based on an agreement of the parties to accept service by fax transmission, I faxed the documents to the persons at the fax numbers listed in item 5. No error was reported by the fax machine that I used. A copy of the record of the fax transmission, which I printed out, is attached.

f. ☐ **By electronic service.** Based on a court order or an agreement of the parties to accept service by electronic transmission, I caused the documents to be sent to the persons at the electronic notification addresses listed in item 5. I did not receive, within a reasonable time after the transmission, any electronic message or other indication that the transmission was unsuccessful.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Date: 8/14/09

Mike Distefano
_____
(TYPE OR PRINT NAME OF DECLARANT)

_____
(SIGNATURE OF DECLARANT)

*(If item 6d above is checked, the declaration below must be completed or a separate declaration from a messenger must be attached.)*

## DECLARATION OF MESSENGER

☐ **By personal service.** I personally delivered the envelope or package received from the declarant above to the persons at the addresses listed in item 5. (1) For a party represented by an attorney, delivery was made to the attorney or at the attorney's office by leaving the documents in an envelope or package, which was clearly labeled to identify the attorney being served, with a receptionist or an individual in charge of the office, between the hours of nine in the morning and five in the evening. (2) For a party, delivery was made to the party or by leaving the documents at the party's residence with some person not younger than 18 years of age between the hours of eight in the morning and six in the evening.

At the time of service, I was over 18 years of age. I am not a party to the above-referenced legal proceeding.

I served the envelope or package, as stated above, on *(date):*

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Date:

_____
(NAME OF DECLARANT)

▶ _____
(SIGNATURE OF DECLARANT)

POS-040 [Rev. January 1, 2009]

**PROOF OF SERVICE—CIVIL**
**(Proof of Service)**

130

 

POS-040

## INFORMATION SHEET FOR PROOF OF SERVICE—CIVIL

*(This information sheet is not part of the official proof of service form and does not need to be copied, served, or filed.)*

**USE OF THIS FORM**

Note: This proof of service form should **not** be used to show proof of service of a summons and complaint. For that purpose, use *Proof of Service of Summons* (form POS-010).

This form is designed to be used to show proof of service of documents by (1) personal service, (2) mail, (3) overnight delivery, (4) messenger service, (5) fax, or (6) electronic transmission.

Certain documents must be personally served. For example, an order to show cause and temporary restraining order generally must be served by personal delivery. You must determine whether a document must be personally delivered or can be served by mail or another method.

**GENERAL INSTRUCTIONS**

A person must be over 18 years of age to serve the documents. The person who served the documents must complete the Proof of Service. **A party to the action cannot serve the documents.**

The Proof of Service should be typed or printed. If you have Internet access, a fillable version of this proof of service form is available at *www.courtinfo.ca.gov/forms.*

*Complete the top section of the proof of service form as follows:*

First box, left side: In this box print the name, address, and telephone number of the person *for* whom you served the documents.

Second box, left side: Print the name of the county in which the legal action is filed and the court's address in this box. The address for the court should be the same as the address on the documents that you served.

Third box, left side: Print the names of the plaintiff/petitioner and defendant/respondent in this box. Use the same names as are on the documents that you served.

Fourth box, left side: Check the method of service that was used. You should check only one method of service and should show proof of only one method on the form. If you served a party by several methods, use a separate form to show each method of service.

First box, top of form, right side: Leave this box blank for the court's use.

Second box, right side: Print the case number in this box. The case number should be the same as the case number on the documents that you served.

Third box, right side: State the judge and department assigned to the case, if known.

*Complete items 1–6:*

1. You are stating that you are over the age of 18 and that you are not a party to this action.

2. Print your home or business address.

3. If service was by fax service or electronic service, print the fax number or electronic notification address from which service was made.

4. List each document that you served. If you need more space, check the box in item 4, complete the *Attachment to Proof of Service—Civil (Documents Served)* (form POS-040(D)), and attach it to form POS-040.

5. Provide the names, addresses, and other applicable information about the persons served. If more than one person was served, check the box on item 5, complete the *Attachment to Proof of Service—Civil (Persons Served)* (form POS-040(P)), and attach it to form POS-040.

6. Check the box before the method of service that was used, and provide any additional information that is required. The law may require that documents be served in a particular manner (such as by personal delivery) for certain purposes. Service by fax or electronic transmission generally requires the prior agreement of the parties.

**You must sign and date the proof of service form. By signing, you are stating under penalty of perjury that the information that you have provided on form POS-040 is true and correct.**

131

1  George C. Rudolph, Esq. (State Bar No. 72470)
   Deanna M. Spelber, Esq. (State Bar No. 217361)
2  **LUCE, FORWARD, HAMILTON & SCRIPPS LLP**
   2050 Main Street, Suite 600
3  Irvine, California 92614
   Telephone No.: 949.732.3700
4  Fax No.: 949.732.3739
   E-Mail:   grudolph@luce.com
5            dspelber@luce.com

6  Attorneys for Defendant CHICAGO TITLE
   INSURANCE COMPANY

7

8

9            SUPERIOR COURT OF THE STATE OF CALIFORNIA

10         FOR THE COUNTY OF RIVERSIDE, CENTRAL COURTHOUSE

11

12  EMILIO BAEZ, an individual,                Case No. RIC 528863

13          Plaintiff,                         Hon. Sharon J. Waters
                                               Dept. 10
14  v.
                                               **NOTICE OF NON-OPPOSITION TO**
15  INDYMAC BANK, a federally chartered        **DEMURRER TO COMPLAINT**
    savings bank, CHICAGO TITLE
16  INSURANCE, CO., an entity whose form in     Date: August 28, 2009
    unknown, MORTGAGE ELECTRONIC              Time: 8:30 a.m.
17  REGISTRATION SYSTEMS, INC., a             Dept. 10
    Delaware corporation, and DOES 1 through
18  50, inclusive,                             Complaint Filed:   June 15, 2009
                                               Trial Set:         Not Set
19          Defendants.

20

21  **TO:  THIS HONORABLE COURT; and**

22  **TO:  ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

23          PLEASE TAKE NOTICE that, as of today's date, August 19, 2009, Defendant CHICAGO

24  TITLE INSURANCE COMPANY ("Chicago Title") has received no opposition to their Demurrer to

25  the Complaint filed by Plaintiff EMILIO BAEZ ("Plaintiff"). Pursuant to Section 1005(b) of the *Code*

26  *of Civil Procedure*, Plaintiff's opposition to Chicago Title's demurrer was to be filed and served no

27  later than Monday, August 17, 2009.

28

501013601.1                                1
NOTICE OF NON-OPPOSITION TO DEMURRER TO COMPLAINT

FILED
SUPERIOR COURT OF CALIFORNIA
COUNTY OF RIVERSIDE

AUG 19 2009

R. Mc Elyea

1    Based on the foregoing, Chicago Title respectfully request that the Court: (1) refuse to

2  consider any untimely papers that Plaintiff might attempt to file and serve prior to the August 28, 2009

3  hearing of the Demurrer; (2) deem Plaintiff's non-opposition as his consent to sustaining the Demurrer

4  without leave to amend; and (3) sustain the Demurrer without leave to amend.

5  Dated: August 19, 2009.                    LUCE, FORWARD, HAMILTON & SCRIPPS LLP

6

7                                          By_____

8                                              Deanna M. Spelber, Esq.

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

501013601.1

2

NOTICE OF NON-OPPOSITION TO DEMURRER TO COMPLAINT

133

**PROOF OF SERVICE**

1

2 *Emilio Baez v. Indymac Bank, et al., Case No. RIC 528863*

3 Judge: Sharon J. Waters, Dept. 10

4      At the time of service, I was over 18 years of age and **not a party to this action**. I am employed in the County of Orange, State of California. My business address is 2050 Main Street, Suite 600, Irvine, California 92614.

5

6      On August 19 2009, I served true copies of the following document(s) described as **NOTICE OF NON-OPPOSITION TO DEMURRER TO COMPLAINT** on the interested parties in this action as follows:

7

8 **SEE ATTACHED SERVICE LIST**

9 **BY MAIL:** I enclosed the document(s) in a sealed envelope or package addressed to the persons at the addresses listed in the Service List and placed the envelope for collection and mailing, following our ordinary business practices. I am readily familiar with Luce, Forward, Hamilton & Scripps LLP's practice for collecting and processing correspondence for mailing. On the same day that the correspondence is placed for collection and mailing, it is deposited in the ordinary course of business with the United States Postal Service, in a sealed envelope with postage fully prepaid.

10

11

12

13      I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

14      Executed on August 19 2009, at Irvine, California.

15

16

17 Jodi Sanchez

18

19

20

21

22

23

24

25

26

27

28

501013601.1

1

PROOF OF SERVICE



## SERVICE LIST

Moses S. Hall, Esq.                                   Attorney for Emilio Baez
LAW OFFICE OF MOSES S. HALL
2651 E. Chapman Avenue, Suite 110
Fullerton, California 92831

(714) 738-4830
FAX (714) 992-7916

501013601.1                                   2
                              PROOF OF SERVICE

135

1   George C. Rudolph, Esq. (State Bar No. 72470)
    Deanna M. Spelber, Esq. (State Bar No. 217361)
2   **LUCE, FORWARD, HAMILTON & SCRIPPS LLP**
    2050 Main Street, Suite 600
3   Irvine, California 92614
    Telephone No.: 949.732.3700
4   Fax No.: 949.732.3739
    E-Mail:   grudolph@luce.com
5              dspelber@luce.com

```
         F I L E D
   SUPERIOR COURT OF CALIFORNIA
        COUNTY OF RIVERSIDE

        SEP 02 2009

        R. Mc Elyea
```

6   Attorneys for Defendant CHICAGO TITLE
    INSURANCE COMPANY

7

8

9           SUPERIOR COURT OF THE STATE OF CALIFORNIA

10       FOR THE COUNTY OF RIVERSIDE, CENTRAL COURTHOUSE

11

| | |
|---|---|
| 12   EMILIO BAEZ, an individual, | Case No. RIC 528863 |
| 13           Plaintiff, | Hon. Sharon J. Waters<br>Dept. 10 |
| 14   v. | **NOTICE OF RULING ON DEMURRER** |
| 15   INDYMAC BANK, a federally chartered<br>savings bank, CHICAGO TITLE | **TO COMPLAINT** |
| 16   INSURANCE, CO., an entity whose form in<br>unknown, MORTGAGE ELECTRONIC | Date: August 28, 2009<br>Time: 8:30 a.m. |
| 17   REGISTRATION SYSTEMS, INC., a<br>Delaware corporation, and DOES 1 through | Dept. 10 |
| 18   50, inclusive, | Complaint Filed:  June 15, 2009<br>Trial Set:        Not Set |
| 19           Defendants. | |

20

21   **TO: ALL PARTIES AND TO THEIR RESPECTIVE ATTORNEYS OF RECORD:**

22         **PLEASE TAKE NOTICE** that on August 28, 2009, the Demurrer of Defendant CHICAGO

23   TITLE INSURANCE COMPANY ("Chicago Title") to the Complaint filed herein by Plaintiff

24   EMILIO BAEZ ("Plaintiff") came on regularly for hearing in Department 10 of the above-entitled

25   Court, before Hon. Sharon J. Waters, Judge presiding. Chicago Title appeared by Deanna M. Spelber,

26   Esq. of Luce, Forward, Hamilton & Scripps LLP, their counsel. There were no other appearances.

27

28

501013882.1                           1
                NOTICE OF RULING ON DEMURRER TO COMPLAINT

1

2      Based upon the Demurrer and the supporting Memorandum of Points and Authorities, and the

3  absence of any opposition or appearance by Plaintiff, the Court sustained the Demurrer in its entirety,

4  and Plaintiff shall have 20 days' leave to amend.

5  Dated:  August 28, 2009.          LUCE, FORWARD, HAMILTON & SCRIPPS LLP

6

7                              By

8                                  Deanna M. Spelber, Esq.

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

501013882.1

2

NOTICE OF RULING ON DEMURRER TO COMPLAINT

<div align="center">**PROOF OF SERVICE**</div>

1

2   *Emilio Baez v. Indymac Bank, et al., Case No. RIC 528863*

3   Judge: Sharon J. Waters, Dept. 10

4        At the time of service, I was over 18 years of age and **not a party to this action**. I am employed in the County of Orange, State of California. My business address is 2050 Main Street,

5   Suite 600, Irvine, California 92614.

6        On August 28, 2009, I served true copies of the following document(s) described as **NOTICE OF NON-OPPOSITION TO DEMURRER TO COMPLAINT** on the interested parties

7   in this action as follows:

8   Moses S. Hall, Esq.                  Attorney for Emilio Baez
  LAW OFFICE OF MOSES S. HALL

9   2651 E. Chapman Avenue, Suite 110
  Fullerton, California 92831

10

  (714) 738-4830

11   FAX (714) 992-7916

12

13   **BY MAIL:** I enclosed the document(s) in a sealed envelope or package addressed to the persons at the addresses listed in the Service List and placed the envelope for collection and mailing, following

14   our ordinary business practices. I am readily familiar with Luce, Forward, Hamilton & Scripps LLP's practice for collecting and processing correspondence for mailing. On the same day that the

15   correspondence is placed for collection and mailing, it is deposited in the ordinary course of business with the United States Postal Service, in a sealed envelope with postage fully prepaid.

16

       I declare under penalty of perjury under the laws of the State of California that the foregoing is

17   true and correct.

18        Executed on August 28, 2009, at Irvine, California.

19

20                                      _____

21                            Jodi Sánchez

22

23

24

25

26

27

28

501013882.1                      1
<div align="center">PROOF OF SERVICE</div>

09/18/2009  15:12 FAX · · · · ⌧004/032

**FILED**

09/18/2009

**N. TAVAGLIONE**

Superior Court of California
County of Riverside

1   Moses S. Hall, Esq., (SBN 153759)
    LAW OFFICE OF MOSES S. HALL
2   2651 E. Chapman Avenue, Suite 110
    Fullerton, California 92831
3   Telephone: (714) 738-4830
    Fax: (714) 992-7916

4   Attorney for Plaintiff,
    EMILIO BAEZ

5

6             SUPERIOR COURT OF THE STATE OF CALIFORNIA

7                 FOR THE COUNTY OF RIVERSIDE

8                     CENTRAL COURTHOUSE

9   EMILIO BAEZ, an individual,          )   Case No.  RIC 528863
                                         )
10  Plaintiff,                           )   UNLIMITED CIVIL CASE
                                         )
11                                       )
    vs.                                  )   FIRST AMENDED COMPLAINT FOR:
12                                       )
13  INDYMAC BANK, a federally chartered  )   1. BREACH OF WRITTEN CONTRACT;
    savings bank;  CHICAGO TITLE         )   2. BREACH OF COVENANT OF GOOD
14  INSURANCE CO., an entity whose form is )     AND FAIR DEALING;
    unknown; AZTEC FORECLOSURE           )   3. STATUTORY VIOLATION OF CIVIL CODE
15  CORPORATION, an entity whose form is )      SECTION 2923.5
16  unknown,; MORTGAGE ELECTRONIC        )   4. STATUTORY VIOLATION OF CIVIL CODE
    REGISTRATION SYSTEMS, INC., a        )      SECTION 2923.52
17  Delaware Corporation, and DOES 1 through )  5. STATUTORY VIOLATION OF BUSINESS
18  50, inclusive,                       )      AND PROFESSIONS CODE SECTION 17200
                                         )   6. DECLARATORY RELIEF
19  Defendants.                          )
                                         )
20                                       )
                                         )
21                                       )
                                         )
22  ─────────────────────────────────── )

23      Plaintiff EMILIO BAEZ (hereinafter, "Plaintiff") complains of Defendants, and each of

24  them, as follows:

25

26                        **COMMON ALLEGATIONS**

27                         Identity of the Parties

28      1.   At all relevant times herein, Plaintiff was an individual residing in the County of

                       FIRST AMENDED COMPLAINT                          1

139

☑ 005/032

1   Riverside, State of California.

2        2.   Defendant INDYMAC BANK (hereinafter "INDYMAC") is a federally chartered

3   savings bank existing and operating pursuant to federal and California law, and at all relevant

4   times doing business as a real estate financial lender.

5        3.   Defendant AZTEC FORECLOSURE CORPORATION (hereinafter, "AZTEC") is

6   an entity whose form is unknown to Plaintiff, but which at all times relevant has agreed to be, the

7   substituted or assigned trustee of the mortgage and home equity loan agreement between

8   Plaintiff and Defendant INDYMAC.

9        4.   Within this judicial district, the written contract, upon which this action is based, was

10  formed and performance was thereon due within this judicial district.

11        5.   The true names or capacities, whether individual, corporate, associate or otherwise

12  of Defendants named herein as DOES 1 through 50, inclusive, are unknown to Plaintiff who

13  therefore sue said Defendants by such fictitious names, and Plaintiff will amend this complaint to

14  show their true names and capacities when the same have been ascertained.

15        6.   At all times relevant herein, each of the Doe Defendants was the agent, servant,

16  representative and/or employee of each of the remaining Defendants and was at all times acting

17  within the course and scope of such agency and/or employment, or was in some way the cause of

18  Plaintiff's damage.

19        7.   As a direct and proximate result of the conduct of Defendants, and each of them, as

20  alleged herein, Plaintiff has been denied due process pursuant to California Civil Code sections

21  2923.5, 2923.6, and 2923.52. Plaintiff has also been damaged through the demand for payment

22  of excessive mortgage payments, in an amount substantially in excess of minimum requirements

23  for Superior Court jurisdiction.

24        8.   The complained of actions occurred during 2009, well within all applicable statutes

25  of limitation.

26        **Summary Description and History of Civil Code Section 2923.5**

27        9.   On July 8, 2008, Governor Schwarzenegger signed into law Senate Bill 1137. This

28  Act, also known as the Perata Mortgage Relief Bill, was subsequently codified as Civil Code

FIRST AMENDED COMPLAINT                                2

1 || sections 2923.5 and 2923.6.   It governs any residential mortgage executed between January 1,
2 || 2003 and December 31, 2007.

3 ||      10.  Among the protections which the statute contains for borrowers in foreclosure is a
4 || mandatory notification, meeting, and consultation process that must be made available to the
5 || borrower by the foreclosing lender, mortgagee, trustee, beneficiary, or authorized agent, prior to
6 || filing a notice of default under Civil Code section 2924.  The statute states that it is "modifying
7 || the foreclosure process to require mortgagees, beneficiaries, or authorized agents to contact
8 || borrowers and explore options that could *avoid* foreclosure."

9 ||      11.  Civil Code section 2923.5 also contains additional requirements Lenders,
10 || mortgagees, trustees, beneficiaries, or *authorized agents* must comply with prior to filing a
11 || Notice of Default pursuant to California Civil Code section 2924.  The section requires the
12 || Lender to contact the borrower in person or by telephone in order to assess the borrower's
13 || financial situation and **explore options** for the borrower to *avoid* foreclosure. During the initial
14 || contact, the Lender shall advise the borrower that he or she has the right to request a subsequent
15 || meeting and, if requested, the mortgagee, beneficiary, or authorized agent shall schedule the
16 || meeting to occur within 14 days. The assessment of the borrower's financial situation and
17 || discussion of options may occur during the first contact, or at the subsequent meeting scheduled
18 || for that purpose. In either case, the borrower shall be provided the toll-free telephone number
19 || made available by the United States Department of Housing and Urban Development (HUD) to
20 || find a HUD-certified housing counseling agency. Any meeting may occur telephonically.
21 || Section 2923.5 further requires that the Lender may not file a Notice of Default until 30 days
22 || after this contact and good faith discussion takes place.

23 ||      12.  Further it is the Plaintiff's contention that section 2923.5 mandates that a good faith
24 || discussion take place regarding the borrower's financial situation and an actual exploration into
25 || the borrowers' options to stay in their home. Plaintiff contends that section 2923.5 requires a
26 || discussion concerning the possibility of avoiding foreclosure or modifying the current mortgage
27 || so, in these times, the borrower could actually explore the possibilities of avoiding foreclosure
28 || and not receive merely a cursory phone call assessing the borrower's financial situation.

1

2    **Summary Description and History of Civil Code Section 2923.52**

3    13.  Notwithstanding Section 2923.5 and Section 2923.6 due to the yet astronomical

4    increase in residential property foreclosures throughout California, Governor Schwarzenegger

5    again on June 1, 2009 signed into law the California Foreclosure Prevention Act.  This act was

6    subsequently codified as Civil Code Section 2923.52.  It governs any residential mortgage

7    executed between January 1, 2003 and December 31, 2007.

8    14.  The intent of Civil Code Section 2923.52 is to slow the deleterious effects that were

9    resulting from the continued rise in foreclosures by modifying the foreclosure process to allow

10   an additional ninety days (90) to the current notice requirements of California Civil Code Section

11   2924 in order for the parties to pursue loan modifications to prevent foreclosure from occurring.

12   15.  Section 2923.52 contains an exemption for loans that are serviced by mortgage loan

13   servicers if the servicer has obtained a current and valid order of exemption pursuant to section

14   2923.53. There is also an exemption for loans made, purchased, or serviced by a California state

15   or local public housing agency or authority, and for loans that are collateral for securities

16   purchased by a local public housing agency or authority. In order to qualify for the exemption

17   under section 2923.53, the mortgage loan servicer must have implemented a comprehensive loan

18   modification program that includes some combination of: an interest rate reduction for a fixed

19   term for at least five years, an extension of the amortization period of the loan term to no more

20   than 40 years from the original date of the loan, deferral of some portion of the principal amount

21   of the unpaid principal balance until maturity of the loan, **reduction of the principal amount,**

22   compliance with a federally mandated loan modification program, and other factors that the

23   commissioner determines are appropriate and offered some type of assistance in connection with

24   the program if requested by the borrower.

25

26   **Plaintiff's Contentions of Wrongful Conduct by Defendants**

27   16.  On November 2, 2007, Plaintiff obtained a thirty-year mortgage from INDYMAC for

28   his primary residence in the amount of $375,000.00.  A true and correct copy of said mortgage

FIRST AMENDED COMPLAINT                                      4